Exhibit C

David J. Millstein (SBN 87878)
Gerald S. Richelson (SBN 267705)
MILLSTEIN & ASSOCIATES
100 The Embarcadero, Penthouse
San Francisco, CA 94105
Telephone: (415) 348-0348
Facsimile: (415) 348-0336
dmillstein@millstein-law.com
grichelson@millstein-law.com

**Attorneys for Plaintiff:**
AMERICAN ACADEMY OF
EMERGENCY MEDICINE PHYSICIAN
GROUP, I.N.C.

PER LOCAL RULE, THIS CASE IS ASSIGNED TO DEPT ___, FOR ALL PURPOSES



# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF CONTRA COSTA

### (Unlimited Jurisdiction)

| | |
|---|---|
| AMERICAN ACADEMY OF EMERGENCY MEDICINE PHYSICIAN GROUP, INC., a Wisconsin Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ENVISION HEALTHCARE CORPORATION; a Delaware Corporation; ENVISION PHYSICIAN SERVICES L.L.C.; a Delaware Limited Liability Corporation doing business in California and DOES 1-100,<br><br>Defendants. | Case No.: C21-02633-<br><br>**COMPLAINT FOR UNFAIR BUSINESS PRACTICES (BUSINESS AND PROF. CODES § 17200 AND FOR INJUNCTIVE AND DECLARATORY RELIEF**<br><br>SUMMONS ISSUED |

**COMPLAINT FOR UNFAIR BUSINESS PRACTICES (BUSINESS AND PROF. CODES § 17200 AND FOR INJUNCTIVE AND DECLARATORY RELIEF - 1**

## I. PARTIES, JURISDICTION, AND VENUE.

1. At all times mentioned herein, the American Academy of Emergency Medicine Physician Group, Inc. ("AAEMPG") is a corporation based in Milwaukee, WI, incorporated under the laws of Wisconsin. AAEMPG provides business and administrative services to physician groups, including in California. Until August 2021, it provided such services to the emergency medicine physician group at Placentia Linda Hospital, Placentia Linda Emergency Physicians, Inc. AAEMPG is a subsidiary of the American Academy of Emergency Medicine, a physician professional society, and is a provider of administrative and management services, ("PLEP").

2. At all times mentioned herein, Envision Healthcare Corporation was a corporation existing under the laws of the State of Delaware registered to do business in California. It operates at least twelve Emergency Departments ("E.D.'s") throughout California. Its head of operations for California is in Walnut Creek, California.

3. At all times, Envision Physician Services L.L.C. was a Delaware Limited Liability Corporation doing business in California, owned and managed by Envision Healthcare. Plaintiff is informed and believes and alleges thereupon that Envision HealthCare Corporation and Envision Physician Services L.L.C. are alter-egos of each other having common ownership and no separate corporate identities.

4. Does 1-100, inclusive, are sued herein under fictitious names. Their true names and capacities are unknown to the Plaintiffs. When the true names and capacities are ascertained, the Plaintiff will amend by inserting their true names and capacities herein. Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendants participated in the acts complained of herein and is the agent of all other defendants in undertaking actionable conduct alleged herein. Some of these Does colluded with Defendants and acted as their agents in doing the acts alleged herein.

5. This Court has personal jurisdiction over each Defendant because the acts of each of the Defendants occurring in California in connection with Defendants' violations of Business and Professions Code §§ 650, 2400, 2052, 16600, 17500, and/or the Unfair Competition Law, Business and Professions Code § 17200.

6. Venue as to the Defendants is proper in this judicial district pursuant to the provisions of California Business and Professions Code § 16750(a) and California Code of Civil Procedure §§ 395(a) and 395.5.

7. This Court has personal jurisdiction over each Defendant as co-conspirators because the causes of action arise under California law and the acts of any of the Defendants occurring in California in connection with Defendants' violations of § 16600 and/or the Unfair Competition Law under Cal. Bus. Prof. Code § 17200. No portion of this Complaint is brought pursuant to federal law.

8. At all times mentioned herein, each Defendants was the agent of each other defendants in undertaking the acts alleged.

## II. CHOICE OF LAW.

9. California law applies to Plaintiff's claims. The application of California law is constitutional, and California has a strong interest in regulating the business practices of resident corporations, deterring, and enjoining the commission of unlawful practices, and affording restitution to those harmed by activities occurring in and emanating from California.

10. California is the State in which Defendants violated California's prohibition on the Corporate Practice of Medicine, offered unlawful kickbacks in exchange for patient referrals, employed physicians on the condition they execute illegal restrictive covenants, and committed unfair business practices including false advertising.

11. Plaintiff was injured by conduct occurring in and emanating from California.

12. Defendants have significant minimum contacts with California creating State interests with all parties and the acts alleged herein. California's interests far exceed those of any other state.

## III. INTRODUCTION.

13. The practice of medicine in California is subject to extensive regulatory control designed to protect the health and safety of the public. The Corporate Practice of Medicine Prohibition, Bus. & Prof. Code § 2400 et. seq., prohibits corporations, lay entities, or any non-licensed persons or entities from practicing medicine, assisting in the unlicensed practice of

medicine, employing physicians, or ownership of physician practices. Business and Professions Code, § 2052 prohibits the practice of medicine without a valid license; § 2052(b) prohibits unlicensed persons from advertising or holding themselves out to the public as licensed and prohibits conspiracies or aiding and abetting the unlicensed practice or sharing of fees. The primary objective of the Corporate Practice bar is to prevent commercial influence on the practice of medicine.

14. Business and Professions Code § 650 prohibits the offer, delivery, receipt, or acceptance of consideration to induce the referral of patients. Welfare & Inst. Code § 14107.02 similarly prohibits the offer or payment of remuneration for referrals of patients. The Corporate Practice Doctrine and bar against referrals for compensation operate to achieve the goal to avoid the influence of commercial entities on the practice of medicine by ensuring that commercial interests do not threaten the impartiality of medical advice.

15. Business and Professions Code § 16600 et. Seq. bars agreements that restrain persons from engaging in their lawful profession.

16. Business and Professions Code § 17200 et. seq. prohibits the use of unfair, unlawful, and/or fraudulent business acts or practices within the State of California.

17. Business and Professions Code § 17500 et. seq. prohibits the making of untrue or misleading statements concerning the professional or other services.

18. Within the last four years, defendants, and each of them embarked upon and or continued illegal, unfair, and deceptive business practices aimed at engaging and assisting others in the practice of medicine by unlicensed entities, offering and paying consideration for patient referrals, restraining physician's ability to practice medicine through restrictive covenants, and false advertising, as described below.

## IV. FACTS.

19. Envision Healthcare Corporation is a lay entity created in June 2016 by merging the public companies Envision Healthcare Holdings, Inc. (NYSE: EVHC) and AMSURG Corp. (NASAQ: AMSG). Before the merger, Envision Healthcare Holdings, Inc. owned American Medical Response, Inc. (A.M.R.), EmCare Holdings, Inc. (EmCare), and Evolution Health L.L.C.

Before the merger, AMSURG owned and operated two hundred and fifty-six (256) ambulatory surgery centers and one surgical Hospital and owned Sheridan, a physician services company similar to EmCare. After the merger, Envision Healthcare Corporation combined and rebranded the two companies' physician services arms. In doing so, EmCare and Sheridan were combined into Envision Physician Services L.L.C. In 2017, Envision Healthcare Corporation sold its ambulance unit to Kohlberg Kravis Roberts ("K.K.R.") a private equity firm with over $100 billion under management for $2.4 billion.

20. Envision Physicians Services holds itself out to the public as a multispecialty physician group and healthcare management team with over 25,000 clinicians and 1,600 employees operating at over 780 hospitals. It provides practice management services to physicians, such as billing and collection, communication with vendors, and financial reporting. Envision Physician Services was formed in Delaware on October 4, 2017. It was registered to do business in California on December 20, 2017, by its sole member Envision Healthcare Corporation. Envision Physician Services' initial registration in California listed its address 1A Burton Hills Boulevard, Nashville, TN, which is Envision Healthcare Corporation's corporate headquarters. Envision Physician Services 2019 statement of information updates its corporate address to be 7700 W. Sunrise Boulevard, Plantation, FL. Envision Physician Services' initial registration and each subsequent statement of information were signed by Envision Healthcare Corporation's General Counsel, Craig Wilson. The next year, in 2018, K.K.R. purchased the rest of Envision Healthcare Corporation for $9.9 billion. Thereafter Envision Healthcare Corporation was no longer publicly traded.

21. Envision Healthcare Corporation and Envision Physician Services L.L.C. shall collectively be referred to herein as "Envision."

22. Because California (as with the law of many other states) bars lay entities from owning physician practice groups, Envision's business model and practice is to purchase, control, and/or create a separate subsidiary legal entity for each hospital emergency practice or group of practices it controls. The subsidiaries are managed and operated by people who are employed by or and directly connected to the parent corporation, Envision. A medical director of the physician

entity is appointed, and the choice is made by Envision. Decisions are not made by the medical directors. The medical practices owned or controlled by Envision shall be referred to as Envision's "controlled medical groups."

23. One such controlled medical group is Glass Beach Medical Services, a Medical Corporation ("Glass Beach"). It was formed in 2016 by Charles T. Mitchell, M.D. listing its address as 6363 So. Fiddlers Green Circle, Suite 1400, Colorado. Charles T. Mitchell, M.D. is an emergency physician practicing in the State of Hawaii who, on information and belief, merged an emergency department practice with EmCare/Envision in approximately 1999. 6363 So. Fiddlers Green Circle is or was an Envision corporate office and is listed as the address for numerous medical and medical transport companies related to Envision Healthcare Corporation. Thereafter, subsequent statements of information for Glass Beach Medical Services were signed by Craig A. Wilson, Envision Healthcare Corporations' former General Counsel who is listed as Glass Beach's Secretary. Glass Beach's 2019 statement of information lists as its chief executive officer Brian Jackson, Envision Physician Services L.L.C.'s former President. Finally, its chief financial officer is listed as Kristy Rutherford, who was enterprise vice president treasury for Envision Healthcare Corporation. None of the corporate officers listed on its 2019 statement of information are licensed to practice medicine, and they each list their address as Envision Physician Services corporate office at 7700 W. Sunrise Boulevard, Plantation, FL.

24. PLEP is a Physician owned and controlled professional corporation consisting of emergency department physicians practicing emergency medicine in Placentia Linda Hospital's emergency department before 2021. PLEP contracted with Plaintiff AAEMPG to provide practice management services for its Placentia Linda ED contract. The practice management services provided by AAEMPG specifically exclude all activities described in the definitions of the practice of medicine as set forth in the medical practice act where the Client's Hospital(s) are located. PLEP maintained exclusive control of clinical decisions, and most of AAEMPG's services to PLEP were optional and at PLEP's direction.

25. In 2021, as a result of the acts alleged herein, Placentia Linda Hospital awarded its E.D. contract to Glass Beach instead of PLEP, resulting in the termination of PLEP and its

contract with AAEMPG.

26. In May of 2021, Glass Beach filed an updated statement of information identifying Douglas Smith M.D. as its Chief Executive Officer. Douglas Smith M.D.'s address is listed as 7700 W. Sunrise Blvd., Plantation Florida, Envision Physician Services corporate headquarters. Douglas Smith, M.D., is the President of Envision Physician Services. Plaintiff is informed and believes that Douglas Smith, M.D. or his functional equivalent at Envision, is the C.E.O. of hundreds of medical groups controlled by Envision Physician Services. He is not licensed to practice medicine in California. Plaintiff is informed and believes Envision further ensures corporate control of its controlled medical groups by having the named physician owner sign a Stock Transfer Agreement which prevents them from having actual control of the entity. It is believed these separate agreements include restrictions on the ability of the named physician owner to issue dividends, create additional stock, or sell the medical group.

27. Glass Beach provides services for which payment may be made in whole or in part under California Welfare and Institutions Code Division 9, Part 3, Chapters 7 and 8.

### A. Providing Kickbacks to Acquire Emergency Medicine Exclusive Contracts.

28. Hospital Emergency departments in California are, except for narrowly specified exempt entities, staffed by physician groups that work under agreements commonly known as exclusive emergency services contracts. Hospitals grant such contracts to a medical group to ensure continuous physician coverage of their emergency departments.

29. The exclusive contracts are typically two or three years in duration. The group of physicians who receive the contract have the exclusive right to treat patients at the emergency department. Physicians who are not members of the group holding the exclusive contract are excluded from treating patients in such emergency departments.

30. Hospitals are generally able to choose among competing physician groups in awarding such exclusive contracts. Since exclusive emergency services contracts guarantee a continuous flow of patients, granting such a contract constitutes a referral of patients under California. Therefore, such contracts may not be sold by the Hospital or purchased by physicians,

nor may consideration be offered or exchanged for the granting or renewal of such agreements.

31. Envision offers to and/or provides consideration to Hospitals and hospital systems in exchange for exclusive emergency department contracts grants. It offered and/or did provide Tenet Healthcare with anesthesia services and/or hospitalist services without subsidies at Tenet hospitals within the State of California (and nationwide) in exchange for Tenet granting it exclusive Emergency department contracts. Subsidies are stipends that Hospitals provide to certain hospital-based physicians or professionals as an incentive for them to practice at a hospital. Tenet purchases the emergency contracts by agreeing to provide the Hospital with an anesthesia group without the necessity of a stipend. Plaintiff is informed and believes this kickback scheme is one of its standard methods of acquiring new contracts and maintaining existing ones.

32. Envision offered to provide such unsubsidized anesthesia services to a Tenet Hospital in 2021 for the Placentia Linda Emergency Department contract. The Hospital awarded the contract to an Envision-controlled medical group, Glass Beach and failed to renew its agreement with PLEP.

33. Plaintiff is informed and believes that Envision offers or provides other consideration to acquire exclusive E.D. contracts, including offering remuneration to physicians who control physician groups to induce transfer of Emergency Department contracts to its controlled medical groups and is informed and believed it offered remuneration to acquire the contract at Placentia Linda.

**B.    Control Over the Practice of Medicine.**

34. After it acquires a practice and at all other times, Envision exercises profound and pervasive direct and indirect control and/or influence over physicians' practice of medicine. Such control diminishes physician independence and freedom from commercial interests, in violation of California's corporate practice of medicine ban.

35. Envision decides how many and which physicians will be hired, their compensation, and their work schedule. Envision controls and/or influences advertising for physician vacancies, vetting physicians, establishing the terms of employment, scheduling the hours physicians will work, staffing levels, the number of patient encounters, and working

conditions. Envision decides when to terminate physicians and denies them rights to appeal via traditional medical staffing mechanisms.

36. Envision negotiates payor contracts with health insurers that pay physicians their fees. Physicians are not made aware of the terms of those contracts. Envision requires physicians to assign their rights to the proceeds of their medical billings to Envision then determines what is charged to patients and insurers. It controls coding decisions and bills patients and or insurers for such medical services. Envision physicians do not see what is billed and remitted in their names. Because Glass Beach provides services for which payment may be made in whole or in part under California Welfare and Institutions Code Division 9, Part 3, Chapters 7 and 8, Envision receives remuneration under those code sections as well. Plaintiff is informed and believes that Envision earns amounts from the physician's billings that exceed the reasonable value of the billing and any other administrative services Envision provides and is therefore participating in what amounts to illegal fee-sharing with a lay entity.

37. Envision collects billings and has the benefit of all the revenues of its controlled medical groups. Its certified public accountants who audit the financial statements of controlled groups attribute all of their revenues to Envision and treat those revenues as income to Envision for accounting and tax purposes.

38. Envision establishes and promulgates physician "best practices," "red rules," and "evidence-based pathways" protocols which enumerate standards for treating patients and are a form of clinical oversight. It creates "benchmarking" reports that compare physician performance to Envision-created standards, with the intention of modifying and interfering with the exercise of their independent medical judgment. Envision tracks physician medical decision-making and then provides "practice improvement feedback" in the form of reports which are designed to "educate" physicians to practice medicine and make decisions that increase amounts charged to patients.

39. Envision's corporate control allows it to increase billings to patients, insurers, and third-party payors for the physician services. These lead to modifications in the way care is given. It has been the subject of multiple lawsuits against it nationwide for excessive billings.

40. Defendants, additionally, profit by reducing physician compensation, increasing the number of patients that physicians see per hour, and increasing the utilization of physician assistants to replace more costly physician coverage. Envision advertises to prospective hospital clients that physician assistants are two-thirds less costly than physicians.

### C. Use of Restrictive Covenants.

41. Envision requires its physicians to execute restrictive covenants that state the physician may not attempt to assist or cause any other emergency medicine group medical practice to replace Envision. These provisions constitute further control and independently constitute a violation of Business and Professions Code § 16600.

42. The Glass Beach agreement provides the physician will not:

> "(i) directly or indirectly induce or persuade (or attempt to induce or persuade) any person or entity (including any health care entity) to terminate its contract with any affiliates, subsidiaries, or managed entities thereof, Envision Healthcare Company, or any affiliates, subsidiaries, or managed entities thereof, or (ii) other than as an independent contractor of Company, solicit to provide any medical or management services to any hospital or medical facility at which medical services are provided by Contractor hereunder. In addition, for twelve (12) months following termination of this Agreement, Contractor shall not directly or indirectly induce, persuade (or attempt to induce or persuade) any person or entity to terminate or breach any contract with Company, any affiliates, subsidiaries, or managed entities thereof, Envision Healthcare Company, or any affiliates, subsidiaries, or managed entities."

43. Plaintiff is informed and believes that all of Envisions' or its controlled medical groups' contracts with physicians have covenants that are as restrictive as Glass Beach's contract, if not more.

44. By barring physicians from forming a group to compete with Envision or agreeing to work for any other medical group that is soliciting or will solicit the exclusive contracts held by Envision controlled groups, Envision or its controlled medical groups restrict a physician's ability to practice their profession, limit physicians' employment options, and ability to work for other groups. Many of the locations where Envision holds emergency department contracts in

California, including Placentia Linda, have a limited number of emergency departments and thus a limited number of employment opportunities.

45. Envision intends and is aware their restriction has this effect of restraining competition and requires physicians to sign a false disclaimer in their agreements that they can "earn a reasonable living in the area in which they reside" to seek to immunize their agreement.

46. Barring physicians from participating in unseating or competing for an Envision contract also violates public policy. It limits a hospital's ability to choose the best emergency group and gives Envision an unfair and almost insurmountable advantage in retaining exclusive contracts in perpetuity. Hospital staff generally like working with the emergency department group they have known for years; an essential part of obtaining a new contract is a promise most of the emergency department physicians will be retained. Physicians' mobility is restrained during the critical one-year time after their departure from a group by being barred from competing for the contracts at Hospitals where Envision operates.

47. The provision has the effect of reducing competition in the business and trade of emergency department physician services, reducing the number of competitors for Emergency Services Contracts, limiting the supply of emergency physicians available to patients seeking emergency services, and causing increases in the price of such patient services by limiting the facilities where emergency physicians can practice.

48. The non-competition provisions are unfair competitive practices under business, and Prof. Code 17200 et seq and violate public policy. They interfere with a hospital's ability to obtain any physician group they determine could provide the best medical care, effectively preventing the Hospitals from retaining physicians currently working in the emergency department for one year.

49. The non-competition provisions serve no legitimate proprietary interests. E.D. contracts are not assets that may be legally bought or sold. To the extent Envision paid for the exclusive E.D. contract, as set for in paragraphs 28-33 *infra*, such conduct was illegal and cannot confer a proprietary interest.

50. Whether or not enforced by Envision, the inclusion of void non-competition provisions in the agreement is a violation of § 16600 and an unfair business practice.

51. Defendants actively conceal their unlawful agreements and business practices. To prevent the detection of its scheme, Defendants employ nondisclosure agreements and provisions and call their affiliates names other than Envision to avoid detection.

## V. CAUSES OF ACTIONS.

## FIRST CAUSE OF ACTION

**(Unfair Competition in Violation of Cal. Bus. & Prof Code § 17200- Injunctive Relief Against All Defendants)**

52. Plaintiff realleges and incorporates by reference each allegation as if fully stated herein.

53. Defendants transact business by operating controlled Physician Groups and Management Services Company as described herein.

54. The violations of law described in this Complaint have been, and are being, carried out and directed wholly or in part within the County of Contra Costa and other locations within the State of California where Envision does business.

55. California Business and Professions Code § 17200 prohibits any "unlawful, unfair or fraudulent business practices." As alleged throughout this Complaint, Defendants' acts and business practices, outlined in this first amended Complaint, constitute unfair business practices because they offend established public policy and cause harm that greatly outweighs any benefits associated with those acts and practices.

56. The public and others were likely to be deceived by Defendants' acts, business practices, and conduct alleged in this Complaint.

57. Defendants have engaged within the last four years and continue to engage in unlawful, unfair and/or fraudulent business acts or practices in violation of Section 17200. Such acts and practices include, but are not limited to, the following:

//

- Unlawfully engaging in and aiding and abetting the unlawful Corporate Practice of Medicine within the State of California in violation of Business & Professions Code 24000, 2502 et al.
- Unlawfully offering or paying consideration for the acquisition or retention of emergency department exclusive contracts, and/or aiding and abetting in the same, in violation of Penal Code § 650 and Welfare and Institutions code § 14107.2 and attempting to do the same.
- Unlawfully restraining the practice of medicine by requiring physicians to execute illegal restrictive covenants to restrict their employment.
- Deceiving the public and potential patients by representing that Envision Physician Services was a physician group lawfully structured and able to provide medical services to patients in violation of Business & Professions Code § 17500.

58. As a direct and proximate result of the preceding acts and practices, Defendants have received income, profits, and other benefits they would not have obtained if they had not.

59. By engaging in a pattern and practice of violating section 17200 as described herein, defendants were able to unfairly compete with other entities such as Plaintiff's who are engaged in providing administrative services to physician groups in the State of California engaged in the violations of § 17200 and law described in this Complaint.

60. Plaintiff is informed and believes, and based upon such information and belief, alleges that as a direct result of these acts and omissions, Defendants have received or will receive income and other benefits which they would not have received if they had not engaged in the violations of Business and Professions Code § 17200 et seq. described in this Complaint.

61. Plaintiff as providers of practice management services to Physicians without committing the unlawful, unfair, and fraudulent business practices routinely employed by Defendants have suffered an injury in fact and has and will lose revenue as it did, for example, when Envision acquired the Emergency Department exclusive contract at Placentia-Linda Hospital, which loss resulted in Plaintiff's losing its Management Services Agreement with PLEP,

to provide practice management services, and forced to compete at a disadvantage against Defendants as a result of Defendants practices by Plaintiff's following the law.

62. Plaintiffs have no adequate remedy at law in that damages are insufficient to protect the Plaintiff and public from the harm caused by the conditions described in this Complaint.

63. Unless injunctive relief is granted to enjoin Defendants' unlawful, unfair and/or fraudulent practices, Plaintiff and the public will suffer irreparable injury.

64. WHEREFORE, Plaintiff prays for the relief requested below;

## SECOND CAUSE OF ACTION

### (Declaratory Relief)

65. Plaintiff realleges and incorporates by reference each allegation as if fully stated herein.

66. Defendants caused their controlled medical groups to enter into, implement, and enforce express agreements that are unlawful and void under § 16600.

67. Envision through itself and its controlled medical groups offered to and/or paid consideration to induce the granting of exclusive contracts/referral of patients in violation of Penal Code 650 and Welfare & Inst. Code § 14107.02.

68. Envision through itself and by the direct control of its controlled medical groups, kickbacks, restrictive covenants, and other practices alleged violated California's ban on the corporate practice of medicine in violation, among other things, of Cal. Bus. & Prof. Code §§2400 & 2502.

69. Envision's the inclusion of restrictive covenants in their controlled medical group's employment agreements with physicians have the purpose and effect of (a) reducing the open competition among medical groups for emergency room staffing contracts; (b) reducing physician mobility; (c) eliminating for physicians to pursue the lawful employment of their choice; and (d) limiting physician choices for management and administrative service contractors.

70. Envision's inclusion of restrictive covenants in their controlled medical group's employment agreements is void and unlawful in that they are contrary to California's legislative

policy in favor of open competition and employee mobility.

71. Envision's inclusion of restrictive covenants in their controlled medical group's employment agreements is not limited to the protection of any proprietary interest of Envision.

72. Envision's inclusion of restrictive covenants in their controlled medical group's employment agreements does not fall into any statutory exception to § 16600.

73. Envision's model and control over its physicians and its subsidiary physician groups constitute the practice of medicine by an unlicensed entity in violation of Business and Prof Code § 2400.

74. Envision has used its control over its controlled medical groups offered to and/or paid consideration to induce the granting of exclusive contracts/referral of patients in violation of Penal Code 650 and Welfare & Inst. Code § 14107.02.

75. Plaintiffs empower local, independent, democratic emergency physician groups to meet their full potential. Their member groups practice in a fair and transparent setting where each physician is an owner. Plaintiffs' member groups retain full ownership of their practices. Plaintiffs' member groups compete directly with Envision-controlled groups for exclusive emergency department referral agreements.

76. A present case and controversy exist regarding Envisions current practices of violating the ban on the corporate practice of medicine, using restrictive covenants, and offering remuneration in exchange for patient referrals. Private equity-owned Envision, through its lay management, shuts out legally operating medical groups, such as those partnering with Plaintiff, by offering remuneration to hospitals in exchange for emergency referral contracts at Hospital's previously serviced by AAEMPG partnered medical groups, including at Placentia-Linda Hospital, then illegally shuts out the future competition by requiring all physicians practicing medicine in the emergency department to sign restrictive covenants preventing them from working for a competing group or removing Envision's control over the controlled group.

77. Plaintiffs are informed and believe that Envision is actively marketing its services to other Emergency departments throughout California and, in so doing, will continue its corporate practice of medicine, offers of remuneration in exchange for patient referrals, and

---

COMPLAINT FOR UNFAIR BUSINESS PRACTICES (BUSINESS AND PROF. CODES § 17200 AND FOR INJUNCTIVE AND DECLARATORY RELIEF - 15

restrict emergency physicians from working for competing medical groups. Envision will continue these practices in its current hospital contracts and will expand them to new hospitals unless a judgment declares such practices illegal.

78. Declaration that Envisions' restrictive covenants are void and may not be used in agreements with physicians;

79. Declaration that Envisions' creation or control over its controlled medical groups as described herein constitutes the corporate practice of medicine and is therefore unlawful.

80. Declaration that Envisions offers of remuneration in exchange for exclusive emergency department referral agreements, as described herein, constitute illegal kickbacks.

81. WHEREFORE, Plaintiff prays for the relief requested.

## VI. PRAYER.

WHEREFORE, Plaintiff prays for:

1. Defendants be enjoined engaging in acts constituting the practice of medicine through the means and methods described herein, including but not limited to creating controlled medical groups, exercising control over billing, staffing, and related services, use of restrictive covenants, or using control using its control over controlled medical groups to require those groups to include restrictive covenants in their employment and independent contractor agreements with any California physician, otherwise aiding and abetting in the Corporate Practice of Medicine.

3. Defendants be enjoined from offering or providing remuneration or anything of value to any Hospital or Hospital system operating in the State of California, including hospital services below-cost or market in exchange for patient referrals.

4. A declaration that Defendants practice of causing their controlled medical groups to enter into, implement, and enforce restrictive covenants similar to those identified in paragraph 45 above is unlawful and that the restrictive covenants are void under Cal. Bus. and Prof. Code §§16600.

5. A declaration that Defendants practice of offering to or agreeing to provide Hospitals with personnel to staff departments without the requirement of a subsidy (where

subsidies are paid) in exchange for E.D. contracts constitute violations of Penal Code 650, Welfare & Inst. Code § 14107.02.

6. A declaration that Defendant's control over its controlled medical groups constitutes the corporate practice of medicine in violation of, among other things, of Cal. Bus. & Prof. Code §§2400 & 2502.

7. Attorney's Fees as allowed by law, including but not limited to those allowable under Cal. Code Civ. Proc. § 1021.5.

8. For such other and further relief as the Court may deem proper.

Date: December 20, 2021  **MILLSTEIN & ASSOCIATES**



By:_____
David J. Millstein, Esq.
Gerald S. Richelson, Esq.

Attorneys for PLAINTIFF
AMERICAN ACADEMY OF
EMERGENCY MEDICINE PHYSICIAN
GROUP, INC.