Thomas Ryan (SBN 143148)
tryan@mwe.com
Jason Strabo (SBN 246426)
jstrabo@mwe.com
Irene Le (SBN 325503)
Ile@mwe.com
**MCDERMOTT WILL & EMERY LLP**
2049 Century Park East
Suite 3200
Los Angeles, CA  90067-3206
Telephone:     +1 310 277 4110
Facsimile:     +1 310 277 4730

Attorneys for Defendants
ENVISION HEALTHCARE CORPORATION
AND ENVISION PHYSICIAN SERVICES,
L.L.C.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO

| | |
|---|---|
| AMERICAN ACADEMY OF EMERGENCY MEDICINE PHYSICIAN GROUP, INC., a Wisconsin Corporation, <br><br> Plaintiff, <br><br> v. <br><br> ENVISION HEALTHCARE CORPORATION; a Delaware Corporation; ENVISION PHYSICIAN SERVICES L.L.C.; a Delaware Limited Liability corporation doing business in California and DOES 1-100, <br><br> Defendants. | CASE NO. 3:22-cv-00421-AGT <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AND MOTION TO DISMISS PURSUANT TO RULES 12(B)(1) AND 12(B)(6) OR, ALTERNATIVELY, STRIKE PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(F) OF THE FEDERAL RULES OF CIVIL PROCEDURE** <br><br> [[Proposed] Order Lodged Concurrently Herewith] <br><br> Hearing Date: March 4, 2022 <br> Time: 10:00 a.m. <br> Place: Courtroom A, 15th Floor <br> Judge: Hon. Alex G. Tse <br><br> PER CIVIL L.R. 7-6, NO ORAL ARGUMENT UNLESS SEPARATELY ORDER BY THE COURT |

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

## NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

PLEASE TAKE NOTICE that on March 4, 2022 at 10:00 a.m., or as soon thereafter as counsel may be heard, in courtroom of Honorable Alex G. Tse, United States Magistrate Judge, in the United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom A, 15th Floor, San Francisco California, Defendants Envision Healthcare Corporation and Envision Physician Services, LLC (collectively, "Defendants") will and hereby do move this Court for an order dismissing, staying, and/or striking Plaintiff American Academy of Emergency Physicians Medical Group, Inc.'s ("Plaintiff") Complaint (the "Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(f), under the doctrine of primary jurisdiction, and the abstention doctrine.

Defendants' Motion is, and will be, made on the following grounds, as more fully articulated in the accompanying Memorandum of Points and Authorities: (1) this matter should be dismissed or, alternatively, stayed pursuant to the doctrine of primary jurisdiction and/or the abstention doctrine, on the grounds that the case presents complicated issues of regulatory policy the oversight of which has been entrusted by the California Legislature to a designated regulatory body; (2) Plaintiff's Complaint and each of the causes of action set forth therein fails to state a claim upon which relief can be granted and, therefore, should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6); and (3) the allegations of Plaintiff's Complaint are immaterial, impertinent, and harassing and should therefore be stricken pursuant to Rule 12(f).

//
//
//
//
//
//
//
//

This Motion is based on this Notice of Motion and Motion; the attached Memorandum of Points and Authorities; the accompanying Request for Judicial Notice and related Declaration of Jason D. Strabo, the pleadings and filings in this action; and such further evidence or argument as may be heard at or before the hearing on this Motion.

Dated: January 28, 2022

**McDERMOTT WILL & EMERY LLP**

By: _____

JASON D. STRABO
Attorneys for Defendants
ENVISION HEALTHCARE CORPORATION
AND ENVISION PHYSICIAN SERVICES,
L.L.C.

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................2

II.     PERTINENT ALLEGATIONS OF THE COMPLAINT ............................................5

III.    THE COURT SHOULD DISMISS THIS ACTION UNDER THE DOCTRINE OF
        PRIMARY JURISDICTION OR, ALTERNATIVELY, THE ABSTENTION
        DOCTRINE .........................................................................................................7

IV.     THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS FOR FAILURE TO
        STATE A CLAIM UNDER RULE 12(B)(6) OR, ALTERNATIVELY, STRICKEN
        PURSUANT TO RULE 12(F).................................................................................11

        A.      Plaintiff's Unfair Competition Law Claims Should Be Dismissed or,
                Alternatively, Stricken Under Rule 12(f).........................................................12

                1.      Plaintiff Fails to Adequately Allege The Existence of Unlawful
                        Conduct ...........................................................................................12

                2.      Plaintiff Fails to Plead a Claim Under the UCL's Unfair Prong .........19

                3.      Plaintiff Fails to Plead a Claim Under the Fraudulent or Misleading
                        Prong of the UCL...............................................................................20

        B.      Plaintiff's Declaratory Relief Claim Should Be Dismissed............................20

        C.      Plaintiff Fails to State a Claim Against Envision Healthcare Corporation......21

V.      CONCLUSION...................................................................................................23

**Page(s)**

**Cases**

*Alvarado v. Selma Convalescent Hosp.,*
153 Cal. App. 4th 1292 (2007) .....................................................................................9, 10

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .................................................................................................11, 18 22

*Barrett v. Apple Inc.,*
523 F. Supp. 3d 1132 (N.D. Cal. 2021) .......................................................................21, 22

*Bauman v. Mount Sinai Hosp.,*
452 F. Supp. 2d 490 (S.D.N.Y. 2006) ...............................................................................8

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .................................................................................................11, 18 22

*Brinkerhoff v. L'Oreal USA, Inc.,*
417 F. Supp. 3d 1308 (S.D. Cal. 2019) ..............................................................................8

*Cal. Dep't of Toxic Substances Control v. Alco Pacific, Inc.,*
217 F. Supp. 2d 1028 (C.D. Cal. 2002) ............................................................................11

*Campbell v. Bd. of Trustees of Leland Stanford Junior Univ.,*
817 F.2d 499 (9th Cir. 1987) ...........................................................................................13

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
20 Cal. 4th 163 (1999) ........................................................................................12, 19, 20

*Clark v. Time Warner Cable,*
523 F.3d 1110 (9th Cir. 2008) ............................................................................................8

*Colony Cove Props., LLC v. City of Carson,*
640 F.3d 948 (9th Cir. 2011) ...........................................................................................11

*Cont'l Cas. Co. v. Nationwide Mut. Ins. Co.,*
No. CV 14–07326–GW (PLAx), 2014 WL 12607694 (C.D. Cal. Nov. 3, 2014) ..................21

*Davel Comm'ns, Inc. v. Qwest Corp.,*
460 F.3d 1075 (9th Cir.2006) .............................................................................................8

*Desert Healthcare Dist. v. PacifiCare, FHP Inc.,*
94 Cal. App. 4th 781 (2001) .........................................................................................9, 10

*Fantasy, Inc. v. Fogerty,*
984 F.2d 1524 (9th Cir. 1993) .....................................................................................11, 12

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

*Free Conferencing Corp. v. T-Mobile US, Inc.*,
   No. 2:14-CV-07113-ODW, 2014 WL 7404600 (C.D. Cal. Dec. 30, 2014) ...........................7

*Germaine Music v. Universal Songs of Polygram*,
   275 F. Supp. 2d 1288 (D. Nev. 2003) ...................................................................................12

*Gordon v. Church & Dwight Co.*,
   No. 09-cv-5585 PJH, 2010 WL 1341184 (N.D. Cal. Apr. 2, 2010) ........................................8

*Guerra v. Sutton*,
   783 F.2d 1371 (9th Cir. 1986) ............................................................................................20

*Hageseth v. Superior Ct.*,
   150 Cal. App.4th 1399 (2007) .....................................................................................16, 17

*Hambrick v. Healthcare Partners Med. Grp., Inc.*,
   238 Cal. App. 4th 124 (2015) ..................................................................................8, 9, 10

*Hanna v. Walmart Inc.*,
   No. 5:20-cv-01075-MCS-SHK, 2020 U.S. Dist. LEXIS 237505 (C.D. Cal. Nov. 4,
   2020) .................................................................................................................14, 21, 22, 23

*Hinds Invs., L.P. v. Angioli*,
   654 F.3d 846 (9th Cir. 2011) ..............................................................................................11

*Hodsdon v. Mars, Inc.*,
   162 F. Supp. 3d 1016 (N.D. Cal. 2016) .............................................................................16

*Hood v. Wholesoy & Co, Modesto Wholesoy Co. LLC*,
   No. 12-CV-5550-YGR, 2013 WL 3553979 (N.D. Cal. July 12, 2013).............................7, 8

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .................................................................................15, 16, 20

*Lathrop v. HealthCare Partners Med. Grp.*,
   114 Cal. App. 4th 1412 (2004) ...........................................................................................17

*Mangindin v. Washington Mut. Bank*,
   637 F. Supp. 2d 700 (N.D. Cal. 2009) ...............................................................................21

*McCoy v. Nestle USA, Inc*,
   173 F. Supp. 3d 954 (N.D. Cal. 2016) ...............................................................................16

*McMillan v. Bank of Am., N.A.*,
   No. 14cv1575-MMA (BLM), 2014 WL 12521701 (S.D. Cal. Nov. 12, 2014)....................21

*Moss v. Infinity Ins. Co.*,
   197 F. Supp. 3d 1191 (N.D. Cal. 2016) .......................................................................15, 16

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

*Ngoc Nguyen v. Wells Fargo Bank, N.A.*,
    749 F. Supp. 2d 1022 (N.D. Cal. 2010) ................................................21

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    No. C 04-0371 JW, 2004 WL 1773349 (N.D. Cal. Aug. 5, 2004) ...................22, 23

*Quelimane Co. v. Stewart Title Guar. Co.*,
    19 Cal. 4th 26 (1998) ................................................14

*Rheumatology Diagnostics Lab., Inc v. Aetna, Inc.*,
    No. 12-cv-05847-WHO, 2015 WL 1744330 (N.D. Cal. Apr. 15, 2015) ...............20

*Rivka Steinberg, v. Icelandic Provisions, Inc.*,
    No. 21-CV-05568-EMC, 2022 WL 220641 (N.D. Cal. Jan. 25, 2022) .................15

*Rogers v. Cal State Mortg. Co. Inc.*,
    No. CV F 09–2107 LJO DLB, 2010 WL 144861 (E.D. Cal. Jan. 11, 2010) ...........22, 23

*Sciacca v. Apple, Inc.*,
    362 F. Supp. 3d 787 (N.D. Cal. 2019) ................................................16

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television
    Litig.*,
    758 F. Supp. 2d 1077 (S.D. Cal. 2010) ................................................15

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ................................................11

*Syntek Semiconductor Co. v. Microchip Tech. Inc.*,
    307 F.3d 775 (9th Cir. 2002) ................................................7, 8

*Techno Lite, Inc. v. Emcod, LLC*,
    44 Cal. App. 5th 462 (2020) ................................................13, 14

*United States v. Adventist Health*,
    No. 17-CV-00613-AWI-SKO, 2020 WL 2522114 (E.D. Cal. May 18, 2020) ...........19

*United States v. Ctr. for Diagnostic Imaging, Inc.*,
    787 F. Supp. 2d 1213 (W.D. Wash. 2011) ................................................19

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ................................................11

**Statutes**

Cal. Bus. & Prof. Code § 650 ................................................ *passim*

Cal. Bus. & Prof. Code § 2000 ................................................9

Cal. Bus. & Prof. Code § 2004 ................................................7, 9

Cal. Bus. & Prof. Code § 2052 .................................................................2, 7, 13, 16, 17

Cal. Bus. & Prof. Code § 2400 ...................................................................2, 7, 13, 16

Cal. Bus. & Prof. Code § 16600 .................................................................... *passim*

Cal. Bus. & Prof. Code § 17200 ...................................................................12, 19, 20

Cal. Bus. & Prof. Code § 17500 .................................................................... *passim*

Welfare & Inst. Code § 14107.2 ...................................................................2, 7, 13, 18

**Other Authorities**

F.R.C.P. Rule 8(a)....................................................................................4, 15, 16, 20

F.R.C.P. Rule 9(b)...............................................................................4, 11, 15, 16, 20

F.R.C.P. Rule 12(b)(1) ...........................................................................................7

F.R.C.P. Rule 12(b)(6) ................................................................................3, 7, 11, 12

F.R.C.P. Rule 12(f) ......................................................................................3, 11, 12

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

Motion to Dismiss
Case No. 3:22-cv-00421-AGT

**STATEMENT OF ISSUES TO BE DECIDED**

1.     Whether Plaintiff's Complaint should be dismissed, or in the alternative, stayed, under the doctrine of primary jurisdiction and/or the abstention doctrine.

2.     Whether Plaintiff's first cause of action for alleged violations of California's Unfair Competition Law (the "UCL") should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for which relief can be granted.

3.     Whether Plaintiff's second cause of action for declaratory relief should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because it relies upon the same allegations as the UCL claim and is therefore duplicative of that claim.

4.     Whether Plaintiff's Complaint, or any portions thereof, should be stricken pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, on the grounds that the Complaint, or portions thereof, are redundant, immaterial, impertinent, or otherwise within the scope of Rule 12(f).

# I.  **INTRODUCTION**

This case, at its core, is about one physician group, Placentia Linda Emergency Physicians, Inc. ("PLEP Physicians"), losing a contract to provide certain medical services to a hospital, Placentia-Linda Hospital (the "Hospital"), to another physician group, which offered to provide the services to the Hospital at a lower cost.  That is not remarkable.  What is remarkable is that the actual plaintiff, American Academy of Emergency Physicians Medical Group, Inc. ("AAEMPG" or "Plaintiff"), is not the physician group which lost the contract, nor are the actual defendants, Envision Healthcare Corporation ("Envision Healthcare Corporation") and Envision Physician Services, LLC ("Envision Physician Services") (together, "Defendants"), the physician group that gained the contract.  Rather, Plaintiff is a third party competitor of Defendants who received a management fee from the group that lost the contract, PLEP Physicians, and has now filed a complaint against competitors, a subsidiary of which provides management services to that group.

The Complaint (the "Complaint") is based on a foundational claim for unfair, unlawful, or fraudulent conduct under California's Unfair Competition Law (the "UCL").[1]  Specifically, in its Complaint, Plaintiff attempts to manufacture a claim against Defendants by pointing to four alleged categories of misconduct: (1) allegedly engaging in, or aiding and abetting, the corporate practice of medicine in the State of California, in violation of California Business and Professions Code Sections 2400 and 2052; (2) unlawfully offering or paying remuneration for the acquisition or retention of emergency department contracts, in alleged violation of California Business and Professions Code Section 650 and Welfare and Institutions Code 14107.2; (3) the alleged imposition of unlawful covenants not to compete in violation of California Business and Professions Code Section 16600 ("Section 16600"); and (4) making certain unspecified misrepresentations to unidentified members of the "public and potential patients" in alleged violation of California Business and Professions Code Section 17500 ("Section 17500").  (Compl. ¶ 57.)

The first and most fundamental flaw in Plaintiff's Complaint is that Plaintiff admits that "[t]he practice of medicine in California is subject to extensive regulatory control . . ." (*Id.* ¶ 13), but fails

---

[1] It should be noted that the Complaint does not, however, allege that the lower cost contract has caused any injury to any patient, or in fact constitutes some form of predatory pricing.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

to acknowledge that there is in California a regulator, the California Medical Board (the "Board"), which has been entrusted by the Legislature with oversight over the matters raised in the Complaint, in particular over what constitutes the corporate practice of medicine. That bar, despite its name, does not bar physicians from owning a medical corporation which provides services to a hospital, instead it bars non-physician ownership of that corporation. Here, the Complaint does not allege that the named Defendants own the physician group which obtained the contract. Rather, the Complaint appears to be that the Defendants, non-physicians, improperly influenced the professional clinical judgment of physicians. This case is therefore, as discussed in more detail below, the paradigm case for dismissal under both the doctrine of primary jurisdiction and the abstention doctrine. The case should therefore be dismissed or, alternatively, stayed until Plaintiff has presented its claims to the Board. This case should therefore be dismissed or, alternatively, stayed.

If the Court is nevertheless inclined to hear this case, it should be dismissed pursuant to Rule 12(b)(6) or, alternatively, stricken pursuant to Rule 12(f), for a litany of reasons. For reasons discussed in more detail below, Plaintiff fails to adequately plead any of its four categories of allegedly "unlawful" conduct. Plaintiff's claim under the "unlawful" prong of the UCL fails—to the extent based upon its first category of allegedly unlawful conduct, the alleged corporate practice of medicine—because the conduct Plaintiff alleges is, taken collectively, nothing more than the provision of scheduling assistance, billing and financial assistance, and the provision of certain non-binding guidelines. There is no allegation that either of the Defendants ever examined any patient, wrote any prescription, diagnosed any illness, or otherwise treated or dictated the treatment of any patient. Taken together, the allegations Plaintiff pleads are, therefore, no more than the provision of non-medical business services. Plaintiff's claim under the "unlawful" prong of the UCL next fails—to the extent based upon the second category of allegedly unlawful conduct, the alleged provision of unlawful remuneration for referrals—because there are no facts alleged in the Complaint demonstrating that either of the Defendants provided any remuneration whatsoever, and to the extent that the Complaint references any consideration allegedly provided by any party, the Complaint does not plead facts sufficient to demonstrate that such consideration was other than fair market value. Next, Plaintiff's claims fail—to the extent based upon the third category of allegedly unlawful

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

conduct, the purported imposition of unlawful covenants not to compete in violation of Section 16600—because Plaintiff, apparently aware of the lack of legal merit of its Section 16600 misleadingly omits key clauses of the provisions to which they cite.[2] But even the portions that Plaintiff does cite makes clear that Defendants are not parties to the contracts containing such provisions and, in any event, a plain reading of the provision upon which Plaintiff relies demonstrates that the provision in question does not violate Section 16600. Specifically, the provision primarily restricts conduct during the term of the contract, to which Section 16600 does not apply. To the extent it relates to conduct following the term of the contract, it merely reaffirms that the parties to the contract will not induce the breach of a contract, a pre-existing obligation not to induce the breach of existing contracts, an obligation that is well established in California law in the form of the tort of intentional interference with contract. Finally, Plaintiff's claim under the "unlawful" prong based upon alleged violations of Section 17500 fails because Plaintiff fails to satisfy even the basic pleading requirements of Rule 8(a), much less the heightened requirements of Rule 9(b), as required to state its Section 17500 claim here. Plaintiff does not identify *any* specific statement, much less plead the who, what, where, and how required to plead a violation of Section 17500 here.

Putting aside Plaintiff's failure to properly allege a claim under the UCL's "unlawful" prong, Plaintiff likewise fails to sufficiently plead a claim under the UCL's other two prongs – the statute's "unfair" and "fraudulent and misleading" prongs. Plaintiff fails to plead a claim under the "unfair" prong because it fails to plead the existence of qualifying anticompetitive conduct. Indeed, the sole allegedly anticompetitive conduct described in the Complaint, Defendants' alleged use of noncompetition agreements, is not conduct by Defendants at all. In any event, a careful read of the language of the provision at issue makes clear that Plaintiff's characterization of that provision is wholly without merit. Plaintiff's claim under the "false or misleading" prong of the UCL fails because Plaintiff neglects to allege any false statement, much less do so with the specificity required to satisfy Rule 9(b). Similarly, Plaintiff's UCL claim fails under all prongs as against Envision

---

[2] Specifically, Plaintiff omits the very first clause of the provision at issue, which states "Contractor agrees that *during the Term of this Agreement*, he/she shall not . . . ." (emphasis added.) This omission is undoubtedly intentional because, as discussed below, Courts have held that the protections of Section 16600 do not apply during the term of an agreement.

Healthcare Corporation because Plaintiff fails to plead virtually any specific facts against that entity, and Plaintiff's reliance on doctrines of vicarious liability is not legally cognizable. Finally, Plaintiff's declaratory relief claim fails because it relies upon the same allegations as the UCL claim and is therefore duplicative of that claim.

For all of these reasons, and the additional reasons discussed more fully below, Defendants' motion should be granted.

## II. <u>PERTINENT ALLEGATIONS OF THE COMPLAINT</u>

The following are the fundamental allegations of the Complaint:[3]

### A. The Parties

Plaintiff alleges Envision Physician Services is a multispecialty physician group and healthcare management team with over 25,000 clinicians 1,600 employees, and over 780 hospitals. (Compl. ¶ 20.) Envision Physician Services provides services to physician groups including billing and collection, communication with vendors, and finances. (*Id*.) Envision Healthcare Corporation is the parent of Envision Physician Services. (*Id.* ¶ 19.) Plaintiff conclusorily alleges Envision Healthcare Corporation and Envision Physician Services "are alter-egos of each other having common ownership and no separate corporate identities" and they are "co-conspirators." (*Id.* ¶ 3.)

Plaintiff AAEMPG alleges Plaintiff is another non-medical corporation that provides administrative services to physician groups, including in California. (*Id*. ¶ 1.) Until August 2021, AAEMPG provided administrative services to one such physician group, the PLEP Physicians, which then had an exclusive contract for the provision of physician staffing in the Emergency Department ("ED") at Placentia-Linda Hospital. (*Id.* ¶ 5.) Prior to August 2021, Plaintiff earned income from the provision of such emergency services, which it lost when the Hospital ED contract terminated according to its terms. (*Id.* ¶ 1.)

### B. The Contract With the Hospital

Plaintiff alleges in the Complaint that PLEP Physicians was replaced as the exclusive provider of ED services at the Hospital, by another group of physicians, which Plaintiff alleges is a separate

---

[3] Defendants dispute the accuracy of the Complaint, which is riddled with inaccurate and incomplete statements. Nevertheless, Defendants assume them to be true for purposes of this Motion.

Medical Corporation organized under California law. (*Id.* ¶ 23.) Plaintiff claims physicians affiliated with the group are required to enter into an agreement (the "Contractor Agreement"), which it claims contains a covenant that physicians:

> (i) directly or indirectly induce or persuade (or attempt to induce or persuade) any person or entity (including any health care entity) to terminate its contract with any affiliates, subsidiaries, or managed entities thereof, Envision Healthcare Company, or any affiliates, subsidiaries, or managed entities thereof, or (ii) other than as an independent contractor of Company, solicit to provide any medical or management services to any hospital or medical facility at which medical services are provided by Contractor hereunder. In addition, for twelve (12) months following termination of this Agreement, Contractor shall not directly or indirectly induce, persuade (or attempt to induce or persuade) any person or entity to terminate or breach any contract with Company, any affiliates, subsidiaries, or managed entities thereof, Envision Healthcare Company, or any affiliates, subsidiaries, or managed entities.

(*Id.* ¶ 42.) Plaintiff does not allege that either of the Defendants are parties to this Contractor Agreement. Plaintiff conclusorily alleges other physician groups with which Envision Physician Services contract have similar covenants. (*Id.* ¶ 43.)

Plaintiff alleges that for the contract for ED services at the Hospital, Defendants provided alleged discounts, in the form of waived subsidies, in exchange for the award of a contract to provide anesthesia services at the Hospital. (*Id.* ¶¶ 31-32.) Plaintiff conclusorily alleges that the rates received under the contract were below fair market value (*Id.* at Prayer for Relief ¶ 3), but does not plead the actual fair market value of such a contract, nor any other facts from which to support that conclusion.

## C. Plaintiff's Causes of Action

Plaintiff alleges that Defendants are engaged in four categories of unlawful conduct. *First*, Plaintiff alleges that Defendants have engaged in unlawful conduct by allegedly imposing upon physicians unlawful restrictive covenants in violation of California Business and Professions Code Section 16600. (*Id.* ¶ 57.) *Second*, Plaintiff asserts that Defendants falsely represented that Envision Physician Services is a physician group lawfully structured and able to provide medical services to patients in violation of Business and Professions Code Section 17500. (*Id.*) Plaintiff does not identify any specific statement by Defendants, much less provide any details regarding the contents, timing, recipients or any other information about such alleged misrepresentations. (*Id.*) *Third*, AAEMPG claims that Defendants unlawfully offered or paid consideration for the acquisition or retention of

1  emergency department contracts, in violation of California Business and Professions Section 650[4]

2  and Welfare and Institutions Code 14107.2. (*Id.*) *Fourth*, AAEMPG asserts that Envision Physician

3  Services is engaged in, or aids and abets the corporate practice of medicine in the State of California,

4  in violation of California Business and Professions Code Sections 2400 and 2052. (*Id.*)

5  Notably, there is no allegation of any harm. Instead, the allegation is merely that the contract

6  was awarded to a lower bidder. Nevertheless, based thereon, Plaintiff asserts two causes of action:

7  (1) Plaintiff's first cause of action for injunctive relief under the UCL; and (2) Plaintiff's second

8  cause of action for declaratory relief.

## III. THE COURT SHOULD DISMISS THIS ACTION UNDER THE DOCTRINE OF PRIMARY JURISDICTION OR, ALTERNATIVELY, THE ABSTENTION DOCTRINE

The California Legislature has entrusted the regulation of the ban on the corporate practice of

medicine to the Board. Cal. Bus. & Prof. Code § 2004. Section 2004 of California and Business

Professions Code specifically states, the Board "shall have the responsibility for . . . [t]he

enforcement of the disciplinary and criminal provisions of the Medical Practice Act." *Id.*

Under Rule 12(b)(1), the Court may dismiss an action under the abstention doctrine or the

doctrine of primary jurisdiction. *Free Conferencing Corp. v. T-Mobile US, Inc.*, No. 2:14-CV-07113-

ODW, 2014 WL 7404600, at *3 (C.D. Cal. Dec. 30, 2014) (dismissing pursuant to 12(b)(1) and

finding primary jurisdiction applies to the entire complaint that included UCL claims); *Hood v.*

*Wholesoy & Co, Modesto Wholesoy Co. LLC*, No. 12-CV-5550-YGR, 2013 WL 3553979, at *6

(N.D. Cal. July 12, 2013) (dismissing Plaintiff's claims pursuant to 12(b)(1) and 12(b)(6) under the

doctrines of primary jurisdiction and abstention). Primary jurisdiction "is a prudential doctrine under

which courts may, under appropriate circumstances, determine that the initial decision-making

responsibility should be performed by the relevant agency rather than the courts." *Syntek*

*Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002). The doctrine permits

courts to dismiss "an otherwise cognizable claim" when it "implicates technical policy questions"

---

[4] Plaintiff erroneously cites to California Penal Code Section 650.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

that a regulatory agency should resolve in the first instance. *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). The doctrine of primary jurisdiction allows a court to stay a proceeding or dismiss a complaint pending the resolution "of an issue within the special competence of an administrative agency." *Id.* Primary jurisdiction applies "if a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency, and if protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." *Id.* (citations and internal quotation marks omitted).

Although no fixed formula exists for applying the doctrine of primary jurisdiction (*Davel Comm'ns, Inc. v. Qwest Corp.,* 460 F.3d 1075, 1086 (9th Cir.2006)), the Ninth Circuit has considered whether (1) the issue is within the "conventional experiences of judges" or "involves technical or policy considerations within the agency's particular field of expertise," (2) the issue "is particularly within the agency's discretion," and (3) "there exists a substantial danger of inconsistent rulings." *Brinkerhoff v. L'Oreal USA, Inc*., 417 F. Supp. 3d 1308, 1317 (S.D. Cal. 2019) (citations omitted). Courts have invoked the doctrine of primary jurisdiction in other cases involving complex issues in the healthcare field. *See Gordon v. Church & Dwight Co*., No. 09-cv-5585 PJH, 2010 WL 1341184, at *2 (N.D. Cal. Apr. 2, 2010) (granting dismissal under primary jurisdiction, in part, because "[t]he issue of medical device labeling requires expertise as well as uniformity in administration."); *see also Bauman v. Mount Sinai Hosp*., 452 F. Supp. 2d 490, 501 (S.D.N.Y. 2006) (invoking primary jurisdiction and noting that that New York State Public Health Council could more appropriately consider medical issues such as patient care and thorough medical investigations of a physician).

Under the abstention doctrine, Courts likewise have discretion to refrain from deciding a claim seeking equitable relief under the UCL. *Hood,* 2013 WL 3553979, at *6 (dismissing case under abstention doctrine). "[T]he equitable remedies under the UCL and FAL 'are subject to the broad discretion of the trial court.'" *Hambrick v. Healthcare Partners Med. Grp., Inc*., 238 Cal. App. 4th 124, 155 (2015). Under the abstention doctrine, a trial court may abstain from adjudicating a suit that seeks equitable remedies if granting the requested relief would require a trial court to assume the functions of an administrative agency, or to interfere with the functions of an administrative agency.

*See id.* Abstention is likewise appropriate if the lawsuit involves determining complex economic policy, which is best handled by the Legislature or an administrative agency, or if adjudicating the case would require extensive administrative oversight. *Id.* at 150; *see also Alvarado v. Selma Convalescent Hosp.*, 153 Cal. App. 4th 1292, 1306 (2007) (finding abstention appropriate where equitable relief was sought and the UCL suit involved determining complex economic policy which was better handled by the legislature or an administrative agency); *Desert Healthcare Dist. v. PacifiCare, FHP Inc.*, 94 Cal. App. 4th 781, 795 (2001) *disapproved of on other grounds by Centinela Freeman Emergency Med. Assocs. v. Health Net of California, Inc.*, 1 Cal. 5th 994 (2016) (California courts have recognized that "because the remedies available under the UCL, namely injunctions . . . are equitable in nature, courts have the discretion to abstain from employing them."). Here, the requirements for both doctrines are satisfied.

In this case, there is an administrative agency entrusted by the government with oversight over the issues raised by Plaintiff's Complaint, the Medical Board. The Board is specifically entrusted by California's Legislature with oversight and enforcement of licensure, including specifically proceedings for the unauthorized practice of medicine. The Board is an expansive regulatory body that regulates the practice of medicine and has the ability to hold hearings and issue punishments for violations, including the corporate practice of medicine. The "Board's Enforcement Program protects California consumers through the vigorous, objective enforcement of the Medical Practice Act." Cal. Bus. & Prof. Code §§ 2000, 2004. Thus, the Board has authority to conduct a disciplinary process including administrative hearings overseen by a panel or an administrative law judge. *Id.* The Board can and does initiate and pursue enforcement actions for engaging in or aiding and abetting the unauthorized practice of medicine. *Id.*

The Board has been entrusted by the Legislature with determining and overseeing the precise scope and bounds of the practice of medicine in California. *Id.* The resolution of Plaintiff's claims in this case places at issue complicated concerns of public policy which were entrusted to that entity by the Legislature, including whether an entire class of entities performing valuable services within the medical field are, in fact, not permissible; the details of specific types of compensation arrangements and the specifics of individual factors that may be taken into account in referrals; and

the specific delineation between whether numerous categories of nuanced administrative activities can permissibly be conducted.

Indeed, the definitional issues here with respect to what constitutes the practice of medicine are precisely the type of complicated definitional requirements that Courts have held, in the context, of complicated multi-player industries, to merit application of the judicial abstention doctrine. For example, in *Hambrick*, 238 Cal. App. 4th at 132–33, a putative UCL claim placed at issue was whether an entity constitutes an unlicensed "health care service plan" within the meaning of Health and Safety Code ("HSC") Section 1345; in *Alvarado*, 153 Cal. App. 4th at 1306, a putative UCL claim placed at issue whether entities constituted "skilled nursing facilit[ies]" within the meaning of Section 1276.5 of the HSC; and in *Desert Healthcare Dist.*, 94 Cal. App. 4th at 795, a putative UCL claim placed at issue whether and entity constituted a "risk bearing" organization under the HSC. In all three cases, the Court concluded that the scope and bounds of these terms presented complicated issues of public policy that were appropriately delegated to the applicable administrative agency—the DMHC and HSC.

Further, resolution of this matter would require exactly the type of complex oversight that the two doctrines exist to prevent. Resolving these questions would require the Court to oversee the specifics of when and to what extent Envision Healthcare Corporation, Envision Physician Services, and similar entities are required to secure licensure, for what purposes and activities, and the individual terms of a myriad of types of contractual relationships, with hospitals, medical groups, and others. Indeed, given that Plaintiff explicitly complains Defendants provide improper compensation and asks to enjoin any contracts providing such alleged compensation; the only remedy for which would be to reform these contracts. (*See, e.g.*, Compl. ¶¶ 30-31, 33, 57, 63, 67, 74.) Therefore, the only way to adequately address that issue would be to reform and rewrite each of the contracts on both ends.

## IV. **THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6) OR, ALTERNATIVELY, STRICKEN PURSUANT TO RULE 12(F)**

A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a court must accept the factual allegations in the complaint as true, it need not accept as true "conclusory allegations that are contradicted by documents referred to in the complaint" or "legal conclusions . . . cast in the form of factual allegations." *Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 955 (9th Cir. 2011) (internal quotation marks omitted). "Dismissal is proper where there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal claim." *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011).

Moreover, under Federal Rule of Civil Procedure 9(b), claims sound in fraud must be pleaded with particularity. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). Under Rule 9(b), fraud allegations must include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citing *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106.

Federal Rule of Civil Procedure 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Redundant allegations are those that are needlessly repetitive or wholly foreign to the issues involved in the action." *Cal. Dep't of Toxic Substances Control v. Alco Pacific, Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002) (internal quotation marks and citations omitted). Immaterial matter is "that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) (internal quotation marks and citations omitted). Impertinent matter "consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.*

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

(internal quotation marks and citations omitted). Scandalous matter is that which "improperly casts a derogatory light on someone, most typically on a party to the action." *Germaine Music v. Universal Songs of Polygram*, 275 F. Supp. 2d 1288, 1300 (D. Nev. 2003) (internal quotation marks and citations omitted).

Here, Plaintiff's claims should be dismissed for failure to state a claim pursuant to Rule 12(b)(6) or, alternatively, to the extent that the Court concludes that individual bases for Plaintiff's claims are legally insufficient, stricken as immaterial under Rule 12(f).

### A. Plaintiff's Unfair Competition Law Claims Should Be Dismissed or, Alternatively, Stricken Under Rule 12(f)

California's unfair competition law, Cal. Bus. & Prof. Code § 17200, prohibits "any unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." *See* Cal. Bus. & Prof. Code § 17200. A business practice is "unlawful" under the UCL if it violates an underlying state or federal statute or common law. *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Where, as here, the case involves a lawsuit by one competitor against another, an act is "unfair" if the act "threatens an incipient violation of a [competition law] or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law." *Id.* at 187. Here, Plaintiff fails to state a claim under any of the UCL's three prongs.

### 1. Plaintiff Fails to Adequately Allege The Existence of Unlawful Conduct

In its Complaint, Plaintiff points to four categories of allegedly unlawful conduct. *First*, Plaintiff alleges Defendants have engaged in unlawful conduct by allegedly imposing upon physicians unlawful restrictive covenants in violation of California Business and Professions Code Section 16600. (Compl. ¶ 57.) *Second*, Plaintiff asserts that Defendants have falsely represented that Envision Physician Services is a physician group lawfully structured and able to provide medical services to patients in violation of Business & Professions Code Section 17500. (*Id.*) *Third*, Plaintiff claims that Defendants have unlawfully offered or paid consideration for the acquisition or retention of emergency department contracts, in violation of California Business and Professions Section 650

and Welfare and Institutions Code 14107.2. (*Id.*) *Fourth*, Plaintiff asserts that Envision Physician Services is engaged in, or aids and abets the corporate practice of medicine in the State of California, in violation of California Business and Professions Code Sections 2400 and 2052. (*Id.*) Plaintiff fails to state sufficient facts upon which to base a claim with respect to any of these four categories.

a. <u>*Plaintiff Fails to State a Claim for Unlawful Conduct Based on the Use of Restrictive Covenants*</u>

California Business and Professions Code Section 16600 "invalidat[es] any employment agreement that unreasonably interferes with an employee's ability to compete with an employer *after* his or her employment ends." *Techno Lite, Inc. v. Emcod, LLC*, 44 Cal. App. 5th 462, 471 (2020) (emphasis in original) (citing *Muggill v. Reuben H. Donnelley Corp.*, 62 Cal. 2d 239, 242 (1965).) "[T]he statute does not affect limitations on an employee's conduct or duties *while employed*." *Id.* (emphasis in original). Under Business and Professions Code § 16600, Plaintiff must plead and prove a (1) contract (2) by which someone is restrained from engaging in a lawful profession, trade, or business. Cal. Bus. & Prof. Code § 16600; *Campbell v. Bd. of Trustees of Leland Stanford Junior Univ.*, 817 F.2d 499, 501–02 (9th Cir. 1987).

In the instant case, Plaintiff alleges Envision Physician Services violated Section 16600 by forcing physicians to sign agreements which allegedly unduly interfere with their ability to compete. (Compl. ¶ 57.) In support of this position, Plaintiff points to and selectively excerpts a limited portion of the Contractor Agreement. A careful review of that provision, however, makes clear that Plaintiff's claims for alleged violations of Section 16600 are utterly unfounded. On its face, the provision provides that contractors will not engage in only the following three limited categories of conduct: (1) during the term of the Contractor Agreement, will not "directly or indirectly induce or persuade (or attempt to induce or persuade) and person or entity . . . to terminate its contract" with a specified list of persons (*Id.* ¶ 42); (2) during the term of the Contractor Agreement, will not "other than as an independent contractor of Company, solicit or provide any medical or management services to any hospital or medical facility at which medical services are provided by Contractor" (*Id.*); and (3) for a period of twelve (12) months following termination of the Contractor Agreement,

will "not directly or indirectly induce, persuade (or attempt to induce or persuade) any person or

entity … to terminate or breach any contract" with a specified list of persons. (*Id.*)

Plaintiff's attempts to state a claim based on these restrictions fails. Plaintiff's Complaint makes clear on its face that Defendants are not a party to any such contracts. Rather, Plaintiff expressly admits that the contracts are between medical groups separately incorporated under the law. (*Id.* ¶¶ 25, 28-30, 32.) Plaintiff's claim is therefore an inappropriate attempt to hold Defendants vicariously liable for the contracts of others. *Hanna v. Walmart Inc.*, No. 5:20-cv-01075-MCS-SHK, 2020 U.S. Dist. LEXIS 237505, at *13-18 (C.D. Cal. Nov. 4, 2020). Further, although Plaintiff conspicuously omits the beginning of the provision that it selectively cites from the Contractor Agreement, it is clear from the context that the first and second clauses only apply during the term of the Contractor Agreement. Accordingly, Section 16600 has no application to the first and second clauses. *See Techno Lite, Inc.*, 44 Cal. App. 5th at 474 ("It should be even more obvious that no firmly established principle of public policy authorizes an employee to become his employer's competitor while still employed. Section 16600 is not an invitation to employees to bite the hand that feeds them.").

Finally, the sole remaining clause of the Contractor Agreement, which is the only clause that applies after the agreement's termination, does not violate 16600 because it places no additional restriction on Contractors beyond those already imposed by law. In its entirety, the third clause is nothing more than a covenant that the Contractor will not engage in the tort of intentional interference with contract, an obligation that already exists by law. *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 57 (1998), *as modified* (Sept. 23, 1998) (upholding claim for intentional interference with a contract).

Accordingly, Plaintiff's UCL claim fails, and the allegations of the Complaint should be stricken to the extent they are based upon alleged violations of Section 16600.

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

b.    *Plaintiff Fails to State a Claim for Unlawful Conduct Predicated on Alleged Violations of Section 17500*

Under Business Profession Code Section 17500, Plaintiff must show false advertising or advertising that "although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Rivka Steinberg, v. Icelandic Provisions, Inc.*, No. 21-CV-05568-EMC, 2022 WL 220641, at \*3 (N.D. Cal. Jan. 25, 2022).  The amount of specificity required in alleging a Section 17500 claim depends on the nature of the allegations.  *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1199-1200 (N.D. Cal. 2016).  If a plaintiff alleges fraud as the basis for the violation of Section 17500, the claim is subject to Rule 9(b)'s heightened pleading requirement.  *Id.*  If that requirement is not met, the Court must disregard the fraud allegations to determine whether a claim has been stated under the notice pleading standards of Rule 8(a).  *Id.*  Under that standard, a Section 17500 claim must be alleged with "reasonable particularity."  *Id.* (citing *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 619 (1993)); *see also In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1093-94 (S.D. Cal. 2010) (finding the failure to identify "specific advertisements, when and where they were shown, or why they were untrue or misleading . . . does not provide [defendant] with adequate notice of its alleged violations of the FAL [under either Rule 9(b) or Rule 8].").

Plaintiff's Section 17500 allegations here are plainly sound in fraud and are therefore subject to the heightened pleading requirements of Rule 9(b).  Plaintiff specifically accuses Defendants of, among other things, "[d]eceiving the public and potential patients by representing that Envision Physician Services was a physician group lawfully structured and able to provide medical services to patients . . . ." (Compl. ¶ 57), and asserts that "Defendants actively conceal their unlawful agreements and business practices . . . ."  (*Id.* ¶ 51.)  These allegations are precisely the type of allegations that Courts have repeatedly held to sound in fraud.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) ("Kearns's claims of nondisclosure [under the UCL] were couched in general pleadings alleging Ford's intent to conceal from customers that CPO vehicles were essentially the same as ordinary used vehicles. . . . Because Kearns's TAC alleges a unified

fraudulent course of conduct, his claims against Ford are grounded in fraud."); *Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787, 796–97 (N.D. Cal. 2019) ("Plaintiff's UCL and CLRA claims are grounded in Apple's allegedly fraudulent conduct in concealing material facts regarding the alleged defect, and Rule 9(b)'s heightened pleading standard applies.").[5]

Plaintiff here, however, fails to satisfy even the lower Rule 8(a) standard. For example, in *Moss*, 197 F. Supp. 3d at 1199-1200, the plaintiff alleged that "[b]ased upon the representations made via statements, circular and solicitation materials [defendant made] . . . , Plaintiff agreed to purchase [] insurance." *Id.* The *Moss* court concluded that these allegations failed to satisfy even the "reasonable particularity" standard of Rule 8(a). *Id.* In this case, if anything, Plaintiff provided far less. Nowhere in the Complaint does Plaintiff identify any specific statement, much less plead who made the statements, when, to whom, or what specifically they said. In contrast to the already insufficient allegations of the *Moss* case, Plaintiff does not even identify the medium by which such representations were allegedly made. Plaintiff fails to plead a violation of Section 17500, and its UCL claim based thereon should be dismissed or, alternatively, stricken.

  c. <u>*Plaintiff Fails to Plead a Claim Based Upon the Alleged Corporate Practice of Medicine*</u>

Plaintiff next alleges Defendants engaged in the corporate practice of medicine in violation of two statutes: Business & Professions Code Sections 2400 and 2052. (Compl. ¶ 57.) Under Business and Profession Code Section 2400, "[c]orporations and other artificial legal entities shall have no professional rights, privileges, or powers." Cal. Bus. & Prof. Code § 2400. Plaintiff must prove that the physician takes a salary from a "for-profit corporation or other artificial legal entity."

---

[5] Plaintiff's complaint as worded, appears to attempt to allege an affirmative misrepresentation theory. To the extent that Plaintiff instead attempts to assert a claim based on alleged misrepresentations, the Ninth Circuit has been consistent in determining that a plaintiff cannot maintain a claim under Section 17500 based upon omissions. *See McCoy v. Nestle USA, Inc*, 173 F. Supp. 3d 954, 970 (N.D. Cal. 2016), *aff'd sub nom. McCoy v. Nestle USA, Inc.*, 730 F. App'x 462 (9th Cir. 2018) ("Because McCoy bases her claims on pure omissions, Opp'n at 12 n. 64, she fails to allege that Nestlé "ma[d]e or disseminate[d] or cause[d] to be made or disseminated" any false or misleading statement, and thus fails to state a claim under the FAL."); *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1023–24 (N.D. Cal. 2016), *aff'd*, 891 F.3d 857 (9th Cir. 2018) (Contending "when the defendant has not made any statements at all, a plaintiff cannot assert a claim under the FAL[,]" and subsequently dismissing the plaintiff's claim on this basis).

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

*Lathrop v. HealthCare Partners Med. Grp.*, 114 Cal. App. 4th 1412, 1420 (2004), *as modified on denial of reh'g* (Feb. 11, 2004). Under Business Profession Code Section 2052, the plaintiff must prove that the defendant is "(1) holding itself out as practicing any system or mode of treating the sick or afflicted in this state, and (2) actually treating the sick and afflicted in this state, as by, among other things, "prescribing" medication for such persons." *Hageseth v. Superior Ct.*, 150 Cal. App.4th 1399, 1418 (2007).

Once again, Plaintiff fails to plead claims satisfying this requirement. Plaintiff fails to allege a claim against either entity under the UCL's unlawful prong based upon Defendants' alleged corporate practice of medicine because Plaintiff's own Complaint admits that the entity which provides medical services at the hospital is a physician group, overseen by a physician. (Compl. ¶ 26.) At the outset, Plaintiff alleges "Envision decides how many and which physicians will be hired, their compensation, and their work schedule. Envision controls and/or influences advertising for physician vacancies, vetting physicians, establishing the terms of employment, scheduling the hours physicians will work, staffing levels, the number of patient encounters, and working conditions." (*Id*. ¶ 35.) Next, Plaintiff complains that "Envision negotiates payor contracts with health insurers that pay physicians their fees. Physicians are not made aware of the terms of those contracts. Envision requires physicians to assign their rights to the proceeds of their medical billings to Envision then determines what is charged to patients and insurers. It controls coding decisions and bills patients and or insurers for such medical services." (*Id*. ¶ 36.) Lastly, Plaintiff alleges that "Envision establishes and promulgates physician 'best practices,' 'red rules,' and 'evidence-based pathways' protocols which enumerate standards for treating patients and are a form of clinical oversight." (*Id*. ¶ 38.)

Defendants dispute the accuracy of Plaintiff's characterizations, but taken collectively, these are allegations that Defendants performed scheduling services, billing services and provided certain suggested non-mandatory guidelines — all of which are, on their face, non-medical business services designed to streamline the business. There is no allegation in the Complaint that either Defendant ever consulted with any patient, provided any patient diagnosis, prescribed or administered any patient drug, conducted any surgery, or overruled any medical decision. Rather, all the activities

alleged are non-medical business services designed to streamline the business aspects of a medical practice so that the physicians can focus on treating patients.

d. <em><u>Plaintiff Fails to Plead a Claim Based Upon the Granting of Alleged Kickbacks</u></em>

Business Profession Code Section 650 prohibits a licensed physician from offering any refund, commission, discount, or other consideration, "as compensation or inducement for referring patients, clients, or customers to any person." Cal. Bus. & Prof. Code § 650. Section 650 makes clear that, "[t]he payment or receipt of consideration for services . . . shall not be unlawful if the consideration is commensurate with the value of the services furnished or with the fair rental value of any premises or equipment leased or provided by the recipient to the payer." Cal. Bus. & Prof. Code § 650(b). Like its other claims, Plaintiff's attempt to plead a claim based upon alleged violations of Section 650 fail for several independent reasons. Likewise, Welfare & Inst. Code § 14107.2 restricts "[a]ny person who solicits or receives any remuneration, including, but not restricted to, any kickback, bribe, or rebate, directly or indirectly, overtly or covertly, in cash or in valuable consideration of any kind . . . ." Cal. Welf. & Inst. Code § 14107.2.[1].

Plaintiff's allegation is in essence that Defendants have violated Section 650 because a separate corporation allegedly offered a lower price in order to be awarded an exclusive contract for the provision of ED services at the Hospital. (Compl. ¶¶ 23, 25, 32.) Plaintiff's Complaint makes clear that Envision Physician Services and Envision Healthcare Corporation are separately incorporated corporations. (*Id*. ¶¶ 2-3.) There is no allegation of any contract between Envision Physician Services or Envision Healthcare Corporation and the Hospital. Because, aside from Plaintiff's bald statements of conclusion, the Complaint does not allege a referral or remuneration by either of the Defendants, it cannot state a claim against either Defendant entity for a violation of Section 650.

Further, Section 650 makes clear that it does not render remuneration unlawful if the remuneration at issue is provided at fair market value. Cal. Bus. & Prof. Code § 650(b). Courts assessing cases filed under similar federal anti-kickback statutes have consistently held that to satisfy the standard imposed by *Twombly / Iqbal* with respect to such claims, a plaintiff must plead the fair

market value of such services. *See United States v. Adventist Health*, No. 17-CV-00613-AWI-SKO, 2020 WL 2522114, at *6 (E.D. Cal. May 18, 2020) (citing *United States ex rel. Gough v. Eastwestproto, Inc.*, 2018 WL 6929332, at *8 (C.D. Cal. Oct. 24, 2018)) ("finding that relators did not sufficiently demonstrate 'remuneration' at the pleading stage where the complaint did not plead the 'comparative' market rates of the allegedly discounted services."); *see also United States v. Ctr. for Diagnostic Imaging, Inc.*, 787 F. Supp. 2d 1213, 1223 (W.D. Wash. 2011), *amended on reconsideration in part*, No. C05-0058RSL, 2011 WL 13353774 (W.D. Wash. Apr. 25, 2011) ("Although plaintiffs contend that defendants offered discounts to induce referrals, they have failed to allege that the discounted services were offered for less than fair market value, which is 'the gauge of value when assessing the remuneration element of the offense.'").

Here, like in those other cases, Plaintiff utterly fails to plead facts sufficient to demonstrate that the contractual rate was so low that it constituted a "kickback" by being below the fair market value of the services at issue, and there are therefore no facts, aside from Plaintiff's bare statements of conclusion, from which to conclude that the contracts at issue are anything other than commensurate with fair market value.

## 2. Plaintiff Fails to Plead a Claim Under the UCL's Unfair Prong

Where UCL claims are brought by a competitor rather than an aggrieved customer, claims under the UCL's "unfair" prong are governed by the unfairness standard articulated by *Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th 163. Under the *Cel-Tech* standard, "[w]hen a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200, the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel–Tech*, 20 Cal. 4th at 187. Further, a claim governed by the *Cel-Tech* standard must be "tethered to specific constitutional, statutory or regulatory provisions." *Rheumatology Diagnostics Lab., Inc v. Aetna, Inc.*, No. 12-cv-05847-WHO, 2015 WL 1744330, at *24 (N.D. Cal. Apr. 15, 2015) (quoting *Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255, 1271 (2006)); *see also Cel-Tech*, 20 Cal. 4th at 185-87.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

Here, Plaintiff identifies itself in the Complaint as a competitor to Defendants. (Compl. ¶ 1.) Its claims are therefore subject to the *Cel-Tech* unfairness standard. But Plaintiff does not plead any violation of the antitrust law. And the only conduct it identifies in the Complaint as restricting competition is the alleged use of noncompetes that violate Section 16600. Thus, Plaintiff's claim under the UCL's "unfair" prong fails for the reasons discussed in Section (A)(1)(a) above.

### 3. Plaintiff Fails to Plead a Claim Under the Fraudulent or Misleading Prong of the UCL

A claim under the fraud prong of Section 17200 is subject to the heightened pleading requirements of Rule 9 of the Federal Rules of Civil Procedure. *Kearns*, 567 F.3d at 1125 ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the … UCL."). Here, as discussed above regarding Plaintiff's claims for alleged violations of Section 17500, Plaintiff's Complaint fails to satisfy even the lower standard of Rule 8(a), much less the heightened standard of Rule 9(b). *See supra* § (A)(1)(b). Thus, Plaintiff's claims fail under the UCL's fraudulent and misleading prong as well.

### B. Plaintiff's Declaratory Relief Claim Should Be Dismissed

In the Ninth Circuit, "[d]eclaratory relief is appropriate (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Guerra v. Sutton*, 783 F.2d 1371, 1376 (9th Cir. 1986) (internal quotation marks omitted). However, "[a] claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action." *Mangindin v. Washington Mut. Bank*, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009). Furthermore, "courts may decline to exercise jurisdiction where a declaratory judgment claim only seeks to review the legality of past conduct, or where it simply duplicates other, more germane causes of action, even if those cause of action fail." *Cont'l Cas. Co. v. Nationwide Mut. Ins. Co.*, No. CV 14–07326–GW (PLAx), 2014 WL 12607694, at *7 (C.D. Cal. Nov. 3, 2014).

Consistent with this principle, courts in this Circuit routinely dismiss declaratory relief claims that are based on the same allegations as other causes of action. *See McMillan v. Bank of Am., N.A.*, No. 14cv1575-MMA (BLM), 2014 WL 12521701, at *7 (S.D. Cal. Nov. 12, 2014) (dismissing the

plaintiff's declaratory relief claim with prejudice because the "claim for declaratory relief is predicated upon the same allegations supporting their other causes of action . . . ."); *Ngoc Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1038 (N.D. Cal. 2010) (dismissing Plaintiff's UCL claims, among others, and finding "Plaintiff has failed to state any claims, so there is no actual and present controversy. Further, there has been no showing as to how the declaratory relief claim is not duplicative of other claims in this case.").

That is precisely the case here – Plaintiff's declaratory relief claim merely duplicates its UCL claim and Plaintiff's second cause of action for declaratory relief should similarly be dismissed.

### C.    Plaintiff Fails to State a Claim Against Envision Healthcare Corporation

Finally, although Plaintiff's claims against both Defendants fail for the reasons set forth above, they further fail with respect to the Envision Healthcare Corporation specifically because the Complaint pleads virtually no specific facts with respect to that entity. In its Complaint, Plaintiff alleges only the following three sets of specific allegations with respect to Envision Healthcare Corporation: (1) Envision Healthcare Corporation is an entity incorporated under the laws of the State of Delaware and does business in California, that was formed in June 2016 by merging certain prior companies (Compl. ¶¶ 2, 19); (2) Envision Healthcare Corporation "operates" at least twelve E.D.'s in the State of California, and allegedly "owns and manages" Envision Physician Services (*Id.* ¶¶ 2, 5); and (3) Envision Healthcare Corporation and Envision Physician Services are "alter egos," "agents," or in a "conspiracy" with each other. (*Id.* ¶ 2.) The remainder of the Complaint merely generically conflates Envision Healthcare Corporation with Envision Physician Services by lumping both entities together under the label "Envision." (*Id.*, passim.) Nowhere does the Complaint identify any other specific act by Envision Healthcare Corporation. Claims under the UCL cannot be predicated on vicarious liability, but instead "must be based on . . . personal 'participation in the unlawful practices' and 'unbridled control' over the conduct that allegedly violates the UCL." *Hanna*, 2020 U.S. Dist. LEXIS 237505, at *13-14 (quoting *Emery v. Visa Internat. Serv. Ass'n*, 95 Cal. App. 4th 952, (2002) (quoting *People v. Toomey*, 157 Cal. App. 3d 1 (Cal. Ct. App. 1984))); *see also Barrett v. Apple Inc.*, 523 F. Supp. 3d 1132, 1149 (N.D. Cal. 2021) (grating Apple's motion to dismiss the plaintiffs' UCL claim to the extent it was based on third-party liability); *Rogers v. Cal*

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

*State Mortg. Co. Inc.*, No. CV F 09–2107 LJO DLB, 2010 WL 144861, at \*13–16 (E.D. Cal. Jan. 11, 2010) (internal quotation marks and citations omitted) (dismissing the plaintiff's UCL claim for failing to allege with particularity the defendant's involvement in the alleged violations); *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, No. C 04-0371 JW, 2004 WL 1773349, at \*8 (N.D. Cal. Aug. 5, 2004) (dismissing claims where "Plaintiff has simply failed to allege facts indicating that the defendants assisted specifically in the unlawful conduct of the third parties."). Plaintiff fails entirely to meet this standard with respect to Envision Healthcare Corporation.

These handful of allegations are insufficient to state a claim. Plaintiff's first category of allegations, Envision Healthcare Corporation's state of incorporation and its formation through merger in June 2016, to the extent that they prove anything at all (Compl. ¶¶ 2, 19), prove that Envision Healthcare Corporation is a separate and distinct person with a separate existence under the law. Plaintiff cannot generically conflate it with Envision Physician Services. Plaintiff's second category of allegations, that Envision Healthcare Corporation "operates" E.D.s in the State of California and "manages" Envision Physician Services (*Id.* ¶¶ 2, 5), are precisely the type of bare conclusions that are wholly insufficient to satisfy *Twombly / Iqbal*. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555. These allegations provide no details regarding what that alleged operation or management entails, nor do they provide any basis from which to conclude that Envision Healthcare Corporation directly participated in the specific conduct that forms the basis of Plaintiff's Complaint. *See Perfect 10, Inc.*, WL 1773349, at \*8.

Finally, Plaintiff's third category of allegations consists of nothing more than the rote recitation of handful of theories of vicarious liability. Not only are these insufficient bare legal conclusions, but Plaintiff's attempts to rely on theories of vicarious liability are insufficient as a matter of law. Claims under the UCL cannot be predicated on vicarious liability, but instead "must be based on . . . personal 'participation in the unlawful practices' and 'unbridled control' over the conduct that allegedly violates the UCL." *Hanna*, 2020 U.S. Dist. LEXIS 237505, at \*13-14 (C.D. Cal. Nov. 4, 2020) (quoting *Emery v. Visa Internat. Serv. Ass'n*, 95 Cal. App. 4th 952, (2002) (quoting *People v. Toomey*, 157 Cal. App. 3d 1 (Cal. Ct. App. 1984))); *see also Barrett*, 523 F. Supp. 3d at 1149 (grating Apple's motion to dismiss the plaintiffs' UCL claim to the extent it was based

on third-party liability); *Rogers* , 2010 WL 144861, at *13  (internal quotation marks and citations omitted) (dismissing the plaintiff's UCL claim for failing to allege with particularity the defendant's involvement in the alleged violations); *Perfect 10, Inc.*, 2004 WL 1773349, at *8 (dismissing claims where "Plaintiff has simply failed to allege facts indicating that Defendants assisted specifically in the unlawful conduct of the third parties.").

Accordingly, Plaintiff's claims against Envision Healthcare Corporation should be dismissed in their entirety for failure to allege facts against that entity.

## V.  CONCLUSION

For the foregoing reasons, the Court should dismiss each claim asserted in Plaintiff's Complaint against Defendants.

Dated: January 28, 2022

**MCDERMOTT WILL & EMERY LLP**

By: _____
JASON D. STRABO
Attorneys for Defendants
ENVISION HEALTHCARE CORPORATION
AND ENVISION PHYSICIAN SERVICES,
L.L.C.