Thomas Ryan (SBN 143148)
tryan@mwe.com
Jason Strabo (SBN 246426)
jstrabo@mwe.com
Irene Le (SBN 325503)
Ile@mwe.com
**MCDERMOTT WILL & EMERY LLP**
2049 Century Park East
Suite 3200
Los Angeles, CA 90067-3206
Telephone:    1 310 277 4110
Facsimile:    1 310 277 4730

Attorneys for Defendants
ENVISION HEALTHCARE CORPORATION
AND ENVISION PHYSICIAN SERVICES,
L.L.C.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO

| | |
|---|---|
| AMERICAN ACADEMY OF EMERGENCY MEDICINE PHYSICIAN GROUP, INC., a Wisconsin Corporation,<br><br>Plaintiff,<br><br>v.<br><br>ENVISION HEALTHCARE CORPORATION; a Delaware Corporation; ENVISION PHYSICIAN SERVICES L.L.C.; a Delaware Limited Liability corporation doing business in California and DOES 1-100,<br><br>Defendants. | CASE NO. 3:22-cv-00421-CRB<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO RULES 12(B)(1) AND 12(B)(6) OR, ALTERNATIVELY, STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(F) OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br>[[Proposed] Order Lodged Concurrently Herewith]<br><br>Hearing Date: April 22, 2022<br>Time: 10:00 a.m.<br>Place: Courtroom 6, 17th Floor<br>Judge: Hon. Charles R. Breyer<br><br>Complaint Filed: December 20, 2021<br>FAC Filed: February 18, 2022<br><br>PER CIVIL L.R. 7-6, NO ORAL ARGUMENT UNLESS SEPARATELY ORDER BY THE COURT |

## NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

PLEASE TAKE NOTICE that on April 22, 2022 at 10:00 a.m., or as soon thereafter as counsel may be heard, in courtroom of the Honorable Charles R. Breyer, United States District Judge, in the United States District Court for the Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom 6, 17th Floor, San Francisco California, Defendants Envision Healthcare Corporation and Envision Physician Services, LLC (collectively, "Defendants") will and hereby do move this Court for an order dismissing, staying, and/or striking Plaintiff American Academy of Emergency Physicians Medical Group, Inc.'s ("Plaintiff") First Amended Complaint (the "FAC") pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(f), under the doctrine of primary jurisdiction, and the abstention doctrine.

Defendants' Motion is, and will be, made on the following grounds, as more fully articulated in the accompanying Memorandum of Points and Authorities: (1) this matter should be dismissed or, alternatively, stayed pursuant to the doctrine of primary jurisdiction and/or the abstention doctrine, on the grounds that the case presents complicated issues of regulatory policy, the oversight of which has been entrusted by the California Legislature to a designated regulatory body; (2) Plaintiff's FAC and each of the causes of action set forth therein fails to state a claim upon which relief can be granted and, therefore, should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6); and (3) the allegations of Plaintiff's FAC are immaterial, impertinent, and harassing and should therefore be stricken pursuant to Rule 12(f).

//
//
//
//
//
//
//
//

1      This Motion is based on this Notice of Motion and Motion; the attached Memorandum of

2 Points and Authorities; the pleadings and filings in this action; and such further evidence or argument

3 as may be heard at or before the hearing on this Motion.

4

 Dated: March 4, 2022         **McDERMOTT WILL & EMERY LLP**

5

6

7              By:   */s/ Jason D. Strabo*

                  JASON D. STRABO

8                   Attorneys for Defendants

                  ENVISION HEALTHCARE CORPORATION

9                   AND ENVISION PHYSICIAN SERVICES,

                  L.L.C.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I. INTRODUCTION ..........................................................................................2

II. PERTINENT ALLEGATIONS OF THE FIRST AMENDED COMPLAINT ............4

III. THE COURT SHOULD DISMISS THIS ACTION UNDER THE DOCTRINE OF PRIMARY JURISDICTION OR THE ABSTENTION DOCTRINE.........................6

IV. PLAINTIFF'S CLAIMS SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6) OR, ALTERNATIVELY, STRICKEN PURSUANT TO RULE 12(F).........8

    A. Plaintiff's Unfair Competition Law Claims Should Be Dismissed or, Alternatively, Stricken Under Rule 12(f)......................................................9

        1. Plaintiff Fails to Adequately Allege The Existence of Unlawful Conduct....................................................................................................9

        2. Plaintiff Fails to Plead a Claim Under the UCL's Unfair Prong .........13

        3. Plaintiff Fails to Plead a Claim Under the Fraudulent or Misleading Prong of the UCL.................................................................................15

    B. Plaintiff's Declaratory Relief Claim Should Be Dismissed............................15

V. CONCLUSION..........................................................................................15

**Page(s)**

**Cases**

*Alvarado v. Selma Convalescent Hosp.*,
    153 Cal. App. 4th 1292 (2007) ...........................................................................6

*Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Pro.*
    *Publications, Inc.*,
    108 F.3d 1147 (9th Cir. 1997). .........................................................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................8

*Brinkerhoff v. L'Oreal USA, Inc.*,
    417 F. Supp. 3d 1308 (S.D. Cal. 2019).............................................................6

*Campbell v. Bd. of Trustees of Leland Stanford Junior Univ.*,
    817 F.2d 499 (9th Cir. 1987) ...........................................................................11

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ................................................................................13, 14

*Clark v. Time Warner Cable*,
    523 F.3d 1110 (9th Cir. 2008) ...........................................................................6

*Colony Cove Props., LLC v. City of Carson*,
    640 F.3d 948 (9th Cir. 2011) ..........................................................................8, 9

*Cont'l Cas. Co. v. Nationwide Mut. Ins. Co.*,
    No. CV 14–07326–GW (PLAx), 2014 WL 12607694 (C.D. Cal. Nov. 3, 2014) ..................15

*Davel Comm'ns, Inc. v. Qwest Corp.*,
    460 F.3d 1075 (9th Cir.2006) .............................................................................6

*Free Conferencing Corp. v. T-Mobile US, Inc.*,
    No. 2:14-CV-07113-ODW, 2014 WL 7404600 (C.D. Cal. Dec. 30, 2014) ...........................6

*Hambrick v. Healthcare Partners Med. Grp., Inc.*,
    238 Cal. App. 4th 124 (2015) ............................................................................6

*Hanna v. Walmart Inc.*,
    No. 520CV01075MCSSHK, 2020 WL 7345680 (C.D. Cal. Nov. 4, 2020)....................11, 15

*Hood v. Wholesoy & Co, Modesto Wholesoy Co. LLC*,
    No. 12-CV-5550-YGR, 2013 WL 3553979 (N.D. Cal. Jul. 12, 2013).....................................6

*Innovative Health LLC v. Biosense Webster, Inc.*,
No. SACV191984JVSKESX, 2020 WL 5921964 (C.D. Cal. Aug. 18, 2020). .......................14

*In re Google Digital Advert. Antitrust Litig.*,
No. 20-CV-03556-BLF, 2021 WL 2021990 (N.D. Cal. May 13, 2021) ................................12

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ........................................................................................15

*Mangindin v. Washington Mut. Bank*,
637 F. Supp. 2d 700 (N.D. Cal. 2009) .............................................................................15

*Moss v. Infinity Ins. Co.*,
197 F. Supp. 3d 1191 (N.D. Cal. 2016) ............................................................................13

*Pac. Steel Grp. v. Com. Metals Co.*,
No. 20-CV-07683-HSG, 2021 WL 203796 (N.D. Cal. May 21, 2021) ................................12

*Quelimane Co. v. Stewart Title Guar. Co.*,
19 Cal. 4th 26 (1998) ....................................................................................................15

*Rheumatology Diagnostics Lab., Inc v. Aetna, Inc.*,
No. 12-cv-05847-WHO, 2015 WL 1744330 (N.D. Cal. Apr. 15, 2015) .......................13, 14

*Sanderson v. Culligan Int'l Co.*,
415 F.3d 620 (7th Cir. 2005) .........................................................................................14

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) .........................................................................................14

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) .......................................................................................9, 13

*Syntek Semiconductor Co. v. Microchip Tech. Inc.*,
307 F.3d 775 (9th Cir. 2002) ...........................................................................................6

*Techno Lite, Inc. v. Emcod, LLC*,
44 Cal. App. 5th 462 (2020) .....................................................................................11, 12

*United States v. Adventist Health*,
No. 17-CV-00613-AWI-SKO, 2020 WL 2522114 (E.D. Cal. May 18, 2020)......................11

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .........................................................................................9

**Statutes**

15 U.S.C. §§ 52 (a) and (b) ...............................................................................................14

Cal. Bus. & Prof. Code § 650 ................................................................ *passim*

Cal. Bus. & Prof. Code § 652 ...............................................................3, 8

Cal. Bus. & Prof. Code § 2000 ...............................................................7

Cal. Bus. & Prof. Code § 2004 ...............................................................5, 7

Cal. Bus. & Prof. Code § 2052 ...............................................................5

Cal. Bus. & Prof. Code § 2220 ...............................................................3, 8

Cal. Bus. & Prof. Code § 2032 ...............................................................3, 8

Cal. Bus. & Prof. Code § 2400 ...............................................................5

Cal. Bus. & Prof. Code § 16600 ............................................................. *passim*

Cal. Bus. & Prof. Code § 16727 ............................................................14

Cal. Bus. & Prof. Code § 17200 ............................................................2, 9,15

Cal. Bus. & Prof. Code § 17500 ............................................................. *passim*

Cal. Corp. Code § 13041 ........................................................................3, 8, 9

Cal. Corp. Code § 13041.5 .....................................................................3, 8, 9

Welfare & Inst. Code § 14107.2 ............................................................5

**Other Authorities**

F.R.C.P. Rule 9(b) ..................................................................................9, 13

F.R.C.P. Rule 12(b)(1) ...........................................................................1, 6

F.R.C.P. Rule 12(b)(6) ...........................................................................1, 3, 8, 9

F.R.C.P. Rule 12(f) .................................................................................1, 8, 9

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether Plaintiff's First Amended Complaint ("FAC") should be dismissed, or in the alternative, stayed, under the doctrine of primary jurisdiction and/or the abstention doctrine.

2.      Whether Plaintiff's first cause of action for alleged violations of California's Unfair Competition Law (the "UCL") should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for which relief can be granted.

3.      Whether Plaintiff's second cause of action for declaratory and injunctive relief should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

4.      Whether Plaintiff's FAC, or any portions thereof, should be stricken pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, on the grounds that the FAC, or portions thereof, are redundant, immaterial, impertinent, or otherwise within the scope of Rule 12(f).

# I.   <u>INTRODUCTION</u>

Plaintiff's First Amended Complaint (the "FAC") fails to fix the fatal defects of Plaintiff's original pleading.  This case remains, at core, an attack by one management company against another management company because one medical group obtained a hospital contract by offering the hospital a lower cost than the incumbent medical group.  When all the hyperbole is put aside, Plaintiff's claim that the new provider, rather than forcing the hospital to pay a "subsidy," has offered to do the work without the "subsidy," reducing the overall cost to the hospital of providing care.

Plaintiff is forced to try to spin a net positive—reduction in the overall cost of care—into a negative by dressing this situation up as a claim under California's Unfair Competition Law.  Cal. Bus. & Prof. Code § 17200 (the "UCL").  Plaintiff attempts to manufacture this UCL claim by pointing to four categories of alleged misconduct: (1) violations of California's restrictions on the corporate practice of medicine; (2) violations of the ban on fee splitting under Business & Professions Code Section 650 ("Section 650"); (3) the alleged imposition of unlawful restrictive covenants in violation of California Business & Professions Code § 16600 ("Section 16600"); and (4) the alleged making of false and misleading statements by Envision Physician Services.  A careful evaluation of the latest pleading, however, makes clear that Plaintiff still fails to state a claim on any of these bases and, to the extent that any residual issues remain, this case belongs before the California Medical Board (the "Board").

Plaintiff sought to remedy the defects, most prominently the primary jurisdiction of the Board, identified in the Defendants' first motion to dismiss, through the filing of its FAC.  Unfortunately for Plaintiff, the new allegations only make more clear that this entire action depends upon alleged improper conduct and manipulation of at least one, and possibly three, California professional medical corporations—the Premier Emergency Physicians of California Medical Group ("Premier"), EM-1 Medical Services ("EM-1") and Glass Beach Medical Services ("Glass Beach").  (FAC ¶¶ 32-47.)  As a result, Plaintiff's new pleading takes this action out of the proverbial frying pan and into the fire.  Plaintiff cannot artfully plead its problem away through omission of who owns the medical

groups at the alleged center of the asserted wrongdoing.[1]  If it omits the allegation that the medical group is actually owned by a California licensed physician in an effort to avoid the jurisdiction of the Board, it fails to state a claim.  Under California law, a corporate medical group can only violate the corporate practice of medicine bar if it is not owned by a California licensed physician.  *See* Cal. Corp. Code §13401.5.  Likewise, under California law, a party can only violate the California fee splitting / anti-kickback statute if the fee is improperly split with a California licensed physician.  *See* Cal. Bus. & Prof. Code § 650.  The Board has jurisdiction over just these issues.  *Id.*; Cal. Bus. & Prof. Code § 2402.  Indeed, the Board has jurisdiction to take action against all persons (including pursuant to California Business and Professions Code Section 2032, partnerships, corporations, and limited liability companies) that engage in or aid and abet such conduct.  *See also* Cal. Bus. & Prof. Code §§ 2220 and 652.  Once the FAC sets out its new allegations about the affiliated professional medical corporations (going so far as to allege that the Defendants placed a "strawman" in an ownership position of the medical corporations, (FAC ¶ 36)), the FAC can now only state a claim if those medical corporations are actually owned by a California licensed physicians.  If it does, however, the case clearly belongs in front of the Board.  If it does not, however, it fails to state a plausible claim of cognizable wrongdoing regarding the medical corporations, which is the linchpin of Plaintiff's case here.

Even if the FAC could avoid the primary jurisdiction of the Board, the allegations as pled still do not constitute a valid complaint since: (1) as to Plaintiff's corporate practice of medicine claim, it fails to allege that the medical corporation is not owned by a licensed physician; (2) Plaintiff's fee-splitting kickback claim fails because there is no allegation that a California-licensed physician split the fees; (3) Plaintiff's claims for alleged violations of Section 16600 fail because the provisions at issue are only in contracts of the corporate medical group and not the actual defendants and, in any event, do not violate Section 16600; (4) as to the allegation that Envision Physician Services is not "physician-led," the FAC alleges that the Chief Executive Officer of Envision Physician Services is

---

[1] It does beg the question, however, while the amended pleading expressly identifies a Dr. Mark Jeffrey Slepin in connection with these groups (FAC ¶ 31) but omits who is the actual owner of these groups and whether that owner is a California licensed physician, such as Dr. Mark Jeffrey Slepin.

a physician.  (FAC ¶ 34.)[2]

## II.    PERTINENT ALLEGATIONS OF THE FIRST AMENDED COMPLAINT[3]

### A.    The Parties

Plaintiff alleges Envision Physician Services is a Delaware Limited Liability Corporation doing business in California.  (FAC ¶ 3.)  Envision Healthcare Corporation is the parent of Envision Physician Services.  (*Id.* ¶ 2.)  Plaintiff conclusorily alleges Envision Healthcare Corporation and Envision Physician Services "are alter-egos of each other having common ownership and no separate corporate identities."  (*Id.* ¶ 3.)  Plaintiff alleges that the president of Envision Physician Services is a physician.  (*Id.* ¶ 32.)  Plaintiff is another non-medical corporation that provides administrative services to physician groups, including in California.  (*Id.*  ¶ 1.)

Plaintiff alleges that hospitals throughout the State of California routinely enter into exclusive contracts for the provision of the Emergency Department ("ED") staffing for two to three-year terms.  (*Id.* ¶ 64.) Until August 1, 2021, Plaintiff provided administrative services to one such physician group, the PLEP Physicians, who then had an exclusive contract for the provision of physician staffing in the ED at the Hospital.  (*Id.* ¶ 1.)  Prior to August 2021, Plaintiff earned income from the provision of such emergency services, which it lost when the Hospital ED contract terminated according to its terms.  (*Id.*)  Plaintiff alleges PLEP Physicians was replaced as the exclusive provider of ED services at the Hospital, by Premier, which jointly with EM-1 entered into a written business to business agreement (the "Staffing Agreement") with the Hospital, to provide ED and anesthesiology staffing at the Hospital.  (*Id.* ¶ 69.)  Plaintiff alleges that Premier is a professional corporation and medical group, the CEO, CFO, and Director of which is Dr. Slepin.  (*Id.* ¶ 69.) Glass Medical Group is alleged to be a subcontractor of Premier through which Premier is alleged to provide the services at the Hospital.  (*Id.* ¶ 73.)  After alleging that the Defendants install a "strawman" as the owner of these medical corporations (FAC ¶ 36), the FAC conspicuously omits any statement regarding the actual ownership of the medical corporation, including if the alleged

---

[2] Finally, there are no allegations of any conduct by Envision Healthcare Corporation.
[3] Defendants dispute the accuracy of the FAC, which is riddled with inaccurate and incomplete statements.  Nevertheless, Defendants assume them to be true for purposes of this Motion.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

"strawman" is in fact, a licensed California physician.

Plaintiff next points to and selectively excerpts a limited portion of the Contractor Agreement—an agreement entered into by physicians affiliated with the various medical corporations—which provides that contractors will not engage in the following three limited categories of conduct: (1) during the term of the Contractor Agreement, a contractor will not "directly or indirectly induce or persuade (or attempt to induce or persuade) and person or entity . . . to terminate its contract" with a specified list of persons (*Id*. ¶¶ 48; 50); (2) during the term, a contractor will not "other than as an independent contractor of Company, solicit or provide any medical or management services to any hospital or medical facility at which medical services are provided by Contractor" (*Id.*); and (3) for a period of twelve (12) months following the end of the Contractor Agreement, a contractor will "not directly or indirectly induce, persuade (or attempt to induce or persuade) any person or entity … to terminate or breach any contract" with a specified list of persons. (*Id.*) Plaintiff lists an additional clause, alleging the contracts between Envision's groups and hospitals also contain "illegal restrictive covenants." (*Id.* ¶ 50.)

Plaintiff does not allege that either of the actual Defendants are parties to this Contractor Agreement, rather the professional corporations discussed about are the alleged parties to the Contractor Agreement. (*Id.* ¶ 72.) Plaintiff alleges that for the contract for ED services at the Hospital, Defendants provided alleged discounts, in the form of waived subsidies on anesthesiology services, in exchange for the award of a contract to provide emergency department services at the Hospital. (*Id.* ¶ 67-68.) Plaintiff conclusorily alleges that the rates received under the contract were below fair market value (*Id.* ¶¶ 67; Prayer for Relief ¶ 2), but does not plead the actual fair market value of such a contract, nor any other facts from which to support that conclusion.

Plaintiff alleges Defendants are engaged in five categories of unlawful conduct: (1) allegedly engaging in the corporate practice of medicine in the State of California, in violation of Bus. & Prof. Code §§ 2400 and 2052; (2) unlawfully offering or paying remuneration for the acquisition or retention of emergency department contracts, in alleged violation of Bus. & Prof. Code § 650 and Welfare and Institutions Code § 14107.2; (3) the alleged imposition of unlawful covenants not to compete in violation of Section 16600; (4) making certain unspecified misrepresentations in alleged

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

violation of Bus. & Prof. Code Section 17500 ("Section 17500"); and (5) unlawfully forming professional corporations so as to cause violations of law. (FAC ¶¶ 79, 81-82.)

Based thereon, Plaintiff asserts two causes of action: (1) Plaintiff's first cause of action for injunctive relief under the UCL; and (2) Plaintiff's second cause of action for declaratory relief.

## III. THE COURT SHOULD DISMISS THIS ACTION UNDER THE DOCTRINE OF PRIMARY JURISDICTION OR THE ABSTENTION DOCTRINE

The California Legislature has entrusted the regulation of the ban on the corporate practice of medicine to the Board and claims of allegedly wrongful fee splitting under Section 650 of the Business & Professions Code. Section 2004 of California and Business Professions Code specifically states, the Board "shall have the responsibility for . . . [t]he enforcement of the disciplinary and criminal provisions of the Medical Practice Act." Cal. Bus. & Prof. Code § 2004.

Under Rule 12(b)(1), the Court may dismiss an action under the abstention doctrine or the doctrine of primary jurisdiction. *Free Conferencing Corp. v. T-Mobile US, Inc.*, No. 2:14-CV-07113-ODW, 2014 WL 7404600, at *3 (C.D. Cal. Dec. 30, 2014) (dismissing UCL claims under the doctrine of primary jurisdiction). Primary jurisdiction "is a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decision-making responsibility should be performed by the relevant agency rather than the courts." *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002). The doctrine permits courts to dismiss "an otherwise cognizable claim" when it "implicates technical policy questions" that a regulatory agency should resolve in the first instance. *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).

Although no fixed formula exists for applying the doctrine of primary jurisdiction (*Davel Comm'ns, Inc. v. Qwest Corp.,* 460 F.3d 1075, 1086 (9th Cir.2006)), the Ninth Circuit has considered whether (1) the issue is within the "conventional experiences of judges" or "involves technical or policy considerations within the agency's particular field of expertise," (2) the issue "is particularly within the agency's discretion," and (3) "there exists a substantial danger of inconsistent rulings." *Brinkerhoff v. L'Oreal USA, Inc.*, 417 F. Supp. 3d 1308, 1317 (S.D. Cal. 2019) (citations omitted).

Under the abstention doctrine, courts likewise have discretion to refrain from deciding a claim

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

seeking equitable relief under the UCL. *Hood v. Wholesoy & Co, Modesto Wholesoy Co. LLC*, No. 12-CV-5550-YGR, 2013 WL 3553979, at *6 (N.D. Cal. July 12, 2013) (dismissing case under the abstention doctrine). A trial court may abstain if granting the requested relief would require a trial court to assume the functions of an administrative agency, or to interfere with the functions of an administrative agency, if the lawsuit involves determining complex economic policy that is best handled by the Legislature or an administrative agency, or if adjudicating the case would require extensive administrative oversight. *Hambrick v. Healthcare Partners Med. Grp., Inc*., 238 Cal. App. 4th 124, 150, 155 (2015); *see also Alvarado v. Selma Convalescent Hosp.*, 153 Cal. App. 4th 1292, 1306 (2007) (finding abstention appropriate where case involved complex economic policy which was better handled by the legislature or an administrative agency).

In this case, there is an administrative agency entrusted by the government with oversight over the issues raised by Plaintiff's FAC: the Board. The Board is specifically entrusted by California's Legislature with oversight and enforcement of licensure, including specifically proceedings for the unauthorized practice of medicine. The "Board's Enforcement Program protects California consumers through the vigorous, objective enforcement of the Medical Practice Act." Cal. Bus. & Prof. Code §§ 2000, 2004. Thus, the Board has authority to conduct a disciplinary process including administrative hearings overseen by a panel or an administrative law judge. *Id.* The Board can and does initiate and pursue enforcement actions for engaging in or aiding and abetting the unauthorized practice of medicine. *Id.* The resolution of Plaintiff's claims in this case places at issue complicated concerns of public policy which were entrusted to that entity by the Legislature, including whether an entire class of entities performing valuable services within the workers' compensation field are, in fact, not permissible; the details of specific types of compensation arrangements and the specifics of individual factors that may be taken into account in referrals; and the specific delineation between whether numerous categories of nuanced administrative activities can permissibly be conducted.

Further, resolution of this matter would require exactly the type of complex oversight that the two doctrines exist to prevent. Resolving these questions would require the Court to oversee the specifics of when and to what extent Defendants and similar entities are required to secure licensure,

for what purposes and activities, and the individual terms of a myriad of types of contractual relationships, with hospitals, medical groups, and others. Plaintiff explicitly complains Defendants provide improper compensation and asks to enjoin any contracts providing such alleged compensation; the only remedy for which would be to reform these contracts. (*See, e.g.*, FAC. ¶¶ 65, 73, 79, 88, 93.) Therefore, the only way to adequately address that issue would be to reform and rewrite each of the contracts on both ends. This case should be dismissed for resolution by the Board.

In its FAC, Plaintiff nevertheless attempts to address this issue in two ways. First, Plaintiff tacks on a handful of conclusory allegations that Envision's practices violate not just California's laws regarding the corporate practice of medicine, but those of vaguely identified other states throughout the United States. (FAC ¶¶ 28, 46.) Second, Plaintiff asserts that this matter should not be dismissed because the Board only has jurisdiction over licensed practitioners. (FAC ¶ 7.) Plaintiff fails on both fronts. Plaintiff's vague and conclusory allegations that Envision violates other corporate practice of medicine fails because, as discussed in more detail in Section IV.A.1 below, Plaintiff cannot use the UCL as an all-purpose enforcement mechanism for the laws of other states. In any event, Plaintiff fails altogether to plead a cognizable claim under the laws of any of these unidentified other states. As discussed in Section IV.A.1 below, Plaintiff cannot do so because many states do not have a corporate practice of medicine doctrine or have one with significant carveouts.

Moreover, as explained above, the Board has jurisdiction over the licensed physicians, corporations, persons and partnerships that aid and abet them. Cal. Bus. & Prof. Code §§ 652, 2220 and 2402.

## IV. PLAINTIFF'S CLAIMS SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6) OR, ALTERNATIVELY, STRICKEN PURSUANT TO RULE 12(F)

A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). While a court must accept the factual allegations in the complaint as true, it need not accept as true "conclusory allegations that are contradicted by documents referred to in the complaint" or "legal conclusions . . . cast in the form of factual allegations." *Colony Cove Props., LLC v. City of Carson*, 640 F.3d 948, 955 (9th Cir. 2011) (internal quotation marks omitted).

Moreover, under Federal Rule of Civil Procedure 9(b), claims sound in fraud must be pleaded with particularity. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). Under Rule 9(b), fraud allegations must include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citations omitted). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106.

Federal Rule of Civil Procedure 12(f) permits the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Plaintiff's claims should be dismissed for failure to state a claim pursuant to Rule 12(b)(6) or, alternatively, to the extent that the Court concludes that individual bases for Plaintiff's claims are legally insufficient, stricken as immaterial under Rule 12(f).

### A. Plaintiff's Unfair Competition Law Claims Should Be Dismissed or, Alternatively, Stricken Under Rule 12(f)

California's unfair competition law prohibits "any unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." *See* Cal. Bus. & Prof. Code § 17200. Plaintiff fails to state a claim under any of these prongs.

#### 1. Plaintiff Fails to Adequately Allege The Existence of Unlawful Conduct

##### a. *Plaintiff Fails to Plead a Claim Based Upon the Alleged Corporate Practice of Medicine, Fee-Splitting, and Kickbacks*

For the sake of argument, assuming the Board does not have primary jurisdiction, this claim still fails for failure to allege the involvement of a licensed physician. *See* California Corporate Code Section 1341.5. Plaintiff attempts to remedy the deficiencies in its corporate practice of medicine claims by tacking on a handful of conclusory allegations regarding the alleged violations throughout the United States. (FAC ¶¶ 28, 46.) Plaintiff's attempt to predicate its Section 17200 claim on the alleged violation of the corporate practice of medicine laws throughout the United States fails for multiple reasons including, as a threshold reason, that much of the United States has no such ban. Indeed, 40 of the 50 states either do not have a ban on the corporate practice of medicine at all, or

the limitations imposed by such states have an express carveout for the operation of hospitals.[4] While the remaining 10 states each have statutes limiting the corporate practice of medicine which each vary between and among the states.[5] The fee-splitting and anti-kickback laws likewise vary substantially from state to state. Plaintiff here does not cite to the laws of any other states, much less explain how those laws are violated by the conduct here. Plaintiff has therefore failed to state a claim based upon the laws of such other states. Plaintiff cannot appropriately remedy these deficiencies. Courts commonly dismiss claims seeking nationwide application of California's consumer protection laws, such as the UCL, where—as with corporate practice of medicine laws—there are material differences in the laws applied by other states. *See, e.g., Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591 (9th Cir. 2012) (denying nationwide application of California consumer protection laws); *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1116 (9th Cir. 2012) (denying nationwide injunction because the party failed to prove conduct outside forum state was illegal).

Similarly, California's fee-splitting and anti-kickback laws make clear that "[t]he payment or receipt of consideration for services . . . shall not be unlawful if the consideration is commensurate with the value of the services furnished or with the fair rental value of any premises or equipment leased or provided by the recipient to the payer." *See* Cal. Bus. & Prof. Code § 650(b). Plaintiff's allegation in the FAC is in essence that Defendants have violated these statutes because a separate corporation allegedly offered a lower price in order to be awarded an exclusive contract for the provision of ED services at the Hospital. (FAC ¶¶ 69, 72.) There is no allegation of any contract between Defendants and the Hospital. Because, aside from Plaintiff's bald statements of conclusion, the FAC does not allege a referral or remuneration by either of the Defendants, it fails to state a claim against either Defendant for such alleged violations.

---

[4] *See, e.g., Mississippi: Mississippi State Board of Medical Licensure, Rules and Regulations, Laws and Policies*, revised July 2003 ("it is the policy of [the Mississippi State Board of Medical Licensure]" not to concern itself with the form or type of business arrangements entered into by a licensee, provided certain prerequisites are met . . . ."); *State Electro-Medical Institute v. Platner*, 74 Neb. 23 (1905) (finding that medical licensure statutes do not apply to corporations); *Berlin v. Sarah Bush Lincoln Health Center*, 179 Ill.2d 1 (1997) (declining to apply Illinois prohibition on corporate practice to hospitals).
[5] For example, Colorado permits non-physicians to own minority interests in medical corporations. *See, e.g.,* COLO. REV. STAT. §12-36-134(1)(d).

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

Further, even if Plaintiff could state a claim under such statutes based upon contracts to which Defendants are not parties, Plaintiff has not pled the fair market value of such services, as courts have held is required to state a claim under the anti-kickback statutes. *See, e.g., United States v. Adventist Health*, No. 17-CV-00613-AWI-SKO, 2020 WL 2522114, at *6 (E.D. Cal. May 18, 2020) (*citing United States ex rel. Gough v. Eastwestproto, Inc.*, 2018 WL 6929332, at *8 (C.D. Cal. Oct. 24, 2018)) ("finding that relators did not sufficiently demonstrate 'remuneration' at the pleading stage where the complaint did not plead the 'comparative' market rates of the allegedly discounted services."). Plaintiff points to the alleged absence of subsidies for anesthesiology services, and then assumes that because there are no subsidies, the contract must not be at fair market value. But Plaintiff pleads no facts showing that the overall value of the compensation provided by the contract is anything other than fair market value. (FAC ¶ 67.) Accordingly, Plaintiff fails to state an "unlawful" claim based on violations of California's fee-splitting and anti-kickback statutes.

b. <u>*Plaintiff Fails to State a Claim for Unlawful Conduct Based on the Use of Restrictive Covenants*</u>

Section 16600 "invalidat[es] any employment agreement that unreasonably interferes with an employee's ability to compete with an employer *after* his or her employment ends." *Techno Lite, Inc. v. Emcod, LLC*, 44 Cal. App. 5th 462, 471 (2020) (emphasis in original) (citations omitted). "[T]he statute does not affect limitations on an employee's conduct or duties *while employed*." *Id.* (emphasis in original). Under Section 16600, Plaintiff must plead and prove a (1) contract (2) by which someone is restrained from engaging in a lawful profession, trade, or business. *Campbell v. Bd. of Trustees of Leland Stanford Junior Univ.*, 817 F.2d 499, 501–02 (9th Cir. 1987).

In the instant case, Plaintiff alleges Envision Physician Services violated Section 16600 through four clauses, three of which are in the Contractor Agreement and one of which is in the Staffing Agreement. Plaintiff's Section 16600 claim therefore fails from its inception as to all four provisions because it is an inappropriate attempt to hold Defendants vicariously liable for the contracts of others. *Hanna v. Walmart Inc.*, No. 520CV01075MCSSHK, 2020 WL 7345680, at *5 (C.D. Cal. Nov. 4, 2020) (holding claims under UCL cannot be based on vicarious liability). But even if Plaintiff could state a claim under Section 16600 based upon contracts to which Defendants

are not parties, none of the four clauses supply a viable Section 16600 claim.

The first two clauses from the Contractor Agreement, by their plain language, only apply "during the term" of the agreement. (*See, e.g.,* FAC ¶¶ 48, 50) (stating that during the term of the agreement, a party will not "directly or indirectly induce or persuade (or attempt to induce or persuade) any person or entity . . . to terminate its contract" with a specified list of persons), (stating that during the term of the agreement, party will not "other than as an independent contractor of Company, solicit or provide any medical or management services to any hospital or medical facility at which medical services are provided by Contractor"). Section 16600 therefore has no application to these clauses. *Techno Lite,* 44 Cal. App. 5th at 471.

While the third clause from the Contractor Agreement extends for a period of 12 months after the end of that agreement's term, that clause simply reaffirms that during that period the party will not induce the breach of existing contracts. *See, e.g., Quelimane Co. v. Stewart Title Guar. Co*., 19 Cal. 4th 26, 57 (1998), *as modified* (Sept. 23, 1998) (upholding claim for intentional interference with a contract). Section 16600 therefore has no application. (*See, e.g.,* FAC ¶¶ 48, 50) (stating that party will "not directly or indirectly induce, persuade (or attempt to induce or persuade) any person or entity … to terminate or breach any contract" with specified persons). Because it merely restates and existing legal obligation, this clause does not impose any additional restraint on trade.

Finally, Plaintiff fails to plead facts sufficient to state a claim against Defendants based upon the language that it cites from the Staffing Agreement. The California Supreme Court has held that Section 16600 only invalidates restrictive covenants in business-to-business agreements if the restrictive covenant constitutes an unreasonable restraint on trade under the antitrust rule of reason. *See Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130 (2020). Plaintiff, however, fails to adequately plead a clear definition of the relevant product market, to state a viable geographic market, or to sufficiently allege antitrust injury, as required to establish an unreasonable restraint on trade under the rule of reason. *See, e.g., In re Google Digital Advert. Antitrust Litig*., No. 20-CV-03556-BLF, 2021 WL 2021990, at *3 (N.D. Cal. May 13, 2021) (dismissing for pleading too broad a market and failing to plead antitrust injury); *Pac. Steel Grp. v. Com. Metals Co*., No. 20-CV-07683-HSG, 2021 WL 2037961, at *7-11 (N.D. Cal. May 21, 2021) (dismissing a claim under rule of reason

analysis). Accordingly, Plaintiff's claim based on Section 16600 fails.

        c.     *Plaintiff Fails to State a Claim for Unlawful Conduct Predicated on Alleged Violations of Section 17500*

Under Section 17500, Plaintiff must show false advertising or advertising that is untrue or misleading. Cal. Bus. & Prof. Code § 17500. Where, as here, the claim sounds in fraud, a claim under Section 17500 must satisfy the requirements of Rule 9(b). *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1199-1200 (N.D. Cal. 2016). In its FAC, Plaintiff attempts to remedy the lack of any identified false statements in its original complaint by listing a series of alleged statements that when read in their entirety, overwhelmingly collapse into two alleged misrepresentation—that Envision Physician Services is a "physician-led" company and that Envision Physician Services makes some false representation that it is licensed. (FAC ¶ 81.) Plaintiff directly pleads in the FAC, however, that the Chief Executive Officer of Envision Physician Services is a physician, the very definition of leadership by a physician. (*Id.* ¶ 34.) Plaintiff's claim that Envision Physician Services violated Section 17500 by representing that it is "physician-led" is therefore flatly contradicted by the remaining allegations of its own FAC. Plaintiff's other allegation, based upon some alleged representations about Envision Physician Services' licensure status, fails because nowhere in the FAC does Plaintiff plead any specific statement, only Plaintiff's conclusory characterizations of some unspecified statements. Under Rule 9(b), however, in order to state a claim, Plaintiff must plead the "specific content of the false representations." *Swartz*, 476 F.3d at 764.

    **2.**    **Plaintiff Fails to Plead a Claim Under the UCL's Unfair Prong**

Where UCL claims are brought by a competitor rather than a customer, claims under the UCL's "unfair" prong are governed by the standard articulated by *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal. 4th 163 (1999). Under the *Cel-Tech* standard, the plaintiff must plead "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Id.* at 187. A claim governed by the *Cel-Tech* standard must be "tethered to specific constitutional, statutory or regulatory provisions." *Rheumatology Diagnostics Lab., Inc v. Aetna, Inc.*, No. 12-cv-05847-WHO, 2015 WL 1744330, at

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

In its FAC, Plaintiff attempts to remedy this deficiency by pointing to six alleged categories of issues in an effort to satisfy the *Cel-Tech* standard. (FAC ¶ 81.) None achieve this goal. Plaintiff's first category, allegedly causing "Plaintiff to lose its exclusive contracts for emergency services" (*Id.* ¶ 81.a) is, at most, an injury to a *competitor*, but the antitrust laws apply only to injuries to *competition*. *See, e.g., Somers v. Apple, Inc.*, 729 F.3d 953, 964 & n.5 (9th Cir. 2013). Plaintiff's second category, the imposition of allegedly unlawful restrictive covenants in violation of Section 16600 (FAC ¶ 81.b), fails for the reasons set forth at length in Section IV.A.1.b above. Plaintiff's third category, allegedly causing an increase in medical costs to patients "by giving Defendants power over billing and pricing" (*Id.* ¶ 81.c) fails because it simply assumes that billing and pricing must necessarily increase when non-physicians handle such matters, when there are volumes of cases in which doctors have been prosecuted for inflating costs and pricing. Plaintiff's bald assumption is therefore entirely without merit. Plaintiff's fourth category, alleged violations of 15 U.S.C. §§ 52(a) and (b) (*Id.* ¶ 81.d), fails because both statutes are false advertising (rather than antitrust) statutes, and courts have generally held that the antitrust statutes are not a remedy for false advertising.[6] *See, e.g.*, *Sanderson v. Culligan Int'l Co.*, 415 F.3d 620, 623 (7th Cir. 2005). Plaintiff's fifth category, alleged violations of Business and Professions Code Section 16727 ("Section 16727") fails because that statute on its face only applies only to a contract for the sale of "*goods, merchandise, machinery, supplies, commodities*" conditioned on the provision of discounts. Here, however, the alleged condition is not on goods, merchandise, machinery, supplies or commodities, but instead on services, and therefore is not facially within the scope of Section 16727.[7] Plaintiff's sixth category, the alleged creation by Defendants of shell corporations and other practices which in some unexplained way

---

[6] While the Ninth Circuit has recognized antitrust remedies on the basis of false advertising, such false statements are typically about the competitor (which Plaintiff has not alleged here) and these statements are presumed "to have a de minimis effect on competition." *Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Pro. Publications, Inc.*, 108 F.3d 1147, 1152 (9th Cir. 1997).
[7] Further, Plaintiff's Section 16727 claim is at core an unlawful tying claim. Tying requires, among other things, a showing of coercion, including market power in the tying product. *Innovative Health LLC v. Biosense Webster, Inc.*, No. SACV191984JVSKESX, 2020 WL 5921964, at *7 (C.D. Cal. Aug. 18, 2020).Plaintiff pleads no facts supporting, for example, market power in the tying product or that the tying forced an entity to purchase a product they did not want.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

created a "monopoly," fails because Plaintiff fails to plead any facts from which to conclude that Defendants have any specific market share, much less the heavy market share required to plead the existence of a "monopoly." (FAC ¶¶ 58, 81(e)-(f).)[8] Thus, Plaintiff's claim under the UCL's "unfair" prong fails for the reasons discussed in Section (A)(1)(a) above.

**3.** **Plaintiff Fails to Plead a Claim Under the Fraudulent or Misleading Prong of the UCL**

A claim under the fraud prong of Section 17200 is subject to the heightened pleading requirements of Rule 9 of the Federal Rules of Civil Procedure. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Here, as discussed in Section IV.A.1.c above, Plaintiff fails to plead a valid claim of fraud under this standard.

**B.** **Plaintiff's Declaratory Relief Claim Should Be Dismissed**

"[C]ourts may decline to exercise jurisdiction where a declaratory judgment claim only … duplicates other, more germane causes of action, even if those cause of action fail." *Cont'l Cas. Co. v. Nationwide Mut. Ins. Co.*, No. CV 14–07326–GW (PLAx), 2014 WL 12607694, at *7 (C.D. Cal. Nov. 3, 2014). Here, that is exactly the case. Finally, Plaintiff fails with respect to Envision Healthcare Corporation because the FAC pleads no specific facts with respect to that entity, beyond the mere fact of ownership. "Claims of unfair business practices cannot be predicated on vicarious liability . . . ." *Hanna*, 2020 WL 7345680, at *5.

**V.** **CONCLUSION**

For the foregoing reasons, the Court should dismiss each claim asserted in Plaintiff's FAC against Defendants.

Dated: March 4, 2022      **MCDERMOTT WILL & EMERY LLP**

By:     */s/ Jason D. Strabo*
          JASON D. STRABO
          Attorneys for Defendants

---

[8] Pleading a claim for monopolization requires, among other things, basic allegations as to relative market share, of which none appear in the FAC. *See, e.g.*, *ChriMar Sys., Inc v. Cisco Sys., Inc*, 72 F. Supp. 3d 1012, 1019 (N.D. Cal. 2014).