David J. Millstein (SBN 87878)
Gerald S. Richelson (SBN 267705)
MILLSTEIN FELLNER LLP
100 The Embarcadero, Penthouse
San Francisco, CA 94105
Telephone: (415) 348-0348
Facsimile: (415) 348-0336
dmillstein@millsteinfellner.com
grichelson@millsteinfellner.com

**Attorneys for Plaintiff:**
AMERICAN ACADEMY OF
EMERGENCY MEDICINE PHYSICIAN
GROUP, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO

| | |
|---|---|
| AMERICAN ACADEMY OF EMERGENCY MEDICINE PHYSICIAN GROUP, INC., a Wisconsin Corporation,<br><br>Plaintiff,<br><br>v.<br><br>ENVISION HEALTHCARE CORPORATION; a Delaware Corporation; ENVISION PHYSICIAN SERVICES LLC; a Delaware Limited Liability Corporation doing business in California.<br><br>Defendants. | Case No.: 3:22-cv-00421-CRB<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO F.R.C.P. RULES 12(b)(1) and 12(b)(6), OR IN THE ALTERNATIVE, MOTION TO STRIKE PURSUANT TO RULE 12(f)**<br><br>**Public Redacted Version**<br><br>Hearing Date: April 28, 2022<br>Time: 10:00 a.m.<br>Place: Courtroom 6, 17th Floor<br><br>Complaint Filed: December 20, 2021<br>FAC Filed: February 18, 2022<br><br>**Hon. Charles R. Breyer** |

# **TABLE OF CONTENTS**

I.    INTRODUCTION…………….....................…………………………………..2

II.   ARGUMENT…………………………………………...……………..2

       A.    The Court Should Not Dismiss this Case under either the Judicial Abstention or Primary Jurisdiction Doctrines……………………………………………...2

              i.    The Standard for the Primary Jurisdiction and Abstention Doctrines…….3

              ii.   The Board Has Statutory Authority to Discipline Individual Licensees Only, not Lay Entities……………………………………………………..4

              iii.  The Requested Relief is not Available to Plaintiff through the Board's Disciplinary Process……………………………………………………7

              iv.   This Case Does Not Require the Court to Determine Complex Policy or Definitional Issues…………………………………………………...8

       B.    Plaintiff Has Stated a Viable Claim for Unfair Business Practices under Bus. & Prof. Code §§ 17200, et seq……………………………………………...11

              i.    Plaintiff Alleged Unlawful Conduct……………………………………..11

                    a.    Defendants Engaged in the Corporate Practice of Medicine…….11

                    b.    The FAC Sufficiently Pleads Violations of Bus. & Prof. Code §650…………………………………………………….....16

                    c.    Unlawful Use of Restrictive Covenants…………………………19

                          1.    The "Independent Contractor Agreement" is an Unlawful Non-Solicitation and Non-Compete………….20

                          2.    The Exclusive Dealing Agreements between Envision and Hospitals Violate the Rule of Reason……………….21

                    d.    Violations of Bus. & Prof. Code § 17500 – Deceitful Advertising……………………………………………………22

              ii.   Plaintiff Alleged Unfair Conduct………………………………..…………23

              iii.  Plaintiff Alleged Fraudulent or Misleading Conduct……………………24

       C.    Plaintiff's Request for Declaratory Relief is Adequately Pleaded……………….25

TABLE OF CONTENTS AND AUTHORITIES

III.    IN THE ALTERNATIVE, LEAVE TO AMEND SHOULD BE GRANTED…………..26

IV.    CONCLUSION…………………………………………………………………..26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TABLE OF CONTENTS AND AUTHORITIES

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                           **Page**

*Alborzi v. Univ. of S. Cal.*, 55 Cal. App. 5th 155, 184, 269 Cal. Rptr. 3d 295, 317 (2020)…..….19

*Alvarado v. Selma Convalescent Hosp.*, 153 Cal.App.4th 1292 (2007)……….…..……..….9, 10

*Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Pro. Publications, Inc.*, 108 F.3d 1147, 1152 (9th Cir. 1997)…………………………………………………………….23

*Arnett v. Dal Cielo*, 14 Cal. 4th 4, 7-8 (1996)………………………………………….....6

*Beck v. American Health Group Internat., Inc.*, 211 Cal.App.3d 1555 (1989)……………...…..17

*Benjamin Franklin Life Assurance Co. v. Mitchell*, 14 Cal. App. 2d 654, 656-57 (1936)……....13

*Blank v. Palo Alto-Stanford Hospital Center*, 234 Cal.App.2d 377, 390 (1965)……………....17

*Blue Cross of Cal., Inc. v. Superior Court*, 180 Cal. App. 4th 1237, 1258 (2009)…………...…..9

*Bradley v. CVS Pharmacy, Inc.*, 64 Cal. App. 5th 902, 912-13 (2021))…………………………..4

*California Association of Dispensing Opticians v. Pearle Vision Center, Inc.* 143 Cal.App.3d 419, 427-28, 434 (1983)…………………………………………………….16

*Capitol Records, Ltd. Liab. Co. v. Vimeo, Ltd. Liab. Co.*, 826 F.3d 78, 94 (2d Cir. 2016)…....…19

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)……....…23, 24

*Conrad v. Med. Bd.*, 48 Cal. App. 4th 1038, 1042-43 (1996)…………………………………11

*Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th 564, 575 (2009)………………………….21

*Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016)………………………………………..26

*Epic Med. Mgmt., LLC v. Paquette*, 244 Cal. App. 4th 504, 517 (2015)…………………..….12

*GreenCycle Paint, Inc. v. PaintCare, Inc.*, No. 15-cv-04059-MEJ, 2016 U.S. Dist. LEXIS 47960, at *35 (N.D. Cal. Apr. 8, 2016)…………………………………...…………..…24

*Griffiths v. Superior Court*, 96 Cal.App.4th 757, 768-69 (2002)…………………………….…5

*Guerra v. Sutton*, 783 F.2d 1371, 1376 (9th Cir. 1986)…………………………………………25

*Hambrick v. Healthcare Partners Medical Group, Inc.*, 238 Cal.App.4th 124 (2015)…………..9

TABLE OF CONTENTS AND AUTHORITIES

*Hanna v. Walmart Inc.*, No. 5:20-cv-01075-MCS-SHK, 2020 U.S. Dist. LEXIS 237505, at *13-14 (C.D. Cal. Nov. 4, 2020) (MTD p. 11)………………………………………...…20

*Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1154 (2020)………………………….22

*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 45 (1984)……………………………...22

*Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1362 (2012)…………...……………4, 8

*Letsch v. Northern San Diego County Hospital District*, 246 Cal.App.2d 673 (1966)…………..8

*Mason v. Hosta.*, 152 Cal.App.3d 980, 982-85 (1984)…………………………………………18

*People v. Cole*, 38 Cal. 4th 964, 970 (2006)………………………….…………………………12

*People ex rel. Monterey Mushrooms, Inc. V. Thompson*, (2006) 38 Cal.Rptr.3d 677…………..13

*People ex rel. State Bd. of Med. Exam'rs v. Pac. Health Corp.*, 12 Cal. 2d 156, 158, (1938)..…12

*Reeves v. Hanlon*, 33 Cal. 4th 1140, 1151 (2004)…………………………………...…………..21

*Sanderson v. Culligan Int'l Co.*, 415 F.3d 620, 623 (7th Cir. 2005)………………..…………...23

*Steinsmith v. Medical Bd. of Cal.*, 85 Cal.App.4th 458 (2000)…………………...…………5, 8, 9

*StreamCast Networks, Inc. v. IBIS LLC*, No. CV 05-04239 MMM (Ex), 2006 U.S. Dist. LEXIS 97607, at *9 (C.D. Cal. May 1, 2006)…………………………………………………………25

*Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002)………...3

*UAS Mgmt., Inc. v. Mater Misericordiae Hosp.*, 169 Cal. App. 4th 357, 365 (2008)…………..22

*United States ex rel. Gough v. Eastwestproto, Inc.*, No. CV 14-465 DMG (SHx), 2018 U.S. Dist. LEXIS 224953, at *24 (C.D. Cal. Oct. 24, 2018…………………………………19

*United States ex rel. STF, LLC v. Vibrant Am., LLC*, No. 16-cv-02487-JCS, 2020 U.S. Dist. LEXIS 150345, at *35 (N.D. Cal. Aug. 19, 2020)…………………………………………18

**STATUTES**

Bus. & Prof. Code §650……………………………………………….....5, 16, 17

Bus. & Prof. Code §650(a)………………………………………...……17

Bus. & Prof. Code § 650(b)……………………………………………..18

TABLE OF CONTENTS AND AUTHORITIES

Bus. & Prof. Code §§ 2000-2529.6…………………………………………….……5

Bus. & Prof. Code § 2004…………………………………………………………….5

Bus. & Prof. Code §2032…………………………………………………....6

Bus. & Prof. Code § 2052…………………………………………………………7

Bus. & Prof. Code § 2220………………………………………………..……6

Bus. & Prof. Code § 2220.5………………………………………………………6

Bus. & Prof. Code, § 2227……………………………………………………..6

Bus. & Prof. Code § 2400………………………………………………………6

Bus. & Prof. Code § 2502………………………………………………….....9

Bus. & Prof. Code § 16600…………………………………………..2, 16, 20, 21, 24

Bus. & Prof. Code §§ 17200, et seq………………………………………2, 11, 12, 21, 24

Bus. & Prof. Code § 17500………………………………………………..2, 16, 22

Corp. Code section 1341.5………………………………………………….…16

Corp. Code §§ 13407 and 13408.5…………………………………..……..12

# I.  INTRODUCTION.

Plaintiff AMERICAN ACADEMY OF EMERGENCY MEDICINE PHYSICIAN GROUP, INC's ("Plaintiff") First Amended Complaint ("FAC") contains many well pleaded allegations of facts that clearly constitute violations of California law, among others Bus. & Prof. Code §§ 650, 2400, 2052, 16600, 16727, 17500, and Corp. Code §§ 13407, 13408.5. Defendants' acts as alleged in the FAC violate the letter of those laws and violate California's ban on the Corporate Practice of Medicine ("CPOM") as defined in the case precedent and attorney general opinions. Plaintiff has set out a detailed description of the way Defendants' business operates and how their corporate structure is designed to deliberately conceal their practice of medicine. These violations of law adequately plead Plaintiff's claim for Unfair Business Practices (Bus. & Prof. Code §17200) under the "unlawful" prong set out in *Cel-Tech*.

No published California case has ever held that the California Medical Board (the "Board") has primary jurisdiction, or exclusive jurisdiction, over Unfair Competition Law ("UCL") cases, or specifically cases adjudicating and determining the CPOM. The numerous court opinions cited in this opposition plainly establish that a district court is more than competent to decide whether Defendants engaged in the CPOM by interpreting the applicable statutes and case law on point. Plaintiff seeks a declaration from the Court that Defendants' business structure and practices in California violate the ban on the CPOM, and to enjoin Defendants from entering into contracts such as those identified in the FAC as constituting an unlawful restraint on trade. Plaintiff cannot be afforded this relief in any other forum than this Court.

For these reasons and as argued below, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss ("MTD") the FAC.

# II.  ARGUMENT.

## A.  The Court Should Not Dismiss This Case Under Either The Judicial Abstention Or Primary Jurisdiction Doctrines.

Defendants argue that the Court should dismiss Plaintiff's FAC because the California Medical Board (hereinafter "Board") has primary jurisdiction over the issues raised in the FAC.

Defendants also argue in the alternative that adjudicating Plaintiff's claims would require the Court to determine complex policy and assume the role of a regulatory agency so the Court should decline to hear the matter under the abstention doctrine.

The California legislature has not expressed the intent that the Board exercise exclusive jurisdiction over the CPOM, neither in the Medical Practice Act ("MPA"), nor elsewhere. No published California opinion has held that the Board has exclusive jurisdiction over anything other than discipline of individual physicians or surgeons. The Board's primary jurisdiction is the discipline of individual doctors, and to investigate their violations of the MPA and professional standards, but not to "discipline" corporations. Additionally, the Board is not capable of affording the declaratory and injunctive relief requested by Plaintiff. Having the Board discipline individual physicians or revoke their licenses would have no preclusive effect and would allow Envision to continue the illegal practices alleged in the FAC. For these reasons and those stated below, the Court should not dismiss or stay the action pending review from the Board.

### i.  __The Standard for the Primary Jurisdiction and Abstention Doctrines.__

The primary jurisdiction and abstention doctrines, though similar in their analysis, serve different purposes and have a different impact on the Court's discretion to hear the instant action. For example, when the primary jurisdiction applies the Court has discretion to stay the action pending the determination of an important issue of the case before continuing with the suit.

> [T]he primary jurisdiction doctrine applies w*here a claim is originally cognizable in the courts* but involves issues which, under a regulatory scheme, have been placed within the special competence of an administrative body. In [this] circumstance, the judicial process is suspended pending referral of such issues to the administrative body for its views. […] Unless an agency is empowered to decide all the issues in a pending lawsuit, the appropriate procedure for a court that applies the primary jurisdiction doctrine **is to stay** the lawsuit pending a decision by the administrative agency.

*Bradley v. CVS Pharmacy, Inc.*, 64 Cal. App. 5th 902, 912-13 (2021) (bolding added).

If the primary jurisdiction applies, the Court should thus stay the case until the Board has made a determination on some aspect that the Board has special competence to decide. Defendants' request that the action be dismissed under the primary jurisdiction doctrine is thus misapplying the law.

Primary jurisdiction allows a court to determine that "initial decision-making responsibility should be performed by the relevant agency rather than the courts." *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002). Here, Defendants failed to argue at all what initial decision the Board should be asked to make before the suit can proceed, nor shown why the Court is not capable of making that determination itself.

Under the doctrine of judicial abstention, when a Court exercises proper discretion to abstain from hearing the case, it essentially decides the entire matter should be heard by an agency that is better equipped to decide the issue. If the Court abstains, and there is an appropriate forum to adjudicate all of the issues and afford the requested relief, then dismissal is proper. Again, the Board's jurisdiction, as expressed in statutory language, is discipline, not civil actions for damages or penalties against entities (such as those brought under the UCL).

A trial court may abstain from adjudicating a suit seeking equitable remedies if: (1) "granting the requested relief would require a trial court to assume the functions of an administrative agency", (2) the lawsuit requires the court to determine complex economic policy, which is best handled by the Legislature or an administrative agency, or (3) "where granting injunctive relief would be unnecessarily burdensome for the trial court to monitor and enforce given the availability of more effective means of redress." *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1362 (2012).

Defendants allege that judicial abstention is proper under the first two scenarios identified in *Klein.* A more detailed analysis of the Court's discretion to abstain from hearing this case follows below.

### ii. The Board Has Statutory Authority to Discipline Individual Licensees Only, not Lay Entities.

Plaintiff does not dispute that the Board has the authority to initiate *disciplinary* proceedings against licensed (or unlicensed) physicians, and if any violation of the Medicine

Practice Act is found, may revoke or suspend the physician's license or shut down the professional corporation that operates under the physician's license. Since a medical group organized as a professional corporation requires a licensed medical director and ownership by licensed physicians in order to operate, the Board can effectively "shut down" practices by revoking the physician license that the professional corporation relies on to operate *See e.g., Steinsmith v. Medical Bd. of Cal.*, 85 Cal.App.4th 458 (2000). However, Defendants misstate the Board's enforcement jurisdiction over lay entities, and here Plaintiff neither seeks disciplinary action, nor sues individual physicians over which the Board has enforcement powers.

The Board is a licensing agency and has the authority to issue, suspend, and revoke medical licenses in the state of California, to discipline licensees, and to investigate suspected violations of the MPA, Bus. & Prof. Code §§ 2000-2529.6, by <u>individual physicians</u> only. "The Medical Board, through its Division of Medical Quality, has authority to investigate, to commence disciplinary actions, and to take disciplinary action against a physician's license based on unprofessional conduct as defined in the Medical Practice Act." *Griffiths v. Superior Court*, 96 Cal.App.4th 757, 768-69 (2002).

Defendants' argument that the Board has primary jurisdiction over the issues raised in this action appears premised on an overbroad reading of Bus. & Prof. Code § 2004, which states in relevant part: "The board shall have the responsibility for…(a) [t]he enforcement of the disciplinary and criminal provisions of the Medical Practice Act. (b) The administration and hearing of disciplinary actions. (c) Carrying out disciplinary actions appropriate to findings made by a panel or an administrative law judge. (d) Suspending, revoking, or otherwise limiting certificates after the conclusion of disciplinary actions." Notably, the statute does not say the Board has exclusive enforcement jurisdiction over the MPA.

Further, Bus. & Prof. Code §650, which Plaintiff alleges Defendants violated, is not part of the MPA. The MPA is defined in Bus. & Prof. Code §2000 as constituting Chapter 5, entitled "Medicine" (Bus. & Prof. Code §§2000-2529.6. While §652 confers enforcement jurisdiction over violations of §650 to "the board by whom he or she licensed", the provision again only

authorizes the Board to take disciplinary action by means of revocation or suspension of an individual practitioner's license, or criminal fines.

The Board's disciplinary process is set forth in Bus. & Prof. Code § 2220 in which it states, "The board shall enforce and administer this article as to *physician and surgeon certificated holders*…" (italics added), again only referring to individuals and not corporations or other artificial entities. Bus. & Prof. Code §2032 explains that "only natural persons shall be licensed under this chapter" and § 2400 states that "Corporations and other artificial legal entities shall have no professional rights, privileges or powers." Bus. & Prof. Code § 2220.5 expressly states the "Medical Board of California is the only licensing board that is authorized to investigate or commence disciplinary actions relating to physicians and surgeons [licensed by the Board]." Since the Board is a licensing agency for individual physicians and surgeons, it has no authority to prosecute "corporations and other artificial legal entities" such as the Defendants in this action.

The Board's disciplinary powers and process are well defined:

> If, after such investigation as it deems necessary, the Board determines there is sufficient evidence of unprofessional conduct to warrant instituting a formal disciplinary action against a licensee, […] the action will then be prosecuted by the Senior Assistant Attorney General of the Health Quality Enforcement Section. […] The Board may also petition for injunctive relief against any licensee whenever it has "reasonable cause to believe that allowing such person to continue to engage in the practice of medicine would endanger the public health, safety, or welfare" […] If, after formal adjudicative proceedings, the licensee is found guilty of unprofessional conduct, the Board has a range of options: it may either suspend or revoke the license, or place the licensee on probation, or issue a public reprimand. (Bus. & Prof. Code, § 2227.)

*Arnett v. Dal Cielo*, 14 Cal. 4th 4, 7-8 (1996).

Noticeably absent from this description is that the Board has any authority to criminally or civilly prosecute lay entities that violate the ban on the CPOM. Violations of both Bus. & Prof. Code §§ 2400 (see § 2052 re unlicensed practice of medicine) and 650(i) also give rise to criminal liability which is prosecuted by the district attorney before a trial court, not the Board.

### iii. **The Requested Relief is not Available to Plaintiff through the Board's Disciplinary Process.**

In this matter Plaintiff is not seeking that the Court (or the Board) take disciplinary action against the professional corporations/medical groups Envision controls, nor the individual physicians that are part of those medical groups. Rather, by this action Plaintiff requests that the Court declare Envision's practices, ownership and direct or indirect control of those medical groups unlawful, and that Envision be enjoined from engaging in this practice in California.

Defendants' entire corporate structure, i.e. creating subsidiary emergency medical groups that are wholly controlled by Envision, through the placement of "straw men" medical directors and otherwise, is unlawfully set up to violate the CPOM. It is a systemic and pervasive violation of the law that will not be remedied by disciplining the individual physicians that serve as the straw men or aid and abet the lay practice of medicine, or by dismantling the medical groups that Envision controls. The Board has no ability or authority to address the systemic evil this suit raises or to hold Envision's business practices/model unlawful. Plaintiff sues Envision because it seeks a declaration that Envision's practice of directly or indirectly practicing medicine through its *de facto* subsidiaries is the illegal CPOM. Suing individual physicians, or having the Board revoke or suspend their licenses, would have no preclusive effect and would allow Envision to continue the illegal practices alleged in the FAC. It is ironic Envision seeks to shift attention/model to the physicians they victimize.

While Plaintiff alleges that "none of the corporate officers of Premier, EM-1, or Glass Beach are physicians licensed to practice medicine in California" (FAC ¶33), Plaintiff is not seeking relief against these individuals because Envision could promptly replace them with California licensed physicians, yet still operate in the same manner, denying them any independent judgment or meaningful control over the medical group they are charged with overseeing. In other words, Envision's CPOM is highly repeatable because of how its corporate structure and illegal contracts are designed and executed, which the Board cannot remedy.

### iv. **This Case Does Not Require the Court to Determine Complex Policy or Definitional Issues.**

Defendants argue that the Court should abstain from hearing this case because the issues are too complicated for a trial court, as opposed to the Medical Board, to determine. "The first question we must consider [in deciding whether to abstain from hearing a case] is whether adjudicating plaintiffs' […] claims would drag the trial court … into an area of complex economic or similar policy." *Klein v. Chevron USA, Inc.* 202 Cal. App. 4th 1342, 1367-68. Defendants similarly argues the case involves "definitional issues" as to what constitutes the unlawful practice of medicine, is equally unavailing. Nothing in the matter requires that.

California courts and the attorney generals have been addressing these issues for decades. (*See e.g.*, *Steinsmith v. Medical Board,* 85 Cal.App.4th 458 (2000)(physician working for clinic not owned by licensed physicians as an independent contractor aided unlicensed practice of medicine by lay corporation); *Letsch v. Northern San Diego County Hospital District*, 246 Cal.App.2d 673 (1966)(physician receiving 30%, and hospital 70% of gross billings to patients deemed proportionate to hospital's expense in furnishing facilities and therefore lawful revenue-sharing under exception hospital exception to CPOM); 54 Ops.Cal.Atty.Gen. 126 (1971)(hospital may not employ a physician to provide emergency service, even if charges for professional services are proportionate in amount to physician's salary); 63 Ops.Cal.Atty.Gen. 729, 732 (1980)(for-profit corporation may not engage in the practice of medicine directly, nor hire physicians to perform professional services); 65 Ops.Cal.Atty.Gen. 223 (1982)(corporation may not lawfully engage licensed physicians as independent contractors to treat employees because the selection of physician providers may require exercising medial judgment); 83 Ops.Cal.Atty.Gen. 170 (2000)(management services organization may not select, schedule, secure, or pay for radiology diagnostic services) and other opinions cited below.

A court should not abstain from hearing a case where the court is asked to "perform an ordinary judicial function, namely, to grant relief under the UCL and the FAL for business practices that are made unlawful by statute." *Blue Cross of Cal., Inc. v. Superior Court*, 180 Cal. App. 4th 1237, 1258 (2009) (also finding the action does not require court to determine complex economic policy because Legislature has "already made the relevant policy determinations by

defining and outlawing post-claims underwriting"). Here, the Court is tasked only with performing an ordinary judicial function: granting relief under the UCL for Defendants' business practices made unlawful under various statutes as alleged in the FAC, including Bus. & Prof. Code §§ 2400, 2502, 650 and others. Courts have no problem with analyzing and adjudicating CPOM claims. *See Steinsmith v. Med. Bd. of Cal.*, 85 Cal. App. 4th 458, 467 (2000)("this case is a straightforward application of the well-established doctrine barring the corporate practice of medicine.")

The area of policy is not so complex that a court cannot address the issues and decide the legality of Defendants' conduct, as is shown by the number of court and attorney general opinions which have done just that, as discussed above.

> The second factor we must consider in analyzing the applicability of the judicial abstention doctrine is whether the Legislature or other government entity has attempted to remedy the issues raised in plaintiffs' complaint or provided an alternative means of addressing such issues. […] The fact that the Legislature has required an agency to investigate remedies to a potentially problematic business practice is not, standing alone, sufficient to support judicial abstention […] Rather, […] abstention is generally appropriate only if there is an alternative means of resolving the issues raised in the plaintiff's complaint.

*Klein*, *supra*, 202 Cal. App. 4th at 1368-69.

Defendants' reliance on *Hambrick v. Healthcare Partners Medical Group, Inc.,* 238 Cal.App.4th 124 (2015) and *Alvarado v. Selma Convalescent Hosp.*, 153 Cal.App.4th 1292. (2007), for the proposition that the Medical Board could adjudicate the case is misplaced. *Hambrick* and *Alvarado* concerned cases under the jurisdiction of the California Department of Managed Healthcare, which has statutory authority to enjoin the operation of the unfair practices alleged, bring actions to superior court to obtain injunctive relief, and was designed to prosecute malefactors who advertised false plans. The California Department of Managed Health care has extensive authority for developing regulations and enforcing them. The Board has no regulatory authority over Envision and has not promulgated regulations concerning the determination of

whether a corporation is practicing medicine, whether it is receiving kickbacks, or using restrictive covenants. Moreover, Health Care Organizations such as those in *Hambrick* and *Alvarado* that are subject to the extensive regulatory scheme established under the Knox-Keene Act, directly answer to the California Department of Managed Health Care ("DMHC").

*Hambrick* involved a trial court's decision to abstain from determining whether the defendants qualified as a "health care service plan" under section 1345, subdivision (f)(1) of the Health & Safety Code, or a "risk-bearing organization" under section 1375.4, subdivision (g). *Id.* at 141. The court of appeal found that this could only be determined by "making a policy determination as to the acceptable level of risk a medical group may accept before being required to obtain a license as a health care service plan." *Id.* The court considered this a policy determination beyond its capabilities because the legislature made no determination as to this issue, and the DHMC did not provide any guidance in its regulations for the court to apply. *Id.* at 149.

Similarly, *Alvarado v. Selma Convalescent Hosp.*, 153 Cal.App.4th 1292 (2007), concerned a class action alleging causes of action under the UCL against skilled nursing and intermediate care facilities, seeking to require the facilities to comply with statutory requirements for the minimum number of nursing hours per nursing patient. But the relevant statute required the State Department of Health Care Services to adopt regulations setting forth the minimum number of hours per patient required in each type of facility. In reaching this conclusion, the court detailed the complicated issue: it needed to determine whether a particular facility was providing the required number of nursing hours, which was very technical in nature and regulatory in essence. The court concluded this was "a task better accomplished by an administrative agency than by trial courts" and that adjudicating the class action would require it to "assume general regulatory powers over the health care industry." *Id.* at 1306.

Defendants further argue that abstention is appropriate because this case requires the Court to determine what extent Defendants are required to secure licensure. This makes no sense – per statute lay corporations and other artificial entities cannot be licensed. Bus. & Prof. Code §2400.

The provisions of the MPA only discuss disciplinary action the Board may take against individual physicians and surgeons, by revoking licenses, fines, or public remand, but do not establish a procedure for prosecuting corporations. There are thus no alternative means available for resolution of the issues presented in Plaintiff's FAC. The Board does not have to take up a matter because someone asks them to.

Defendants cite no instance in which a California Court has abstained in or not assumed jurisdiction in favor of the Medical Board, and this case should not be the first. Defendants also argue that the Board should undertake the "initial decision-making" on this matter, without explaining what that means or why it would be helpful. Deferring to an agency that has primary jurisdiction over an issue and staying the civil action is only necessary when there is a specific issue the Court decides the agency is better equipped to determine before the case is brought back to the Court and the stay is lifted. No published California case has ever held that the Board has primary jurisdiction over the CPOM, and this case should not be the first.

**B.** **Plaintiff Has Stated a Viable Claim for Unfair Business Practices under Bus. & Prof. Code §§ 17200,** *et seq.*

   **i.** **Plaintiff Alleged Unlawful Conduct.**

      a.  Defendants Engaged in the Corporate Practice of Medicine.

Plaintiff had alleged in very detailed fashion that Defendants have both directly and indirectly engaged in the CPOM, and thereby violated numerous statutes. "The Medical Practice Act prohibition of the corporate practice of medicine is declaratory of a basic public policy against corporate practice of the learned professions." *Conrad v. Med. Bd.*, 48 Cal. App. 4th 1038, 1042-43 (1996). The policy behind the ban on the CPOM is to "ameliorate 'the evils of divided loyalty and impaired confidence' which are thought to be created when a corporation solicits medical business from the general public and turns it over to a special group of doctors, who are thus under lay control." *Id.*

"Determining whether the contractual relationship between a physician and a non-licensee results in the non-licensee's unlicensed practice of medicine [...] turns on whether the non-

licensee exercises or has retained the right to exercise control or discretion over the physician's practice." *Epic Med. Mgmt., LLC v. Paquette*, 244 Cal. App. 4th 504, 517 (2015).

"In a professional corporation, it is not always possible to divide the "business" side of the corporation from the part which renders professional services; "[the] subject is treated as a whole." *Marik v. Superior Court*, 191 Cal. App. 3d 1136, 1140 (1987). "The law does not assume to divide the practice . . . into [clinical and business] departments. Either one may extend into the domain of the other in respects that would make such a division impractical if not impossible." 65 Ops.Cal.Atty.Gen. 366 (1982) (quoting *Painless Parker v. Board of Dental Exam.* (1932) 216 Cal. 285, 296).

"The ban on the corporate practice of medicine generally precludes for-profit corporations—other than licensed medical corporations—from providing medical care through either salaried employees or independent contractors." *People v. Cole*, 38 Cal. 4th 964, 970 (2006). But, the exact manner in which physicians are engaged by the lay entity is not determinative for purposes of finding a CPOM violation. "We are unable to agree that the policy of the law may be circumvented by technical distinctions in the manner in which the doctors are engaged, designated, or compensated by the corporation…[I]t is immaterial whether the appointed practitioners are termed employees, agents or appointees of the petitioner." *People ex rel. State Bd. of Med. Exam'rs v. Pac. Health Corp.*, 12 Cal. 2d 156, 159 (1938).

Plaintiff has stated a claim under section 17200 by alleging Defendants' unlawful conduct in a myriad of ways violative of the CPOM, and Bus. & Prof. Code §§2400, 2052, 650 and Corp. Code §§ 13407 and 13408.5.

Envision's direct control over its captive medical groups rises to the level of the CPOM. ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ █████████████████████████████ Plaintiff alleged the corporate officers of the captive medical groups are in fact high ranking Envision executives who are not licensed to practice

medicine in California. (FAC ¶¶ 30-33.) Plaintiff alleges that these executives are the corporate officers of hundreds of captive medical groups. (FAC ¶ 32.) Envision chooses and appoints the medical directors of the controlled physician entities so that rather than contracting with third party medical groups, it either controls them through their appointed management figures or by wholly owning them. (FAC ¶¶27, 29.) *See Benjamin Franklin Life Assurance Co. v. Mitchell*, 14 Cal. App. 2d 654, 656-57 (1936) (insurance policyholder's committee was a committee of the company, not the policyholders, and engaged in indirect CPOM because company required policyholder to engage in the selection of doctors for which insurance would reimburse, which it could not lawfully do directly.)

The FAC alleges Envision's complete financial and managerial control over the captive medical groups. (FAC ¶ 36.) Plaintiff alleges that Envision locks in its full control over the captive group by causing the group's straw man officers to enter into Management Services Agreements ("MSA") with Envision. (FAC ¶ 37.) *See People ex rel. Monterey Mushrooms, Inc. V. Thompson*, (2006) 38 Cal.Rptr.3d 677 (where physician medical directors were "absentee figureheads" and strawmen who had no meaningful role in the direction of patient care or general clinic operation, court found defendants maintained control over the medical groups through their management corporation and siphoned off profits in violation of CPOM).

Once the MSA is signed, Plaintiffs allege Envision controls the medical group to such an extent as to render physicians'mere employees by establishing their employment terms, pay rate, schedule, working condition, contracts with payors, billing, coding, and collections, and deciding when to terminate physicians. (FAC ¶¶ 30-33, 39, 45.) *See People v. Superior Court (Cardillo)*, 218 Cal.App.4th 492, 498 (2013)(non-physician owners of marijuana dispensary engaged in unlicensed, CPOM, by employing licensed physicians, setting their hours, soliciting and scheduling patients, collecting fees and paying physicians a percentage of fees). Plaintiffs also allege that Envision collects the physicians' fees and does not report how much they collect on their behalf or disclose the billed amounts to the physicians of its controlled groups. (FAC ¶41.) *See* 55 Ops.Cal.Atty.Gen. 103 (1972) (agreement between physician and hospital constituted CPOM because physician neither set his own fees nor had any control over the receipt and

collection of such fees). Plaintiff alleges that Envision creates benchmarking programs and provides practice feedback based on whether such benchmarks are met. (FAC ¶¶30-33, 45.) Envision recognizes these practices likely constitute the CPOM. (FAC ¶ 46.)

It does not matter whether Envision directly or indirectly controlled the medical group physicians or "employed them" for purposes of finding a CPOM violation. *See People ex rel. State Bd. of Med. Exam'rs v. Pac. Health Corp.*, 12 Cal. 2d 156, 158, (1938) (technical distinctions as to how the physicians' services were engaged not sufficient to circumvent CPOM; directly employing physicians not only basis for finding CPOM).

Defendants argue that Plaintiff's allegations of the CPOM pertain to third parties (the medical groups) and are therefore not acts attributable to the Defendants themselves, and that they Defendants cannot be liable for contracts which they are not a party to. In so doing, they invite the Court to accept their creation and dominance of medical groups as legitimate.

That Envision's corporate structure was designed as a strategy to circumvent the ban on the CPOM, which is essentially their national operational strategy, was recently recognized by the Missouri Court of Appeals in *Brovont v. KS-I Med. Servs., P.A.*, 622 S.W.3d 671 (2020). In *Brovont*, the court evaluated whether EmCare's subsidiary Kansas medical group had sufficient minimum contacts with Missouri to support the Missouri court's personal jurisdiction over a claim of wrongful termination claim by a physician who complained that his employer violated federal laws. *Id.* Emcare is an arm of Envision (FAC ¶23.) In the context of analyzing whether the Missouri court had jurisdiction over Emcare's Kansas subsidiary medical group, the court laid out Emcare's scheme much as does the FAC:

> Because regulations prohibit publicly traded companies or for-profit corporations from owning physician practice groups, EmCare's business model is to create a separate subsidiary legal entity for each state and in some circumstances for each location at which it supplies physicians to provide emergency medical services. […] EmCare then makes a physician the owner of these subsidiaries to comply with the regulations, which prohibit a publicly traded company from providing medical services.[…]

EmCare has hundreds, if not thousands, of such subsidiaries across the United States. Gregory Byrne, M.D., a Dallas-based physician employed by EmCare, is the sole owner of KS-I. At any given period of time he also owns between 275 and 300 other EmCare subsidiaries in at least 20 different states. The exact number of EmCare subsidiaries he owns changes every month, and he does not keep track of them or take any management role in any of them. The number does not matter to him because all the profits of the subsidiaries flow to EmCare. The owners of the subsidiaries are simply paid a salary by EmCare. The payroll, human resources, legal, physician recruiting, and operation of each subsidiary was controlled by EmCare, and they would forward operational documents for the physician "owner" of the subsidiary to sign.

Though EmCare is careful to maintain corporate formalities between itself and its various subsidiaries, the subsidiaries are managed and operated by persons who are agents of the subsidiaries but who are also directly connected to the parent corporation, EmCare. Dr. Patrick McHugh ("Dr. McHugh") was, at all relevant times, both the Executive Vice President of EmCare and directly responsible for all hospital subsidiary contracts in the Kansas City metropolitan area.

*Id.* at 678.

The facts stated in *Bovont* mirror those alleged in the FAC closely.

Further, the Defendants can also be held directly liable under the alter ego doctrine for their scheme of creating subsidiaries to circumvent the ban on the CPOM. "[W]here a corporation is used by an individual or individuals, or by another corporation, to perpetrate fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, a court may disregard the corporate entity and treat the corporation's acts as if they were done by the persons actually controlling the corporation.". *Toho Towa vs Morgan Creek Productions*, 217 Cal.App.4th 1096, at 1107 (2013). As stated above, the FAC clearly alleges Envision exerted pervasive control over its captive medical groups so that the corporate form must be denied and Envision itself be found to be practicing medicine.

Defendants' pervasive control, e.g. through its officers appointed as medical directors for hundreds or thousands of medical groups controlled by Envision in numerous states could be analogized to franchising which constitutes the CPOM. *See e.g.* 65 Ops.Cal.Atty.Gen. 366

(1982) (Optometry not amenable to being franchised because the control over the professional services of the franchisor would be so extensive as to require its registration with the Board of Optometry), *California Association of Dispensing Opticians v. Pearle Vision Center, Inc.* 143 Cal.App.3d 419, 427-28, 434 (1983) (Franchising agreement requiring franchisee optometrist to pay a percentage of his gross income to franchisor, stock frames and prescription lenses approved by franchisor, and choose only laboratories approved by franchisor, etc., was the illegal practice of optometry by an unlicensed lay corporation).

As shown by the examples from the FAC cited above, the FAC clearly alleges sufficient facts establishing violations of the CPOM. Accordingly, Plaintiffs have adequately pleaded a UCL claim under the unlawful prong.

Contrary to what Defendants assert, Plaintiff does not premise its UCL claim on the violation of other states' laws, nor does it seek that this Court award remedies to address Defendants' violations of other state statutes[1] or "nationwide application of California's consumer protection laws". (Motion to Dismiss, p. 9.)  Defendants assert without support or analysis that Plaintiff's CPOM claim fails because Plaintiff does not allege the involvement of a licensed physician, and cite to Corp. Code section 1341.5, which does not exist. The argument should be disregarded.

b.   The FAC Sufficiently Pleads Violations of Bus. & Prof. Code §650.

Defendants argue that the allegations of violations of Business and Professions Code §650 are inadequate based on a view of the statute that ignores its plain language, the law, and the allegations of the FAC.

Bus. & Prof. Code §650(a) prohibits the offer, delivery, receipt, or acceptance of consideration (and other types of remuneration) to induce the referral of patients. Welfare & Inst. Code § 14107.2 similarly prohibits the offer or payment of remuneration for referrals of patients from a physician or instruction that treats Medi-Cal beneficiaries. Any factor that may induce

---

[1]  Plaintiff did not plead violations of other state laws, but clearly cites violations of California law, including Bus. & Prof. Code secs. 650, 2400, 2052, 16600, 16727, 17500, Corp. Code secs 13407, 13408.5, Welfare & Inst. Code sec. 14107.2. (FAC paragraphs 4, 6, 14, 27, 48, 52, 54, 58, 61, 79-82, 91-94, 98-100.)  Defendants' actions in other states was mentioned to illustrate the uniformity of their design to evade the CPOM ban, purposefulness and demonstrate the risk of replication in California in the future if the declaratory relief is not granted.

referral other than the best interests of the patients may qualify as consideration under Bus. & Prof. Code section 650(a) (See Attorney General Opinion, 63 Op.Atty.Gen.Cal. 89 (1980)(offer of professional courtesy to physician and his family may be in violation of Section 650(a) depending on whether intent was to induce referrals); *Beck v. American Health Group Internat., Inc.,* 211 Cal.App.3d 1555 (1989)(contract compensating psychiatrist medical director based on number of psychiatric inpatients at hospital provided inducement for referral of his patients to hospital, in violation of section 650(a)); 84 Ops. Cal. Atty. Gen 113 (corporation may not charge annual subscription fee for furnishing list of physicians willing to provide medical services at discounted rates to uninsured indigent persons).

Under section 650(a) the consideration offered does not have to be unearned, it just needs to be intended to generate a referral of patients. *Beck v. American Health Group Internat., Inc.*, 211 Cal.App.3d 1555 (1989), *Blank v. Palo Alto-Stanford Hospital Center*, 234 Cal.App.2d 377, 390 (1965). *See also*, *Epic Medical Management, LLC v. Paquette*, 244 Cal. App. 4th 504 (2015) and *Mason v. Hosta*, 152 Cal.App.3d 980, 987 (1984). Envision's offer of remuneration to hospitals in the form of reduced subsidies to its anesthesia groups in exchange for exclusive emergency room staffing contracts is illegal. (FAC ¶68.) [2]



[2] (finding violation of section 650(a) adequately pleaded where alleged that hospital paid below market rates for hospitalist services provided by medical group in exchange for exclusive agreement to provide such services. Plaintiffs were not required to allege how and why the contract was below fair market value, or how the contract necessarily resulted in a fraudulent kickback scheme. "Particularized fact pleading is not required for a UCL claim.")  Defendants' claim that no money was paid by a physician group for a contract is unavailing, particularly where the gravamen of the complaint is that Envision created Professional Medical Corporations as mere shells designed to evade the CPOM and anti-kickback rules. (FAC ¶ 28).

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████

Defendants seek to misdirect the Court by arguing the FAC is inadequate for its failure to allege value of services provided, claiming the conduct alleged is not illegal under Bus. & Prof. Code § 650(b) if the value of services furnished is commensurate with fair rental value of premises or equipment leased or provided by the recipient to the payer. (Motion to Dismiss p. 10.) Defendants are wrong on all accounts.

Section 650b is a safe harbor provision of 650. It insulates otherwise impermissible conduct and fee-splitting if the "payment or receipt of consideration for services other than the referral of patients *that is based on a percentage of gross revenue* or similar type of contractual arrangement…" § 650. The FAC does not allege that there is a payment or receipt based upon a percentage of gross revenue.[4] Second, it is the Defendants' burden to show that the safe harbor provision should apply - not Plaintiff's. *See Capitol Records, Ltd. Liab. Co. v. Vimeo, Ltd. Liab.*

---

[3] Remuneration in the form of offering services below market rate can be pleaded without defining the market rate as a dollar figure. See *United States ex rel. STF, LLC v. Vibrant Am., LLC*, No. 16-cv-02487-JCS, 2020 U.S. Dist. LEXIS 150345, at *35 (N.D. Cal. Aug. 19, 2020) (reasonable inference that laboratory offered blood draw fee to physician clinic above "fair market value" when no such services were performed, and where it vastly exceeded the normal Medicare reimbursement rate for a blood draw; properly pleaded remuneration for referral of patients to laboratory under False Claims Act).

[4] It alleges a kickback in the form of consideration offered for the granting of emergency department contracts and fee splitting based on Envision keeping all physician revenues and deciding what to pay the physicians.

---

*Co.*, 826 F.3d 78, 94 (2d Cir. 2016). Finally, even in cases where the doctrine is properly invoked, plaintiff need not plead the specific amounts when the consideration was unearned. *Alborzi v. Univ. of S. Cal.*, 55 Cal. App. 5th 155, 184, 269 Cal. Rptr. 3d 295, 317 (2020).

Defendants improperly rely on federal renumeration statutes and cases analyzing them to challenge the sufficiency of the FAC allegations. In *United States ex rel. Gough v. Eastwestproto, Inc.*, No. CV 14-465 DMG (SHx), 2018 U.S. Dist. LEXIS 224953, at *24 (C.D. Cal. Oct. 24, 2018) the plaintiff alleged that the defendants violated anti-kickback provisions of the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320a-7b(b), and the court analyzed whether "remuneration" was properly pleaded in the context of prior case law interpreting that statute. *Id.* at *3-4. The instant case does not arise under that statute or similar federal renumeration statutes. Similarly, in *United States v. Adventist Health,* No. 17-CV-00613-AWI-SKO, 2020 U.S. Dist. LEXIS 87205 (E.D. Cal. May 15, 2020) plaintiff only alleged that the "kickbacks can be shown to exist through PPA paying less than fair market value to PMSO/SJCH for services rendered" but did not allege any facts for the court to conclude that the price was below market value. *Id.* at *7.[5]

The FAC states a well pleaded cause of action under the UCL for violations of Bus. & Prof. Code § 650.

### c.   Defendants' Unlawful Use of Restrictive Covenants

Defendants argue they cannot be liable for a Bus. & Prof. Code § 16600 violation because they are not parties to the contracts identified in the FAC as constituting an unlawful restraint on trade, and because UCL claims cannot be based on vicarious liability, citing *Hanna v. Walmart Inc.*, No. 5:20-cv-01075-MCS-SHK, 2020 U.S. Dist. LEXIS 237505, at *13-14 (C.D. Cal. Nov. 4, 2020) (MTD p. 11).  The gravamen of the complaint is that medical groups are not separate

---

[5] *Adventist Health* does not hold that rendering services at below market value cost is the only way to allege remuneration, or that a specific cost figure must be alleged for the court to determine that services were offered below market rate. In those cases, the plaintiffs alleged that the below-cost or below fair market value pricing constituted remuneration without providing a baseline to compare the pricing against, thus lacking sufficient factual allegations. Both of these opinions, and the cases on which they rely, analyzed the pleading standard for remuneration in the context of a motion to dismiss a claim under the federal and California false claims act, to which a particularity pleading standard under FRCP Rule 9(b) applies, which is not the case for alleging a violation of Bus. & Prof. Code § 650. *Id.* Since the opinions that Defendants cite in support of this argument are from other district courts, the Court should not consider them as binding precedent.

entities, so it is peculiar they interpose the fake separateness of those entities as a defense. Their reliance on *Hanna* anomalous because the court stated the issue was "whether a party participated in or *had control over conduct* violating the UCL" and whether the party had notice of such conduct. (emphasis added) *Id.* at *14. Here, Plaintiff alleges repeatedly that Envision directly and indirectly engages in the CPOM and authors the unlawful contracts because the medical group subsidiaries are headed by strawmen who are usually also officers of Envision. Further, "Envision negotiates the Groups' contracts with third-party payors and health insurers and then decides whether the group will agree to the terms." (FAC ¶39.) Defendants are thus direct participants in the wrongful acts and not a party sued on a vicarious liability theory.

Violations of Bus. & Prof. Code § 16600's prohibition on the restraint of trade may occur in the context of employment agreements or agreements between business entities. Their propriety is evaluated under different standards. Defendants do not dispute that non-compete agreements in the employment context violate § 16600, except when its specific statutory exceptions are met, which do not apply here.

1. The "Independent Contractor Agreement" is An Unlawful Non-Solicitation and Non-Compete.

The illegality of the contractor agreement quoted at FAC ¶48 lies in its third clause wherein after a period of 12 months following the end of the independent contractor agreement the "Contractor shall not directly or indirectly induce, persuade (or attempt to induce or persuade) any person or entity to terminate or breach any contract with Company, any affiliates, subsidiaries, or managed entities thereof, Envision Healthcare Company, or any affiliates, subsidiaries, or managed entities."

This clause is very broad, so that it prohibits a physician employed by Envision from soliciting a former colleague of the Envision controlled physician group, and prohibits a physician for 12 months after leaving the medical group to join or create a competing medical group that offers its services to the same hospital where Envision or any of its other subsidiaries offers its services. This would qualify as "inducing or persuading" the hospital to terminate its contract

with Envision, or in the context of employee solicitation, would qualify as the employee terminating their independent contractor agreement with Envision. The agreement not only prohibits the inducement of breach of a third party's contract, but also prohibits inducing or "persuading" a third party to terminate their employment contract with Envision which is equivalent to a non-solicitation clause held invalid under case law interpreting § 16600.

An employer's use of a noncompete agreement illegal under Bus. & Prof. Code § 16600 also violates the UCL (§ 17200). *Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th 564, 575 (2009) (non-solicitation clause preventing employees for a period of 18 months postemployment from soliciting any business from, selling to, or rendering any service directly or indirectly to any of the clients, unlawfully restrained the employees from practicing their chosen profession in violation of both Bus. & Prof. Code §§ 16600 and 17200). *See also Reeves v. Hanlon*, 33 Cal. 4th 1140, 1151 (2004) (interference with at-will employment contract that induces its termination, does not constitute a breach because plaintiff has no legal assurance that employee will continue to work for the plaintiff).

Here, the independent contractor agreement alleged at paragraph 48 of the FAC functions as both a non-compete and non-solicitation clause which are unlawful under Bus. & Prof. Code § 16600, and no statutory exception applies. Therefore, pursuant to *Dowell*, *supra*, because Plaintiff alleged that Defendants violated § 16600, it has also stated a valid UCL claim under § 17200, *et seq.*

2. The Exclusive Dealing Agreements between Envision and
Hospitals Violate the Rule of Reason.

Under the rule of reason analysis, an exclusive dealing agreement between businesses may violate Bus. & Prof. Code § 16600 and such contracts are invalid "when their purpose was to restrain trade by creating a monopoly, restricting supply, or fixing prices." *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1154 (2020). "In California, exclusive dealing arrangements are not deemed illegal per se but may be illegal if they unreasonably restrict competition in a particular market." *UAS Mgmt., Inc. v. Mater Misericordiae Hosp.*, 169 Cal. App. 4th 357, 365 (2008).

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**      **3:22-cv-00421-CRB**
**MOTION TO DISMISS FIRST**
**AMENDED COMPLAINT**

-21-

> In determining whether an exclusive-dealing contract is unreasonable, the proper focus is on the structure of the market for the products or services in question -- the number of sellers and buyers in the market, the volume of their business, and the ease with which buyers and sellers can redirect their purchases or sales to others. Exclusive dealing is an unreasonable restraint on trade only when a significant fraction of buyers or sellers are frozen out of a market by the exclusive deal.

*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 45 (1984).

Here, Plaintiff pleaded that Defendants' exclusive dealing contracts with hospital emergency departments, particularly in rural areas, significantly limit the ability of competing emergency physician medical groups to offer their services to hospitals and reduce the market for lawfully operating management services organizations. (FAC ¶¶81g, 103.) This has the effect of stifling competition and sets up the stage for Envision to become a monopoly power in those areas. Defendants' exclusive emergency services contracts reduce the number of competitors for Emergency Services Contracts, limit "the supply of emergency physicians available to patients seeking emergency services", and cause increases "in the price of such patient services by limiting the facilities where emergency physicians can practice". (FAC ¶81e.)

### d. Violations of Bus. & Prof. Code § 17500 – Deceitful Advertising.

Plaintiff has pleaded in a detailed fashion which false statements Envision made, how they were communicated, and why the public was likely to be deceived. Defendants' MTD plainly omits reference to those particularized factual allegations. Plaintiff alleged that Defendants falsely advertise that they are "the nation's largest emergency medicine group" "when in reality it is a lay corporation owned by a private equity fund." (FAC ¶82.) These statements are likely to mislead the consumers/patients into thinking that the physicians Envision staffed at the emergency departments are not subject to direction or control over their professional judgment by anyone other than the immediate medical group that the physician contracts with.

### ii. **Plaintiff Alleged Unfair Conduct.**

"[A]n 'unfair' business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to

consumers." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel*. Co., 20 Cal. 4th 163, 184 (1999). An unfair business practice is pleaded as an "incipient violation of an antitrust law," or one that "violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Id.* at 187.

The allegation that Defendants cause an increase in medical costs to patients "by giving Defendants power over billing and pricing" (FAC ¶81c) is plausible on its face, because Plaintiff also pleads that "Envision requires physicians to assign their rights to the proceeds of their medical billings to Envision who then determines what is charged to patients and insurers" (FAC ¶40), "Envision collects physicians' fees but does not report how much they collected in the physicians' names or the groups' names" (FAC ¶41) and "Physicians are not allowed to know what is billed in their name or the Groups' name because, in part, they would know how much profit Envision is making from their professional services." (*Id.*)

Defendants' reference to *Sanderson v. Culligan Int'l Co.*, 415 F.3d 620, 623 (7th Cir. 2005) and *Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Pro. Publications, Inc.,* 108 F.3d 1147, 1152 (9th Cir. 1997) for the general proposition that antitrust statutes are not a remedy for false advertising is misplaced. In both of those cases the plaintiff sued a competitor for making derogatory statements in advertising about plaintiff's products or services. The court in *Am. Pro. Testing Serv., Inc.* found that "distinguishing false statements on which buyers do, or ought reasonably to, rely from customary puffing is not easy" and that the misleading advertisement "must have a significant and enduring adverse impact on competition itself in the relevant markets to rise to the level of an antitrust violation." This scenario is inapplicable because Plaintiff makes no allegation that Defendants' statements that Envision is a "physician-led medical group" were made to denigrate Plaintiff, nor did it allege that consumers would interpret it that way and would have the result of lessening competition.

Plaintiff's allegations amount to the formation of a trust under Bus. & Prof. Code § 16720 (definition of trust), also part of the Cartwright Act, which is made unlawful, against public policy and avoid under § 16727. An antitrust violation under § 16720 may also exist where an exclusive dealing arrangement is implied if the market foreclosure due to the harm on competition is

substantial enough, such as through █████████████████████████████

████████████████████████████████████

Thus, along with the allegations regarding Defendants' use of illegal restrictive covenants in violation of Bus. & Prof. Code § 16600, Plaintiff has also alleged incipient antitrust violations of provisions of the Cartwright Act.

### iii. Plaintiff Alleged Fraudulent or Misleading Conduct.

> To establish an unfair competition claim under the fraudulent prong, plaintiffs must show that the defendant's representations were false or were likely to have misled reasonable consumers. The standard for finding a likelihood of deception is that of a reasonable consumer who is neither the most vigilant and suspicious of advertising claims nor the most unwary and unsophisticated, but instead is the ordinary consumer within the target population.

*GreenCycle Paint, Inc. v. PaintCare, Inc.*, No. 15-cv-04059-MEJ, 2016 U.S. Dist. LEXIS 47960, at *35 (N.D. Cal. Apr. 8, 2016).

As discussed above, Plaintiff pleaded Defendants' fraudulent conduct with sufficient particularity required under FRCP Rule 9(b) by alleging misrepresentations Defendants make on their website that they are a medical group and the ways in which patients are likely to be misled by those statements leading to substantial harm in competition from management services organizations that do not engage in the unlawful CPOM.

Plaintiff successfully plead claims under each prong, as argued above, even though pleading facts to support recovery under any one of the prongs would suffice to state a claim. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (since section 17200 stated in the disjunctive, unfair business claim may be established by showing only a single prong: an unlawful, unfair, or deceptive practice.)

### C. Plaintiff's Request for Declaratory Relief is Adequately Pleaded.

"Declaratory relief is designed to resolve uncertainties or disputes that may result in future litigation. It operates prospectively and is not intended to redress past wrongs…" *StreamCast Networks, Inc. v. IBIS LLC*, No. CV 05-04239 MMM (Ex), 2006 U.S. Dist. LEXIS 97607, at *9 (C.D. Cal. May 1, 2006). "Declaratory relief is appropriate "(1) when the judgment will serve a

useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Guerra v. Sutton*, 783 F.2d 1371, 1376 (9th Cir. 1986).

As noted herein and in the FAC, Envision's systemic CPOM is highly repeatable in the future, in this state and in other states. While a UCL claim under Bus. & Prof. Code § 17200 would lie simply on the basis of the unlawful restrictive covenants quoted in the FAC, Plaintiff also seeks declarations that the California contracts are void and that Envision's creation and maintenance of subsidiary medical groups over which it retaining control, directly or indirectly, is a violation of California's ban on the CPOM. This declaration is necessary to prevent Envision from repeating these violations by creating new medical group subsidiaries in the future, with new medical directors appointed to them who are licensed in California yet continuing to materially violate the ban on the CPOM and anti-kickback statutes in all other aspects. Under California law, acts which are capable of repetition and evade review are immune to mootness claims. The fact these violations are, as *Brovant* explains, part of its corporate structure, increases the likelihood of repetition in the state of California.

Plaintiff has plead sufficient facts to state a claim against Defendant Envision Healthcare Corporation by referring to it and Envision Physician Services LLC as "Envision" collectively throughout the FAC and alleging that they are "alter-egos of each other, having common ownership and no separate corporate identities." Common ownership and the management structure between Envision Physician Services and Envision Healthcare Corporation is alleged to show that they operate as one and the same in their violations of the ban on the CPOM. (FAC ¶¶3, 23-26, 35.) Therefore, the allegations against Envision Physician Services are also attributable against Envision Healthcare Corporation.

## III.     IN THE ALTERNATIVE, LEAVE TO AMEND SHOULD BE GRANTED.

"In dismissing for failure to state a claim, a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th

Cir. 2016). Here, if the Court is inclined to dismiss the FAC, Plaintiff respectfully requests it be granted leave to amend and allege additional facts to cure the pleading deficiencies identified in the Court's ruling, if any.

## IV.    CONCLUSION.

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' MTD the FAC. In the alternative, if the Court dismisses the FAC, Plaintiff requests an opportunity to amend the FAC to cure the pleading deficiencies.


Date:  March 18, 2022                                    **MILLSTEIN FELLNER LLP**


By:___*/s/ David J. Millstein*_____
     David J. Millstein, Esq.
     Gerald S. Richelson, Esq.

     Attorneys for PLAINTIFF
     AMERICAN ACADEMY OF
     EMERGENCY MEDICINE PHYSICIAN
     GROUP, INC.