1  Thomas Ryan (SBN 143148)
   tryan@mwe.com
2  Jason Strabo (SBN 246426)
   jstrabo@mwe.com
3  Irene Le (SBN 325503)
   Ile@mwe.com
4  **MCDERMOTT WILL & EMERY LLP**
   2049 Century Park East
5  Suite 3200
   Los Angeles, CA 90067-3206
6  Telephone:    1 310 277 4110
   Facsimile:    1 310 277 4730
7
   Attorneys for Defendants
8  ENVISION HEALTHCARE CORPORATION
   AND ENVISION PHYSICIAN SERVICES,
9  L.L.C.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO

| | |
|---|---|
| AMERICAN ACADEMY OF EMERGENCY MEDICINE PHYSICIAN GROUP, INC., a Wisconsin Corporation,<br><br>Plaintiff,<br><br>v.<br><br>ENVISION HEALTHCARE CORPORATION; a Delaware Corporation; ENVISION PHYSICIAN SERVICES L.L.C.; a Delaware Limited Liability corporation doing business in California and DOES 1-100,<br><br>Defendants. | CASE NO. 3:22-cv-00421-CRB<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULES 12(B)(1) AND 12(B)(6) OR, ALTERNATIVELY, STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(F) OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br>Hearing Date: April 28, 2022<br>Time: 10:00 a.m.<br>Place: Courtroom 6, 17th Floor<br>Judge: Hon. Charles R. Breyer<br><br>Complaint Filed: December 20, 2021<br>FAC Filed: February 18, 2022<br><br>PER CIVIL L.R. 7-6, NO ORAL ARGUMENT UNLESS SEPARATELY ORDER BY THE COURT |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................1

II. Plaintiff's Opposition Should Be Disregarded Or Stricken in its Entirety For Failure To Comply With The Court's General Standing Order ................................................2

III. Plaintiff Has Not And Cannot Cure The Fatal Deficiencies in its Complaint ...............2

    A. The Court Should Decline to Exercise Jurisdiction Over This Matter Under the Doctrine of Primary Jurisdiction or, Alternatively, the Abstention Doctrine ........................................................................................................................2

    B. Plaintiff Fails to State a Claim for Violation of the Unfair Competition Law ..6

        1. Plaintiff Fails to State a Claim Under the UCL's Unlawful Prong........7

        2. Plaintiff Fails to Plead a Claim for Allegedly Unlawful Conduct Based on Alleged Violations of Section 17500..............................................12

    C. Plaintiff Fails to Plead a Claim Under the Misleading Prong...........................15

    D. Plaintiff's Declaratory Relief Claim Should Be Dismissed.............................15

IV. CONCLUSION............................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Group LP*,
    592 F. 3d 991 (9th Cir. 2010) ..................................................................................10

*Alvarado v. Selma Convalescent Hosp.*,
    153 Cal. App. 4th 1292 (2007) ............................................................................3, 4, 6

*Asahi Kasei Pharma Corp. v. CoTherix, Inc.*,
    204 Cal. App. 4th 1 (2012) ........................................................................................15

*Big Bear Lodging Ass'n v. Snow Summit, Inc.*,
    182 F.3d 1096 (9th Cir. 1999) ...................................................................................11

*Blue Cross of California, Inc. v. Superior Court*,
    180 Cal.App.4th 138 (2009) ........................................................................................6

*Brown Shoe Co., Inc. v. United States*,
    370 U.S. 294 (1962) ...................................................................................................12

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ...............................................................................................13

*Desert Healthcare Dist. v. PacifiCare, FHP Inc.*,
    94 Cal. App. 4th 781 (2001) ........................................................................................4

*Dowell v. Biosense Webster, Inc.*,
    179 Cal. App. 4th 564, 575 (2009) ..............................................................................9

*Hambrick v. Healthcare Partners Med. Grp., Inc.*,
    238 Cal. App. 4th 124 (2015) ..............................................................................3, 4, 6

*Innovative Health LLC v. Biosense Webster, Inc.*,
    No. SACV191984JVSKESX, 2020 WL 5921964 (C.D. Cal. Aug. 18, 2020) ..........13

*In re Netflix Antitrust Litig.*,
    506 F. Supp. 2d 308 (N.D. Cal. 2007) ......................................................................14

*Ixchel Pharma, LLC v. Biogen, Inc.*,
    9 Cal. 5th 1130 (2020) ...............................................................................................10

*Jensen v. Quality Loan Service Corp.*,
    No. 09–CV–01789 OWW–DLB, 2010 WL 1136005 (E.D. Cal. March 22, 2010) ................15

*Letsch v. Northern San Diego County Hospital District*,
    246 Cal. App. 2d 673 (1966) .......................................................................................6

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ..........................................................................................................15

*Neilson v. Union Bank of California*,
   290 F. Supp. 2d 1101 (C.D. Cal. 2003) ................................................................................7

*Newcal Indus., Inc. v. IKON Office Sol.*,
   513 F.3d 1038 (9th Cir. 2008) ......................................................................................11, 12

*Ojmar US, LLC v. Sec. People, Inc.*,
   No. 16-CV-04948-HSG, 2017 WL 3301214 (N.D. Cal. Aug. 2, 2017) .................................11

*Orchard Supply Hardware LLC v. Home Depot USA, Inc.*,
   939 F. Supp. 2d 1002 (N.D. Cal. 2013) ...............................................................................12

*Paladin Associates, Inc. v. Montana Power Co.*,
   328 F.3d 1145, 1158 (9th Cir. 2003) ...................................................................................14

*Patt v. Antech Diagnostics*,
   No. 8:18-cv-01689-JLS-DFM, 2020 WL 5076970 (C.D. Cal. May 18, 2020) .....................13

*Qwest Commc'ns Corp. v. Herakles, LLC*,
   No. 07-00393, 2008 WL 783343 (E.D. Cal. Mar. 20, 2008) ..................................................7

*Reeves v. Hanlon*,
   33 Cal. 4th 1140 (2004) ...................................................................................................9, 10

*Smith v. Simmons*,
   No. 05-1187, 2008 WL 744709 (E.D. Cal. Mar. 18, 2008) ....................................................8

*Steinsmith v. Medical Board*,
   85 Cal. App. 4th 458 (2000) ..................................................................................................6

*Tampa Elec. Co. v. Nashville Coal Co.*,
   365 U.S. 320 (1961) .............................................................................................................11

*Tanaka v. Univ. of S. Cal.*,
   252 F.3d 1059, 1062-63 (9th Cir. 2001) ..............................................................................11

*Techno Lite, Inc. v. Emcod, LLC*,
   44 Cal. App. 5th 462 (2020) ..................................................................................................9

*Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*,
   875 F.2d 1369 (9th Cir. 1989) .............................................................................................11

*Toscano v. PGA Tour, Inc.*,
   70 F. Supp. 2d 1109 (E.D. Cal. 1999) .................................................................................14

*United States v. Adventist Health*,

| | |
|---|---|
| | No. 17-CV-00613-AWI-SKO, 2020 WL 2522114 (E.D. Cal. May 18, 2020) ....................8, 9 |

*United States ex rel. Gough v. Eastwestproto, Inc.*,
  No. CV 14-465 DMG (SHx), 2018 WL 6929332 (C.D. Cal. Oct. 24, 2018) ..........................9

**Statutes**

Cal. Bus. & Prof. Code § 650 ...............................................................................................3, 8

Cal. Bus. & Prof. Code § 2000 ..................................................................................................3

Cal. Bus. & Prof. Code § 2004 ..........................................................................................3, 4, 5

Cal. Bus. & Prof. Code § 2220 ...............................................................................................3, 5

Cal. Bus. & Prof. Code § 2032 ..................................................................................................5

Cal. Bus. & Prof. Code § 16600 ................................................................................................9

Cal. Bus. & Prof. Code § 16727 ..............................................................................................12

Cal. Bus. & Prof. Code § 17200 ................................................................................................1

Cal. Bus. & Prof. Code § 17500 ..............................................................................................12

**Other Authorities**

F.R.C.P. Rule 9(b)......................................................................................................................9

F.R.C.P. Rule 8 ..........................................................................................................................9

F.R.C.P. Rule 12(b)(6)........................................................................................................11, 12

Merriam-Webster Online Dictionary, https://www.merriam-
  webster.com/dictionary/induce (accessed 24 Mar. 2022)......................................................10

## I. INTRODUCTION

Plaintiff's Opposition to Defendant's Motion to Dismiss the First Amended Complaint ("Opposition") is both procedurally improper and substantively incorrect. Procedurally, Plaintiff's Opposition is 10 pages longer than permitted by this Court's General Standing Order (the "Standing Order"). Standing Order § I.C. To Defendants' knowledge, Plaintiff neither sought nor obtained leave of Court to submit a brief that deviated from the Standing Order's clear limitations.[1]

With respect to the Opposition's substance, the Opposition does not address the central flaw permeating Plaintiff's First Amended Complaint ("FAC"). If Plaintiff's case depends, as should now be clear, upon the alleged wrongful action of a physician or physician-owned medical groups, primary jurisdiction over the matter should be before the California Medical Board (the "Board"). If Plaintiff's case does not depend on those wrongful actions, it fails to state a claim under Section 17200 against the actual defendants even under an alter ego theory.

Trying to avoid both the frying pan and the fire, the Opposition's main three points appear to be: (1) the Medical Board should not have primary jurisdiction over the matter since the "strawman" physician and his or her medical corporations are not named parties; (2) the alleged bad acts of the physician and physician-owned medical corporations can nevertheless be attributed to the named defendants under an apparent alter ego theory for purposes of stating a Section 17200 claim; and (3) in any event, the Board does not have "exclusive" jurisdiction over this matter, only arguably "primary" jurisdiction.

Plaintiff cannot have it both ways. Plaintiff cannot say that the Board lacks jurisdiction because Plaintiff is suing non-physician parties, but at the same time attribute the same alleged misconduct to the named Defendants under a "strawman" theory. The gravamen of this case is that physicians and physician-owned medical corporations are improperly hiring, managing, and pricing healthcare services in violation of certain restrictions imposed by California law. California law establishes a California state agency, the Board, complete with physician members, that can and

---

[1] Defendants further note that the Standing Order appears to require the Plaintiff to lodge a redline of its amended pleading comparing that pleading to its original pleading. Defendants are not aware of any such redline that has been lodged with the Court.

should address these issues in the first instance.

Apparently recognizing the inherent weakness of Plaintiff's original position, Plaintiff's Opposition attempts to shift focus by claiming that, even if the Board has primary jurisdiction, it does not have exclusive jurisdiction. Defendants have never said that this Court should not retain some jurisdiction but, instead, that the Board is uniquely qualified to address the core issues in the first instance, and note that Plaintiff's arguments strongly suggest that Plaintiff does not expect the Board to favor their goal, which is apparently to defend higher healthcare costs for certain providers.[2]

## II. PLAINTIFF'S OPPOSITION SHOULD BE DISREGARDED OR STRICKEN IN ITS ENTIRETY FOR FAILURE TO COMPLY WITH THE COURT'S GENERAL STANDING ORDER

The Court's General Standing Order is clear — "[b]riefs or Memoranda of Points and Authorities in support of, or in opposition to, any motions filed in an action . . . may not exceed 15 pages in length, exclusive of title pages, indexes of cases, table of contents, exhibits and summaries of argument, if required." Standing Order § I.C. Plaintiff neither sought nor obtained leave of Court to exceed this limit but nevertheless filed an opposition approaching double the permitted length. Given this clear failure, Plaintiff's Opposition should be disregarded or, alternatively, stricken.

## III. PLAINTIFF HAS NOT AND CANNOT CURE THE FATAL DEFICIENCIES IN ITS COMPLAINT

### A. The Court Should Decline to Exercise Jurisdiction Over This Matter Under the Doctrine of Primary Jurisdiction or, Alternatively, the Abstention Doctrine

The Court should decline to exercise jurisdiction over this matter. Under the doctrine of primary jurisdiction and the abstention doctrine,[3] a trial court may abstain from adjudicating a suit that seeks equitable remedies if granting the requested relief would require a trial court to assume the

---

[2] Defendants have been informed that at least two non-parties intend to file more pages in support of Plaintiff's position. Defendants are not in a position to consent to the filing of these papers at this time, as Defendants have not yet seen or been afforded an opportunity to review the papers. If, after being afforded an opportunity to review the filings, Defendants determine that they have no objections, they will file a notice of non-opposition. Otherwise, Defendants may request an opportunity to respond to the filings.

[3] The primary jurisdiction and abstention doctrines are technically separate and distinct doctrines. Because, however, Plaintiff refers to them in its Opposition using the same title, and because they consider many of the same factors and lead to the same result, Envision refers to them in this reply as the primary jurisdiction doctrine.

functions of or to interfere with the functions of an administrative agency. *See Hambrick v. Healthcare Partners Med. Gp.*, 238 Cal. App. 4th 124, 147 (2015). Abstention is likewise appropriate if the lawsuit involves determining complex economic policy, which is best handled by the Legislature or an administrative agency, or if adjudicating the case would require extensive administrative oversight. *Id.; see also Alvarado v. Selma Convalescent Hosp.*, 153 Cal. App. 4th 1292, 1298 (2007) (abstention doctrine appropriate where equitable relief sought and UCL suit involves determining complex economic policy which is better handled by the Legislature or an administrative agency).

This case presents all of these circumstances. There is an administrative agency entrusted by the government with oversight over the core issues raised by Plaintiff's FAC, the Board. The Board is specifically entrusted by California's Legislature with oversight and enforcement of licensure, including specifically proceedings for the unauthorized practice of medicine, and has authority over claims under Section 650. Cal. Bus. & Prof. Code § 2402. *See also* Cal. Bus. & Prof. Code §§ 2220 and 652. The Board is an expansive regulatory body that regulates the practice of medicine, holds hearings and issue fines and other punishments for violations, including claims of both the unlawful corporate practice of medicine, and unlawful "fee-splitting." (Motion to Dismiss p. 7); Cal. Bus. & Prof. Code §§ 2000, 2004. The Board can and does initiate and pursue enforcement actions for engaging in or aiding and abetting the unauthorized practice of medicine.

The Board has been entrusted by the Legislature with determining and overseeing the scope and bounds of the practice of medicine in California. The resolution of Plaintiff's claims in this case places at issue complicated concerns of public policy which were entrusted to that entity by the Legislature, including whether a class of entities performing valuable services within the medical field are, in fact, not permissible; the details of specific types of compensation arrangements and the specifics of individual factors that may be taken into account in referrals; and the specific delineation between whether numerous categories of nuanced administrative activities can permissibly be conducted. The resolution of the claims presented in this matter may significantly impact, among other things, the degree to which medical providers can use their time to provide medical treatment by entrusting administrative tasks to non-providers or must take away from the practice of medicine

in order to themselves handle basic business activities relating to the operation of their medical practices. The Board is comprised of physicians, and these issues are specifically what the Board was designed to address.

The definitional issues here with respect to what constitutes the practice of medicine are precisely the type of complicated definitional questions that Courts have held, in the context, of complicated multi-player industries, to merit application of the judicial abstention doctrine. For example, in *Hambrick*, 238 Cal. App. 4th at 132–33, a putative UCL claim placed at issue whether an entity constitutes an unlicensed "health care service plan" within the meaning of Health and Safety Code ("HSC") Section 1345; in *Alvarado*, 153 Cal. App. 4th at 1305–06, a putative UCL claim placed at issue whether entities constituted "skilled nursing facilit[ies]" within the meaning of Section 1276.5 of the HSC; and in *Desert Healthcare Dist.*, 94 Cal. App. 4th at 795, a putative UCL claim placed at issue whether an entity constituted a "risk bearing" organization under the HSC. In all three cases, the Court concluded that the scope and bounds of these terms presented complicated issues of public policy that were appropriately delegated to the applicable administrative agency.

In its Opposition, Plaintiff does not dispute that the Board has been entrusted by the Legislature with oversight of policy issues relating to the permissible scope and form of the practice of medicine in California. (Opp. p. 3.) Plaintiff nevertheless asserts that the case should not be dismissed under the doctrine of primary jurisdiction for three principal reasons. First, Plaintiff contends the case should not be dismissed or stayed under the doctrine because the Board purportedly does not have jurisdiction over lay entities. (Opp. p. 4-5.) Second, Plaintiff argues that no case has ever held that the Board possesses exclusive jurisdiction over issues of licensure or alleged fee splitting. (Opp. p. 2-3.) Third, Plaintiff argues that this case allegedly involves only simple issues—namely, whether Envision's "conduct violates the UCL." (Opp. at p. 21.) Plaintiff is wrong on all fronts.

Contrary to Plaintiff's claims, the Board has jurisdiction to adjudicate the claims raised by this case. This authority is memorialized in Section 2004 of the Business and Professions Code, which specifically tasks the Board with responsibility for "[t]he enforcement of the disciplinary and criminal provisions of the Medical Practice Act." Cal. Bus. & Prof. Code § 2004. To that end,

Section 2220 specifies that "except as provided by law, the Board may take action against *all persons* guilty of violating this chapter." *Id.* § 2220 (emphasis added). "Person," as used in Section 2220, is specifically defined by the Act as encompassing any "individual, partnership, corporation, limited liability company, or other organization, or any combination thereof, except that only natural persons shall be licensed under this chapter." *Id.* § 2032.[4] Thus, the Board's authority is not limited, as Plaintiff erroneously contends in its threshold argument, solely to natural persons or persons licensed physicians, but instead extends broadly to "*all persons*" guilty of violating the act, a group that is expressly defined by the Act to include entities. Further, even absent the plain language of Section 2220, Plaintiff cannot on the one hand argue that a series of separate entities are in fact the same person when Plaintiff deems a unity of entities to be beneficial to its efforts to state a claim, but then point to the separateness of entities when Plaintiff believes that separateness beneficial to its choice of forum. Section 652 of the Business and Professions Code likewise confers on the Board authority over claims of allegedly unlawful "fee splitting." Cal. Bus. & Prof. Code § 652.

Plaintiff's assertion that the matter should not be dismissed under the primary jurisdiction doctrine (Opp. p. 3) because no court has held that the Board possesses exclusive jurisdiction conflates two distinct legal concepts. Exclusive jurisdiction is a principle by which jurisdiction exists over a claim, issue, or dispute in a single forum. Primary jurisdiction is a principle under which an administrative agency and a court both technically have jurisdiction over the dispute, but for policy reasons or as a result of other factors, the court may decline to exercise jurisdiction over the matter in favor of resolution by the administrative agency. Defendants have not asserted that the Board possesses exclusive jurisdiction, merely that the Board has been entrusted by the Legislature with primary oversight over the core issues in this case and the Court should exercise its discretion to refrain from resolving this matter in light of those facts. Plaintiff's arguments based on exclusive jurisdiction are, therefore, misplaced.

Finally, Plaintiff's contention that the primary jurisdiction doctrine does not apply because the issues presented in this matter are allegedly simple fails. In support of that position, Plaintiff

---

[4] Notably, Plaintiff selectively cites to the final clause of Section 2032 in its Opposition, but misleadingly omits the entire first clause, and does not acknowledge Section 2220 at all.

points to a handful of limited attorney general opinions where the attorney general opined on discrete issues of limited characteristics of certain business operations, or are otherwise distinguishable, and a handful of cases involving limited issues relating to individual doctors. (Opp. p. 5); *see Steinsmith v. Medical Board*, 85 Cal. App. 4th 458, 463 (2000) (case involving one doctor at one clinic).[5] There is no discussion or evaluation of the appropriateness of applying the doctrine of primary jurisdiction in *Letsch v. Northern San Diego County Hospital District*, 246 Cal. App. 2d 673 (1966). The doctrine applies only in civil cases, and the specific abstention doctrine cases apply only in cases as here involving claims under California's UCL.

Further, those cases were factually distinct from the scenario at hand. None of the cases involved, as here, a complaint purporting to challenge practices allegedly extending throughout the State of California, involving multiple facilities, multiple contracts, and multiple entities, as this case on its face does. Nor is there any indication that those cases presented the same scale of public policy issues presented by this case. Indeed, the fact that Plaintiff cites to only a handful of cases illustrates the rarity of Courts, rather than the Board, adjudicating claims of the improper practice of medicine by an unlicensed individual.[6]

Thus, Plaintiff's reliance on these cases is entirely misplaced. This case can and should be dismissed or, alternatively, stayed, in favor of resolution by the Board.

### B. Plaintiff Fails to State a Claim for Violation of the Unfair Competition Law

---

[5] Plaintiff's reliance on *Letsch v. Northern San Diego County Hospital District*, 246 Cal. App. 2d 673 (1966) is misplaced (case involving two doctors suing a single hospital board). *Id.* at 674. While *Blue Cross of California, Inc. v. Superior Court*, 180 Cal. App. 4th 138 (2009) is a case that involves the UCL, the similarities end there. *Blue Cross*, involved a scenario in which the Legislature already resolved the key definitional issues present there—namely, the Legislature had clearly defined what constitutes "post-claims" underwriting. *Id.* at 1259. Here, in contrast, the Legislature has not provided similarly clear definition, leaving to other bodies determination of what specific activities or groups of activities constitute the corporate practice of medicine. Furthermore, *Hambrick*, distinguished *Blue Cross* on this very issue. *See Hambrick*, 238 Cal. App. 4th at 149 (finding in contrast to "*Blue Cross,* this determination [statutory definitions] has not been made by the Legislature."). Like *Hambrick*, Plaintiff "asks [this Court] to make this determination" and to define what constitutes the CPOM. *Id.* at 149.

[6] Plaintiff also argues that *Hambrick* and *Alvarado* are inapposite because they involved cases relating to the California Department of Healthcare Services, which it contends is different from the Board, because the DHSC allegedly had clear jurisdiction there whereas the Board does not here. (Opp. p. 9-10.) As discussed above, however, Plaintiff's claim that the Board does not have jurisdiction is entirely without merit. Accordingly, Plaintiff's attempt to distinguish these cases fails.

### 1. Plaintiff Fails to State a Claim Under the UCL's Unlawful Prong

#### a. *Plaintiff Fails to State a Claim Based Upon the Alleged Corporate Practice of Medicine*

Plaintiff's claims under the unlawful prong should be dismissed under the doctrine of primary jurisdiction or, alternatively, the abstention doctrine, for reasons discussed above. If, however, the Court were to consider such claims, the FAC would fail to state a claim. As a threshold matter, Plaintiff's Opposition makes clear that the core of its theory under these provisions is the contention that the medical group, Envision, and Envision Physician Services are in fact a single entity, with any distinctions between and among them the result of a sham "strawman" structure. (Opp. p. 7, 13, 20.) This is at core an alter ego theory as to which Plaintiff fails to state a viable claim. To establish a claim for alter ego liability under California law, a plaintiff must establish: "(1) [that] there is such a unity of interest and ownership between the corporation and the individual or organization controlling it that their separate personalities no longer exist, and (2) [that] failure to disregard the corporate entity would sanction a fraud or promote injustice." *Smith v. Simmons*, No. 05-1187, 2008 WL 744709, at *9 (E.D. Cal. Mar. 18, 2008) (citation omitted).

Factors courts consider in determining whether there is a "unity of interest" are whether the corporation was adequately capitalized, whether corporate formalities such as stock issuance, meeting minutes, officer elections, and segregated corporate records, are maintained, and whether corporate assets are commingled. *Qwest Commc'ns Corp. v. Herakles, LLC*, No. 07-00393, 2008 WL 783343, at *4 (E.D. Cal. Mar. 20, 2008) (citations omitted). Factors relevant to the "injustice" inquiry are "inadequate capitalization, commingling of assets, [a] disregard of corporate formalities . . . [and] any other facts which demonstrate the critical element: that an inequitable result would have followed." *Id.* Shareholders are presumed to have an existence separate from their corporations, and "the mere fact that [a shareholder] owns the stock of [the corporation] will not suffice to prove that the two are alter egos of one another." *Neilson v. Union Bank of California*, 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003). Even under the liberal pleading standards of Rule 8, "a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each." *Id.*

Here, bald conclusions and arguments aside, the scope and extent of Plaintiff's allegations

are that there is allegedly some common ownership between the various entities. (FAC ¶ 3.) There are no allegations in the FAC, for example, that the entities at issue were not separately formed, that they did not maintain separate books and records or obey the corporate formalities, that the entities were inadequately capitalized, or any of the other factors considered in assessing alter ego liability are somehow satisfied here.

### b. *Plaintiff's Allegations of Fee-Splitting Fail to State a Claim Under the UCL's Unlawful Prong*

Plaintiff's Opposition fails to cure the defects in its allegations of allegedly unlawful remuneration or fee-splitting. Plaintiff's precise theories are unclear but appear to be either that the medical group paid unlawful remuneration to the Hospital in the form of lower cost services or that the medical group and Defendants engaged in improper "fee splitting." To the extent it is based upon this theory, Plaintiff's First Amended Complaint pleads that the parties to that contract are separately incorporated entities. Plaintiff's conclusory references to the term "strawman," which is not a cognizable legal theory, aside, Plaintiff fails to plead facts sufficient to state a plausible legal theory for disregarding the admitted separate legal existence of those entities. *See* Section B.1.a., *supra*.

To the extent Plaintiff's contention is instead that Defendants are liable for wrongful "fee-splitting" by virtue of their receipt from the medical groups of some portion of the fees received by the medical groups as compensation for staffing provided to the Hospital, Plaintiff's claims fail because Plaintiff fails to allege sufficient facts to plausibly allege that any funds received by Defendants were anything other than fair market value. Plaintiff attempts to justify its failure to plead facts demonstrating that any compensation received by Defendants was other than fair market value by arguing that Section 650(b) of California Business and Professions Code applies only in the context where the remuneration provided is a percentage of gross revenue. (Opp. at p. 18.) Contrary to Plaintiff's assertion, that provision merely codifies the fair market value with respect to one example of a type of compensation, but fair market value is likewise the touchstone of unlawful compensation claims under other contract structures. *See United States v. Adventist Health*, No. 17-CV-00613-AWI-SKO, 2020 WL 2522114, at *6 (E.D. Cal. May 18, 2020).

Plaintiff's contention that the federal case cited by Defendants was in fact applying Rule 9(b)

are likewise misplaced because this case on its face applies the lower Rule 8 standard. *Id.* at *5-6; and citing to *United States ex rel. Gough v. Eastwestproto, Inc.*, 2018 WL 6929332, at *8 (C.D. Cal. Oct. 24, 2018) (finding "allegations as to the 'below-cost' rates, without more, do not sufficiently demonstrate" remuneration). And together, they stand for the proposition of what is required to plausibly plead a claim under Rule 8. Plaintiff fails to meet that standard here.

        *c.*       *Plaintiff Fails to State a Claim Under the UCL's Unlawful Prong Based Upon Alleged Violations of Section 16600*

In its FAC, Plaintiff identified four contract provisions which it asserted violate Business and Professions Code Section 16600 ("Section 16600"). In their Motion to Dismiss, Defendants noted that two of these provisions do not violate Section 16600 because they apply only during the term of the subject agreements. *See Techno Lite, Inc. v. Emcod, LLC*, 44 Cal. App. 5th 462, 471 (2020) (Section 16600 "does not affect limitations on an employee's conduct or duties *while employed*.") (emphasis in original). In its Opposition, Plaintiff does not reference these two clauses at all, conceding that there is nothing unlawful about either. (Opp. p. 20 ("the illegality of the contractor agreement … lies in the third clause.")) Plaintiff instead points only to the third and fourth alleged restrictive covenants and argues it has stated a claim based upon those provisions. (Opp. p. 20-21.)

With respect to the third clause, Plaintiff does not dispute that in order to plead a claim under Section 16600, a plaintiff must plead the existence of some additional restraint on trade that is broader than the restrictions already imposed by law. (Opp. p. 20.) Nor does Plaintiff anywhere dispute that all of the contracting parties in question are already subject to a preexisting obligation under law not to induce the breach of existing contract.[7] Instead, Plaintiff seizes on the inclusion of the word

---

[7] Plaintiff's references to *Dowell v. Biosense Webster, Inc.* and *Reeves v. Hanlon* are both inapposite. Plaintiff's reliance on *Dowell* is misplaced because, as Plaintiff's own description of that case makes clear, the provision at issue there broadly prohibited employees from soliciting any business from, selling to, or rendering any service directly or indirectly. 179 Cal. App. 4th 564, 575 (2009). Here, in contrast, the subject individuals are prohibited only from inducing the breach of existing contracts—nothing about the provision prohibits the contractors from entering into any other contract, providing any service, or soliciting any other business provided only that such activities do not wrongfully induce the breach of contract. Plaintiff's reference to *Reeves v. Hanlon* is misplaced because that case articulates only the standard for when inducing the breach of an at-will contract may be legally actionable. 33 Cal. 4th 1140, 1144–45 (2004). If the *Reeves* standard is not satisfied, then there would be no breach of the third clause of the contractor agreement.

REPLY ISO MOTION TO DISMISS FAC
CASE NO. 3:22-CV-00421-CRB

1 "persuading" within the clause to attempt to paint the clause as broader than the obligations already
2 imposed by law. "Persuading," however, is simply a means of "inducing" stated differently.[8] Thus,
3 Plaintiff's Opposition does nothing to rebut the fact that the third clause imposes no additional
4 restraint not already imposed by law.

5 Finally, as to the fourth alleged restrictive covenant, the provision in the agreement between
6 the Hospital and the Group, Plaintiff concedes that a restrictive covenant contained within an
7 agreement between two companies is not per se unlawful but, instead, must be analyzed under the
8 rule of reason analysis. *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1154 (2020). Plaintiff
9 nevertheless conclusorily contends that "exclusive dealing contracts between Envision and the
10 Hospitals violate the rule of reason." (Opp. p. 21-22.)

11 As a threshold matter, to the extent that as worded Plaintiff's Opposition asserts that exclusive
12 dealing contracts for the provision of ED services at hospitals in California are unlawful as a general
13 matter, exclusive dealing arrangements are presumptively legal, analyzed under the rule of reason,
14 and courts often approve of them because of their procompetitive benefits. *Allied Orthopedic*
15 *Appliances Inc. v. Tyco Health Care Group LP*, 592 F. 3d 991, 996 (9th Cir. 2010) ("There are well-
16 recognized economic benefits to exclusive dealing arrangements, including the enhancement of
17 interbrand competition . . . Consequently, an exclusive-dealing arrangement does not constitute a per
18 se violation of section 1.") Any assertion that exclusive dealing agreements for the provision of ED
19 staffing are wrongful is belied by Plaintiff's own FAC, which makes clear not only those exclusive
20 contracts for the provision of ED services are industry standard in California, but that the lost contract
21 that forms the basis for Plaintiff's alleged losses in this case was itself such an exclusive contract.
22 (FAC ¶¶ 1, 64-65, 68.)

23 To the extent that Plaintiff's FAC is instead about the alleged restrictive clause contained
24 within the contract between the physician group and the Hospital, Plaintiff fails altogether to meet
25 its basic pleading allegations. Since Plaintiff has conceded this is a rule of reason case, it is required

---

[8] Indeed, the Merriam-Webster dictionary, for example, defines the term "induce" as including "to move by persuasion or influence." *See Induce*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/induce (accessed 24 Mar. 2022).

to plead both a product market and a geographic market that suffered anticompetitive effects from the alleged exclusivity provision. *See Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1062-63 (9th Cir. 2001). As noted by the Supreme Court in *Brown Shoe*, "[t]he outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." *Brown Shoe Co., Inc. v. United States*, 370 U.S. 294, 325 (1962). The relevant geographic market "extends to the area of effective competition . . . where buyers can turn for alternative sources of supply." *Tanaka*, 252 F.3d at 1063. "Failure to identify a relevant market is a proper ground for dismissing a Sherman Act claim." *Id.*; *Newcal Indus., Inc. v. IKON Office Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008) ("[A] complaint may be dismissed under Rule 12(b)(6) if the complaint's 'relevant market' definition is facially unsustainable."). Furthermore, a plaintiff pleading an exclusive dealing claim must show that the exclusive dealing arrangement at issue "foreclose[d] competition in a substantial share" of the relevant market. *Allied Orthopedic Appliances Inc. v. Tyco Health Care Group LP*, 592 F.3d 991 (9th Cir. 2010); *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 327 (1961).

Here, Plaintiff fails to plead any clear market, let alone the well-defined market[9] required to meet even the first step of the test. As to the relevant geographic market, at various points, Plaintiff's FAC and Opposition vaguely reference a market that alternatively consists of the entire state of California, rural hospitals only, or some other undefined market. (FAC ¶¶ 81g, 103 ["Envision is actively marketing its services to other Emergency departments throughout California . . . ."]; Opp. p. 22 [". . . particularly in rural areas . . . ."].) As to the relevant product market, Plaintiff does not make clear whether its claims relate only to ED services, or more broadly, nor does it address a host of other issues necessary to plead a relevant product market. This is fatal to Plaintiff's claim. *Newcal*, 513 F.3d at 1045 ("[A] complaint may be dismissed under Rule 12(b)(6) if the complaint's 'relevant

---

[9] *See Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1373–74 (9th Cir. 1989); *Ojmar US, LLC v. Sec. People, Inc.*, No. 16-CV-04948-HSG, 2017 WL 3301214, at *6 (N.D. Cal. Aug. 2, 2017). "Monopolization claims can only be evaluated with reference to properly defined geographic and product markets." *Big Bear Lodging Ass'n v. Snow Summit, Inc.,* 182 F.3d 1096, 1104 (9th Cir. 1999); *see also Orchard Supply Hardware LLC v. Home Depot USA, Inc.*, 939 F. Supp. 2d 1002, 1011 (N.D. Cal. 2013) (dismissing Sherman Act claim under Rule 12(b)(6) for failure to plead relevant geographic market).

market' definition is facially unsustainable.").

Beyond that, Plaintiff does nothing to explain how the provision forecloses Envision's competitors from a substantial share of the relevant market—however defined—and fails to plead an anticompetitive effect in the geographic and product market at issue. Given that Plaintiff does not even know what those are, it certainly cannot plead an anticompetitive effect within them.

### 2. Plaintiff Fails to Plead a Claim for Allegedly Unlawful Conduct Based on Alleged Violations of Section 17500

Finally, Plaintiff's remaining category of alleged unlawfulness, the alleged violation of Section 17500, fails because it depends upon the existence of an alleged false statement. Not only are the statements here too vague to support such a claim, but any claim of falsity rests on the assumption that Defendants were required and failed to be licensed. For the reasons discussed above, this argument is without merit and, in any event, any residual questions about that factual assumption should be resolved in the first instance by the Board.

### B. Plaintiff Fails to State a Plausible Claim Under the UCL's Unfair Prong

In its Opposition, Plaintiff concedes that in order to state a claim under the UCL's unfair prong, it must satisfy the *Cel-Tech* standard, and that standard requires that Plaintiff plead conduct that violates the text or spirit of the antitrust laws. *See Cel-Tech Commcn's, Inc. v. L.A. Cellular Tel. Co.,* 20 Cal. 4th 163, 186 (1999). In its FAC, Plaintiff apparently sought to satisfy meeting this burden by asserting that the conduct at issue allegedly violates the prohibitions on wrongful exclusive dealing and tying under Section 16727 of California's Business and Professions Code. (FAC ¶¶ 4, 58, 81(e).) That Section on its face, however, has no application to an agreement for services, which is all that is at issue in this case. Cal. Bus. & Prof. Code § 16727. In its Opposition, Plaintiff abandons that theory and instead pivots to the new theory, referenced nowhere in its FAC, that Envision is instead participating in an unlawful "trust" in violation of Section 16720. Plaintiff's Section 16720 argument fares no better than its Section 16727 argument.[10]

---

[10] Plaintiff's specific theory under Section 16720 is unclear but to the extent that Plaintiff is specifically alleging a tying theory under Section 16720, that specific claim fails for a number of additional reasons, including, for example, that a tying claim requires a showing of coercive power. *Innovative Health LLC v. Biosense Webster, Inc.*, No. SACV191984JVSKESX, 2020 WL 5921964, at *7 (C.D. Cal. Aug. 18, 2020). There are no facts alleged in the FAC to support that Defendants or

1   Section 16720 prohibits "a combination" or "conspiracy" to restrain trade. Cal. Bus. & Prof. Code § 16720. With respect to Section 16720, courts have explained that it "was patterned after Section 1 of the Sherman Act, and the pleading requirements under the two statutes are similar." *Patt v. Antech Diagnostics*, No. 8:18-cv-01689-JLS-DFM, 2020 WL 5076970, at *7 (C.D. Cal. May 18, 2020) (citations omitted). In order to state a claim under Section 16720, a plaintiff must adequately plead certain threshold elements including the existence of a "conspiracy" and a legally cognizable "antitrust injury." *Id.* Throwing around the term "trust" does not a conspiracy make. Plaintiff fails to viably plead either element.

The specific alleged "conspiracy" is not clearly articulated by either Plaintiff's FAC or its Opposition. It appears, however, that Plaintiff may be pointing to one of two sets of relationships: (1) the relationships between Defendants or their subsidiary or affiliate entities and the physician groups; or (2) the relationship between the physician groups and the Hospital. Plaintiff fails to plead a legally cognizable "conspiracy" under either theory.

Plaintiff cannot viably plead a "conspiracy" under the first set of relationships because Plaintiff's core theory in the FAC, while erroneous, is that those entities are in fact a single entity. Under the well-established *Copperweld* doctrine where a series of related entities function as a single economic unit, they are legally incapable of "conspiring" with each other for purposes of Section 1 of the Sherman Act or its California analog, Section 16720. *See, e.g.*, Applying this doctrine, courts in the Ninth Circuit have concluded that "[u]nilateral conduct by a single firm, even if it "appears to 'restrain trade' unreasonably," is not unlawful under section 1 of the Sherman Act[,]" and thus the *Copperweld* doctrine precludes claims based upon a conspiracy to form a "trust" as a matter of law. *The Jeanery, Inc. v. James Jeans, Inc*., 849 F.2d 1148, 1152 (9th Cir. 1988*); see also Newport Components, Inc. v. NEC Home Elecs. (U.S.A.), Inc*., 671 F. Supp. 1525, 1544 (C.D. Cal. 1987) (finding two entities were wholly-owned subsidiaries of the parent and thus the plaintiff's conspiracy claims were dismissed). If Plaintiff's theory is that Defendants and their various operations are a

---

any of the entities which are erroneously alleged to be "strawmen" possess anything approaching coercive power. In addition, to the extent Plaintiff is alleging an exclusive dealing theory under section 16720, Plaintiff fails to plausibly state an exclusive dealing claim, for the reasons discussed above in III.B.1.c.

1 single unit as its Opposition repeatedly reiterates (Opp. at p. 25), the law is clear that a single entity cannot conspire with itself, and Plaintiff's theory fails.

Plaintiff also fails to viably plead a "conspiracy" based on the second set of relationships, the relationship between the physician group and the Hospital. Plaintiffs cannot plead a "conspiracy" between the medical groups and the Hospital based on the sole fact that they entered a written contract. *Toscano v. PGA Tour, Inc.,* 70 F. Supp. 2d 1109, 1114–15 (E.D. Cal. 1999), *aff'd sub nom. Toscano v. Pro. Golfers Ass'n,* 258 F.3d 978 (9th Cir. 2001) (noting that "because contracts are often used to regulate relationships among cooperating entities, a rule equating the mere existence of a contract with concerted action in Rule of Reason cases would create a significant risk of deterring procompetitive behavior."). Plaintiff must plead the physician group and the Hospital shared a "unity of purpose or a common design and understanding or a meeting of the minds" to harm competition. *See In re Netflix Antitrust Litig*., 506 F. Supp. 2d 308, 320 (N.D. Cal. 2007) (granting motion to dismiss because Plaintiff failed to allege an unlawful agreement to restrain trade based on the allegations that one entity "discontinued offering services in the Relevant Market, [and] it referred its customers to Netflix and marketed (and continues to market) Netflix's services[.]"). Here, at most, the facts pled with regard to the Hospital are that the Hospital and a physician group entered into a contract under which the Hospital procured physician services at a lower rate. Far from a meeting of the minds to restrain competition, this is conduct that broadly reduces the overall cost of care.

To the extent Plaintiff argues the physician group and the Hospital entered into an illegal exclusive dealing relationship, that argument fails for the same reasons discussed above in III.B.1.c.

The facts pled by Plaintiff otherwise do not violate the "spirit" of the antitrust law. Plaintiff's claimed injury has no connection to harm to competition or anticompetitive effects. In fact, Plaintiff was injured because Defendants offered a *lower* overall price to the Hospital, and then the Hospital replaced Plaintiff. That is the opposite of suffering an antitrust injury. *Paladin Associates, Inc. v. Montana Power Co.*, 328 F.3d 1145, 1158 (9th Cir. 2003) ("Injury that flows from aspects of a defendant's conduct that are beneficial or neutral to competition is not 'antitrust injury' . . . Where the defendant's conduct harms the plaintiff without adversely affecting competition generally, there is no antitrust injury."). Plaintiff also does not allege that it has been foreclosed from competing in

the relevant market, however defined—it just complains about being replaced on one contract. The fundamental focus and spirit of the antitrust laws is to protect competition. *See, e.g.*, *Asahi Kasei Pharma Corp. v. CoTherix, Inc.*, 204 Cal. App. 4th 1, 20 (2012) ("the Cartwright Act, like all antitrust laws, is about the protection of competition, not competitors.") "[C]utting prices in order to increase business often is the very essence of competition." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 594 (1986). Here, the gravamen of Plaintiff's FAC, accepted as true for purposes of this Motion, is precisely that that Defendants offered a lower rate to obtain a contract— the "very essence of competition."

### C. Plaintiff Fails to Plead a Claim Under the Misleading Prong

Finally, for the reasons set forth in Section B above, Plaintiff fails to plead a claim under the misleading prong.

### D. Plaintiff's Declaratory Relief Claim Should Be Dismissed

Finally, as set forth in the Motion, Plaintiff's declaratory relief claim should be dismissed as merely duplicative of its UCL claim.[11] *Jensen v. Quality Loan Service Corp.*, No. 09–CV–01789 OWW–DLB, 2010 WL 1136005, *4 (E.D. Cal. Mar. 22, 2010), (dismissing a declaratory relief claim without leave to amend because, it duplicated the plaintiff's other claims.) Notably, Plaintiff fails altogether to address, and thereby concedes that for this reason alone its second cause of action for declaratory relief should be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Court should dismiss each claim asserted in Plaintiff's FAC against Defendants.

Dated: March 25, 2022          **MCDERMOTT WILL & EMERY LLP**

By: */s/ Jason D. Strabo*
     JASON D. STRABO
     Attorneys for Defendants

---

[11] To support its claim for declaratory relief, Plaintiff refers to *Brovont v. KS-I Med. Servs., P.A.*, 622 S.W.3d 671 (2020). This is an out-of-jurisdiction case, involving a former medical director suing a hospital's emergency department for damages of alleged wrongful discharge. *Id.* at 678. This case should therefore have no bearing on the Court's analysis.